IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

| | |
|---|---|
| GEORGE ANIBOWEI, | |
| Plaintiff, | |
| v. | Civil Action No. 3:16-CV-3495-D |
| LORETTA LYNCH*, Attorney General of the United States, in her official capacity, *et al.*, | |
| Defendants. | |

## <u>DEFENDANTS' MOTION TO DISMISS</u>

JOHN R. PARKER
United States Attorney

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

---

\* The defendants are federal officials sued in their official capacities.  Some no longer hold government office, and hence their successors should be "automatically substituted" as defendants pursuant to Fed. R. Civ. P. 25(d).  These successors are:  Jeff Sessions (Attorney General, for Loretta Lynch), John F. Kelly (Secretary of Homeland Security, for Jeh Johnson), Kevin K. McAleenan (Acting Commissioner of U.S. Customs and Border Protection, for R. Gil Kerlikowske), Huban Gowadia (Acting Administrator of the U.S. Transportation Security Administration, for Peter Neffenger), and Thomas D. Homan (Acting Director of U.S. Immigration and Customs Enforcement, for Sarah R. Saldana).

# Table of Contents

I.      Background.................................................................................................... 2

        A.      The government's authority to conduct border searches. ............................ 2

        B.      Anibowei's allegations and complaint for declaratory and
                injunctive relief.................................................................................... 4

        C.      The government defendants. ........................................................................ 5

II.     Legal Standards ........................................................................................... 6

III.    Argument and Authorities ......................................................................... 7

        A.      Anibowei cannot establish standing to obtain the purely equitable
                relief he seeks. ....................................................................................... 7

        B.      Even assuming for the sake of argument that Anibowei has standing,
                his complaint is subject to dismissal under Rule 12(b)(6) for failure
                to state a claim upon which relief can be granted. ..................................... 13

                1.      Anibowei's Fourth Amendment claim fails because
                        reasonable suspicion was not required for the search of his
                        cell phone at the border.  (First Cause of Action)............................ 13

                2.      Anibowei has not stated any claim for relief under the First
                        Amendment because there is no First Amendment exception
                        to the border-search doctrine.  (Second Cause of Action) .............. 17

        C.      Anibowei has not pleaded any facts about government officials
                outside of DHS; this is an additional basis for dismissing the non-
                DHS defendants from the case. ................................................................. 19

IV.     Conclusion ................................................................................................... 19

# Table of Authorities

## Cases

*Abidor v. Napolitano*,
    990 F. Supp. 2d 260 (E.D.N.Y. 2013) ................................................... 9, 10, 11, 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................... 6, 7

*Bauer v. Texas*,
    341 F.3d 352 (5th Cir. 2003) .............................................................................. 8, 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................... 6, 7

*Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*,
    855 F. Supp. 2d 615 (N.D. Tex. 2012) .................................................................. 6

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) .............................................................................................. 8, 9

*Eccles v. Peoples Bank of Lakewood Vill.*,
    333 U.S. 426 (1948) ............................................................................................. 11

*Escamilla v. City of Dallas*,
    No. 3:03-CV-848-K, 2004 WL 1932867 (N.D. Tex. Aug. 30, 2004).................... 19

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) .................................................................................. 6

*Little v. Obryan*,
    655 F. App'x 1027 (5th Cir. 2016)........................................................................... 6

*Little v. Tex. Attorney Gen.*,
    No. 3:14-CV-3089-D, 2015 WL 5613321 (N.D. Tex. Sept. 24, 2015) ................... 6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .......................................................................................... 7, 19

*New York v. P.J. Video, Inc.*,
    475 U.S. 868 (1986) ............................................................................................. 18

*Procter & Gamble Co. v. Amway Corp.*,
    242 F.3d 539 (5th Cir. 2001) .................................................................................. 7

*Raines v. Byrd,*
    521 U.S. 811 (1997) ............................................................................... 8

*Ramming v. United States,*
    281 F.3d 158 (5th Cir. 2001) ................................................................ 6

*Ruiz v. Estelle,*
    161 F.3d 814 (1998) ............................................................................... 8

*Stockman v. Fed. Election Comm'n,*
    138 F.3d 144 (5th Cir. 1998) ................................................................ 6

*United States v. Cotterman,*
    709 F.3d 952 (9th Cir. 2013) ......................................................... 16, 17

*United States v. Ickes,*
    393 F.3d 501 (4th Cir. 2005) ......................................................... 10, 18

*United States v. Flores-Montano,*
    541 U.S. 149 (2004) ....................................... 2, 13, 14, 15, 16–17, 17

*United States v. Kelly,*
    302 F.3d 291 (5th Cir. 2002) .............................................................. 17

*United States v. McCauley,*
    420 F. App'x 400 (5th Cir. 2011) ................................................... 15, 17

*United States v. McCauley,*
    563 F. Supp. 2d 672 (W.D. Tex. 2008) .......................................... 15, 16

*United States v. Montoya de Hernandez,*
    473 U.S. 531 (1985) ....................................................................... 13, 14

*United States v. Pickett,*
    598 F.3d 231 (5th Cir. 2010) .............................................................. 16

*United States v. Ramsey,*
    431 U.S. 606 (1977) ......................................................................... 2, 14

*United States v. Sandler,*
    644 F.2d 1163 (5th Cir. 1981) ....................................................... 14, 17

*United States v. Thompson,*
    53 F. Supp. 3d 919 (W.D. La. 2014) .............................................. 15, 16

*Valley Forge Christian College v. Americans United for Separation of
    Church & State, Inc.*, 454 U.S. 464 (1982) ................................................ 8

*Walch v. Adjutant General's Dep't of Tex.*,
    533 F.3d 289 (5th Cir. 2008) .................................................................... 3

*Warth v. Seldin*,
    422 U.S. 490 (1975) ................................................................................ 7

## Statutes and Rules

6 U.S.C. § 202 .............................................................................................. 3

6 U.S.C. § 202(1) .......................................................................................... 3

Fed. R. Civ. P. 8(a)(2) .................................................................................. 7

Fed. R. Civ. P. 12(b)(1) ...................................................................... 2, 5, 6, 19

Fed. R. Civ. P. 12(b)(6) ................................................................ 2, 5, 6, 13, 19

## Other Authorities

10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
    Federal Practice & Procedure § 2762 (3d ed. 1998) .............................. 11

This suit arises out of a search by government officers of plaintiff George Anibowei's cell phone upon his return to the country from international travel.  Subject only to very narrow exceptions for highly intrusive searches of a person's body or destructive searches of property, neither of which is at issue here, the Supreme Court has made clear that searches of persons or property at the border are not subject to any requirement of reasonable suspicion (or any greater showing, such as probable cause). Instead, such searches are considered reasonable—and do not offend the Constitution— simply by virtue of the fact that they occur at the border, where the government's power to protect the territorial integrity of the country is at a maximum and the government's search authority is therefore broad.

Nonetheless, Anibowei claims in this suit that his rights under the Fourth and First Amendments were violated by the government's actions in connection with the border search of his cell phone, and on that basis he seeks various forms of equitable relief, including a declaration that the border search of his cell phone without reasonable suspicion violates the Constitution.   As explained below, though, Anibowei's complaint is subject to dismissal on two grounds.  First, Anibowei lacks standing to obtain the purely equitable relief he seeks, because the fact that Anibowei was exposed to allegedly illegal conduct in the past is not sufficient to entitle him to litigate any claim in federal court absent some showing that the allegedly illegal act will be repeated against him in the future.  Second, Anibowei has failed to state a claim upon which relief can be granted because neither the Fourth Amendment nor the First Amendment requires a showing of reasonable suspicion before an electronic device can be searched at the border.

Accordingly, the defendants request that Anibowei's complaint be dismissed in its entirety, under either Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Finally, there is an additional ground for partial dismissal of Anibowei's claims, because he has named eight different defendants in their official capacities as the heads of various government agencies but only pleaded facts relating to actions of the Department of Homeland Security (DHS), thus providing no basis for suit against the four non-DHS defendants.

## I.    Background

### A.    The government's authority to conduct border searches.

"[T]he United States, as sovereign, has the inherent authority to protect, and a paramount interest in protecting, its territorial integrity."  *United States v. Flores-Montano*, 541 U.S. 149, 153 (2004).  "The Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border.  Time and again, we have stated that 'searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border.'"  *Id.* at 152–53 (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)).

This border-search power of the government has an "impressive historical pedigree," with the First Congress having authorized a wide range of border-search activities.  *Id.* at 153.  Today it is DHS, principally through its component agencies U.S. Customs and Border Protection (CBP) and U.S. Immigration and Customs Enforcement (ICE), that is the first line of defense at the border.  DHS has responsibility for

administering the customs and immigration laws of the United States, securing the

borders, and inspecting individuals and items that seek entry into the United States.  *See* 6

U.S.C. § 202.  These responsibilities include "[p]reventing the entry of terrorists and the

instruments of terrorism into the United States," *id.* § 202(1), as well as enforcing

hundreds of laws and regulations, including those respecting immigration, currency and

financial transactions, customs, commerce and trade, copyrights and trademarks,

narcotics, the safety of agricultural products and other goods, and import and export

controls on wildlife and plants, chemical and biological weapons, guns, and other items.

*See generally* Summary of Laws Enforced by CBP, https://www.cbp.gov/trade

/rulings/summary-laws-enforced/us-code (published Mar. 8, 2014).

As noted in Anibowei's complaint, CBP and ICE have both issued formal policy

statements that authorize their officers and agents to inspect electronic devices carried

across international borders by travelers.  (*See* Doc. 1, ¶¶ 38–40.)  These statements

establish policies and procedures governing the gathering of information from electronic

devices at the border, as well as for the retention, sharing, safeguarding, and destruction

of such information.  *See* CBP Directive No. 3340-049, Border Search of Electronic

Devices Containing Information (Aug. 20, 2009); ICE Directive No. 7-6.1, Border

Searches of Electronic Devices (Aug. 18, 2009).[1]

---

[1] Because these policies are referenced in Anibowei's complaint, they may be considered here.  *See Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008).  The CBP statement is available at https://www.dhs.gov/xlibrary/assets/cbp_directive_3340-049.pdf, and the ICE statement at https://www.dhs.gov/xlibrary/assets/ice_border_search_electronic_devices.pdf.

**B.      Anibowei's allegations and complaint for declaratory and injunctive relief.**

According to his complaint, Anibowei is a U.S. citizen who lives in the Dallas area but travels internationally with some frequency.  (Doc. 1, ¶¶ 6, 25.)  On October 10, 2016, Anibowei returned from a trip to Canada on a flight that landed at Dallas/Fort Worth International Airport.  (Doc. 1, ¶ 31.)  Upon exiting the plane, Anibowei was met by DHS officers and questioned about various matters, including the purpose of his trip to Canada.  (Doc. 1, ¶¶ 34–35.)  During this interview, Anibowei's cell phone was briefly "detained for 'examination and copying'" and then returned to him.  (Doc. 1, ¶ 35.)  According to Anibowei, this encounter with government officers lasted for approximately two hours.  (Doc. 1, ¶ 36.)

Anibowei states that his cell phone contained "private and sensitive materials" that he did not intend for others to view without his consent, and that the government did not have "reasonable suspicion to believe that [Anibowei's] device[] contained any material constituting a violation [of] any law respecting customs, immigration, or terrorism." (Doc. 1, ¶¶ 42, 44.)  He also alleges on information and belief that electronic information from his cell phone may have been disclosed to other government agencies after the search.  (Doc. 1, ¶ 41.)

Based on the foregoing, Anibowei asserts that the government's actions in connection with the October 10, 2016 inspection of his cell phone violated the Fourth and First Amendments of the Constitution.[2]  (Doc. 1, ¶¶ 45–46.)  As relief, Anibowei requests

---

[2] Anibowei's complaint also contains allegations about other instances when he has been inspected while traveling internationally, and about the revocation of his participation in the CBP "Global Entry Trusted

a declaration that the detention and seizure of his cell phone without reasonable suspicion violates the Fourth and First Amendments, as well as injunctions requiring the government to return or expunge any information retained from the search and to disclose details about whether any information was disseminated to other agencies.  (Doc. 1, Prayer.)

## C.   The government defendants.

Anibowei's complaint names as defendants eight government officials, each in his or her official capacity as the head of a federal department or agency.  (Doc. 1, ¶¶ 7–14.) Several of the defendants are officials from DHS or its components that have responsibility for border- or airport-related security—these are the Secretary of Homeland Security and the heads of CBP, ICE, and the Transportation Security Administration. (*See* Doc. 1, ¶¶ 11–14.)  The other group of defendants consists of officials in charge of the following non-DHS departments or agencies:  the Department of Justice, the Federal Bureau of Investigation, the Terrorist Screening Center (which is an FBI component), and the National Counterterrorism Center (which is a component of the Office of the Director of National Intelligence).  (*See* Doc. 1, ¶¶ 7–10.)  Aside from naming the non-DHS officials as defendants, Anibowei does not otherwise plead any facts showing any involvement by their agencies in the matters at issue in the complaint.  As explained below, all defendants now move for dismissal under Rule 12(b)(1), for lack of standing, and under Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

---

Traveler" program.  (*See* Doc. 1, ¶¶ 15–30.)  However, Anibowei does not appear to assert any cause of action or seek any relief relating to these matters.

## II.        Legal Standards

"Standing is an issue of subject matter jurisdiction, and thus can be contested by a Rule 12(b)(1) motion to dismiss." *Little v. Tex. Attorney Gen.*, No. 3:14-CV-3089-D, 2015 WL 5613321, at *2 n.5 (N.D. Tex. Sept. 24, 2015) (internal quotation marks and citation omitted), *aff'd*, *Little v. Obryan*, 655 F. App'x 1027 (5th Cir. 2016).  "Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court evaluates the sufficiency of the plaintiff's complaint by "'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F. Supp. 2d 615, 618 (N.D. Tex. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) (internal brackets omitted).  To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678 (citation omitted).

### III.     Argument and Authorities

**A.     Anibowei cannot establish standing to obtain the purely equitable relief he seeks.**

The standing doctrine addresses the question of who may properly bring suit in federal court, and "is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  It "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  To establish standing, a plaintiff must meet both constitutional and prudential requirements.  *See, e.g.*, *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001).

The "irreducible constitutional minimum" of standing requires a plaintiff to show (1) a concrete and particularized injury in fact which is actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury will likely be redressed by a favorable decision.  *Defenders of Wildlife,* 504 U.S. at 560.  And "[b]eyond the constitutional

requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982). "Prudential standing limitations help courts identify proper questions for judicial adjudication, and further define the judiciary's role in the separation of powers." *Ruiz v. Estelle*, 161 F.3d 814, 829 n.22 (5th Cir. 1998). The law of standing is built on separation-of-powers principles and, as such, the standing inquiry is "especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997).

Here, Anibowei seeks equitable relief—a declaratory judgment and preliminary and permanent injunctions—under a premise that the government violated the Fourth and First Amendments by searching and copying information from his cell phone at the border. (*See* Doc. 1, ¶¶ 45–46 & Prayer.) However, even assuming some constitutional violation did occur, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (internal quotation marks and citation omitted). Instead, to obtain declaratory or injunctive relief based on an alleged past wrong, "a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." *Id.* (citation omitted).

For example, in *City of Los Angeles v. Lyons*, 461 U.S. 95, 98 (1983), the Supreme Court considered whether a plaintiff who had been subjected to a chokehold by police had standing to seek equitable relief in the form of (i) a declaration that the use of such

chokeholds violated the Constitution and (ii) an injunction against their future use.  The

Court explained that the plaintiff would have standing only if he could show that he

"would again be stopped for a traffic or other violation in the reasonably near future" and

"that strangleholds are applied by the Los Angeles police to every citizen who is stopped

or arrested regardless of the conduct of the person stopped." *Id.* at 108.  Noting that the

plaintiff did not claim to have been subjected to a chokehold on any other occasion, the

Court found that the "odds" of a repeat occurrence of the allegedly illegal conduct were

not "sufficient to make out a federal case for equitable relief." *Id.*

The same is true with respect to Anibowei's suit challenging the allegedly

unconstitutional search of his cell phone.  Anibowei's complaint details that he has

traveled internationally on numerous occasions and has had many encounters with

government officers when being processed through customs.  (*See* Doc. 1, ¶¶ 22–25.)

Nonetheless, Anibowei alleges that his cell phone was searched on only a single

occasion.  (*See* Doc. 1, ¶¶ 31–37.)  Accordingly, Anibowei's allegations are not

"sufficient to make out a federal case for equitable relief" because they do not establish a

likelihood that Anibowei's cell phone will be searched again in the future.  *Lyons*, 461

U.S. at 108; *see also Bauer*, 341 F.3d at 358.

Indeed, a similarly situated plaintiff was found to lack standing to pursue litigation

arising out of a border search in *Abidor v. Napolitano*, 990 F. Supp. 2d 260 (E.D.N.Y.

2013).  In that case, the plaintiff Abidor had his cell phones and other electronic devices

searched by a customs officer when returning to the United States from abroad.  *Id.* at

267–68.  Abidor later sued various government officials seeking purely equitable relief,

including a declaration that his rights had been violated and an injunction against copying the information from his devices and for the expungement of the information from the government's possession. *Id.* at 264, 275.

In dismissing Abidor's claims for lack of standing, the court employed reasoning that is equally applicable to Anibowei's complaint. The court took judicial notice of the fact that "there is less than a one in a million chance that a computer carried by an inbound international traveler will be detained" at customs when a traveler is entering the United States. *Id.* at 271; *see also United States v. Ickes*, 393 F.3d 501, 506–07 (4th Cir. 2005) (rejecting as "far-fetched" the suggestion that "any person carrying a laptop computer . . . on an international flight would be subject to a search of the files on the computer hard drive[,]" because "[c]ustoms agents have neither the time nor the resources to search the contents of every computer"). Given these low odds of a future search occurring, there was at most only an "alleged injury based on speculation as to conduct which may or may not occur at some unspecified future date," which was insufficient to support an action in federal court. *Abidor*, 990 F. Supp. 2d at 272. The court also noted that Abidor had frequently traveled internationally and had been stopped at the border on other occasions, but that his electronic devices had been searched only once. *Id.* at 274–75. The same is true of Anibowei, according to his own complaint. (*See* Doc. 1, ¶¶ 15–35 (detailing various occasions of international travel by Anibowei, but only the single inspection of his cell phone on October 10, 2016).) For all the same reasons that the similarly situated plaintiff lacked standing in the *Abidor* case, Anibowei lacks standing in this case in which he seeks essentially the same type of equitable relief.

Moreover, even if it were assumed that Anibowei could establish Article III

standing, dismissal would still be warranted for closely related prudential reasons.  "A

declaratory judgment, like other forms of equitable relief, should be granted only as a

matter of judicial discretion, exercised in the public interest.  It is always the duty of a

court of equity to strike a proper balance between the needs of the plaintiff and the

consequences of giving the desired relief."  *Eccles v. Peoples Bank of Lakewood Vill.*,

333 U.S. 426, 431 (1948) (citations omitted).  Thus, "[e]specially where governmental

action is involved, courts should not intervene unless the need for equitable relief is clear,

not remote or speculative."  *Id.*; *see also Abidor*, 990 F. Supp. 2d at 274 ("'The Supreme

Court has frequently, although not invariably, indicated a marked reluctance to have

important issues of public law resolved by declaratory judgments.'" (quoting 10B Charles

Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2762

(3d ed. 1998))).

Anibowei essentially seeks a judgment from this Court that the Constitution

requires the government to have reasonable suspicion before undertaking the search of an

electronic device at the border.  (*See* Doc. 1, ¶¶ 45–46 & Prayer.)  However, as discussed

in more detail below, neither the Supreme Court nor the Fifth Circuit has ever recognized

such a requirement.  Anibowei therefore cannot show a "clear" need for the relief he

seeks, *Eccles*, 333 U.S. at 431, and indeed it would represent a marked departure from the

longstanding principles that the government's border-search authority is broad and that

border searches are reasonable simply by virtue of the fact that they occur at the border.

Furthermore, while it is conceivable that in some instances it might become absolutely

necessary and unavoidable for a court to address the legality of a border search (such as

in a criminal prosecution where the defendant's freedom may hinge on whether evidence

discovered during a border search of an electronic device is admitted into evidence or

instead suppressed), Anibowei's complaint does not present such a case.  *See Abidor*, 990

F. Supp. 2d at 272 (contrasting a claim for a declaratory judgment regarding the legality

of a border search, for which standing was lacking, with that same issue being raised in a

criminal case in the context of a motion to suppress).

In addition, as the *Abidor* court noted, declining to exercise discretionary equitable

jurisdiction over a suit like Anibowei's has the added benefit of affording Congress and

the relevant Executive Branch agencies the first opportunity to "respond to any abuses

that should develop as a consequence" of government policies providing for border

searches of electronic devices.  *Id.* at 274.  As the CBP and ICE border-search policies

cited by Anibowei make clear, the government is "sensitive to the privacy and

confidentiality issues posed by border searches of electronic devices," and has made

"efforts to cabin the nature and extent of such searches" while also putting in place

"significant precautionary measures" to protect sensitive information.  *Id.*  Congress is

likewise aware that electronic devices are subject to being searched at the border, but has

not seen fit to withdraw or modify the broad search authority that it has consistently

granted to government officers at the border for well over 200 years (including at the

time the Fourth Amendment was adopted).  *See id.* (referencing a Congressional report

on border searches of electronic devices).

In sum, under both the Article III case-or-controversy requirement and under

closely related prudential requirements of standing, Anibowei's complaint is subject to dismissal for lack of standing.

**B.    Even assuming for the sake of argument that Anibowei has standing, his complaint is subject to dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.**

**1.    Anibowei's Fourth Amendment claim fails because reasonable suspicion was not required for the search of his cell phone at the border.  (First Cause of Action)**

Anibowei's allegations that the government's search and seizure of information from his cell phone at the border violated the Fourth Amendment fail to state any claim for relief.  The Fourth Amendment requires only "that searches and seizures be reasonable."  *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985).  According to Anibowei, the government's actions were unreasonable because the government allegedly lacked reasonable suspicion to believe that his cell phone contained evidence of any crime respecting customs, immigration, or terrorism.  (*See* Doc. 1, ¶¶ 44–45.)

But "the Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior."  *Montoya de Hernandez*, 473 U.S. at 538.  "[T]he United States, as sovereign, has the inherent authority to protect, and a paramount interest in protecting, its territorial integrity."  *Flores-Montano*, 541 U.S. at 153.  Indeed, the Supreme Court has stressed that "[t]he Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border."  *Id.* at 152.  For this reason, it has long been acknowledged that "'searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and

examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border.'"  *Id.* at 152–53 (quoting *Ramsey*, 431 U.S. at 616).  Indeed, the border-search doctrine, which permits suspicionless searches of those persons and things crossing the border, has a history as old as the Fourth Amendment itself.  *See id.* at 153 (citing a statute authorizing border searches passed by the First Congress, and explaining that the government's authority to conduct warrantless searches at the border has an "impressive historical pedigree").

As the Supreme Court has held, "[r]outine searches of the persons and effects of entrants [into the United States] are not subject to any requirement of reasonable suspicion, probable cause, or warrant."  *Montoya de Hernandez*, 473 U.S. at 538.  The only exception the Court has suggested exists is for a narrow category of *personal* searches—"such as strip, body-cavity, or involuntary x-ray searches"—that are considered non-routine and for which reasonable suspicion may be required.  *Flores-Montano*, 541 U.S. at 152 (quoting *Montoya de Hernandez*, 473 U.S. at 541 n.4); *see also United States v. Sandler*, 644 F.2d 1163, 1167–68 (5th Cir. 1981) (explaining that while reasonable suspicion may be required for strip searches or body-cavity searches at the border, it is not required for less intrusive personal searches such as patdowns or frisks).[3]

Anibowei has not alleged that he was subjected to any such search, and, notably, the Supreme Court has rejected the attempt to extend the reasonable-suspicion

---

[3] The Supreme Court also suggested in *Flores-Montano* that some searches of property might be "so destructive as to require a different result."  541 U.S. at 156.  However, that issue is not implicated by the facts pleaded in Anibowei's complaint, as Anibowei does not contend that any action by the government had the effect of destroying his cell phone.

requirement beyond the category of "highly intrusive searches of the person." *Flores-Montano*, 541 U.S. at 152.  In *Flores-Montano*, customs officers removed and dismantled the gas tank of a car entering the country, leading to the discovery of narcotics inside.  *Id.* at 150–51.  Reversing a decision of the Ninth Circuit, which had held that such a search required reasonable suspicion under a theory that it went beyond a "routine" search, the Supreme Court explained that "[c]omplex balancing tests to determine what is a 'routine' search of a vehicle, as opposed to a more 'intrusive' search of a person, have no place in border searches of vehicles."  *Id.* at 152.

Accordingly, when the thing searched at the border is property (rather than a person), no balancing must be done to determine whether the search was "routine" or instead required reasonable suspicion, as would be the case with a strip search or body-cavity search.  *See United States v. McCauley*, 563 F. Supp. 2d 672, 677 (W.D. Tex. 2008) ("Relying on the Supreme Court's reasoning in *Flores-Montano*, this Court cannot equate the search of a computer with the search of a person.  The Court finds that the search of a computer is more analogous to the search of a vehicle and/or its contents."), *aff'd*, 420 F. App'x 400 (5th Cir. 2011)[4]; *United States v. Thompson*, 53 F. Supp. 3d 919, 920–21, 923 (W.D. La. 2014) (holding that no reasonable suspicion was required when DHS agents "performed data extractions on both a Nokia cell phone and an iPhone seized

---

[4] In the appeal in the *McCauley* case, the Fifth Circuit suggested that it agreed with the district court that reasonable suspicion is not required for searches of electronic devices at the border, but ultimately determined that it "need not decide whether the search was constitutionally permissible as a routine search under the border-search doctrine," because it could affirm the district court's decision (denying a motion to suppress) on the alternate ground that the defendant had given consent for the search.  *See McCauley*, 420 F. App'x at 401.

from [the defendant], completely downloading and copying their contents, including all personal information," because the search had occurred at an international border).

In both *McCauley* and *Thompson*, district courts within the Fifth Circuit rejected the argument that the Fourth Amendment requires reasonable suspicion before an electronic device may be searched (or detained, or copied) at the border. *See McCauley*, 563 F. Supp. 2d at 676–79; *Thompson*, 53 F. Supp. 3d at 920–23. And, the Fifth Circuit has approved generally of the warrantless search of electronic devices at the border, albeit in a case in which it apparently was not asked to address any question of whether something short of a warrant, such as reasonable suspicion, would be required. *See United States v. Pickett*, 598 F.3d 231, 233–35 (5th Cir. 2010) (rejecting the argument that a warrant was required for ICE agents to search a person's thumb drives, portable hard drive, and laptop memory card at the border). The same reasoning employed in *McCauley*, *Thompson*, and *Pickett* dictates that Anibowei has failed to allege a viable Fourth Amendment claim in this case. Under the border-search doctrine, the search of an electronic device at the border is reasonable—and therefore does not offend the Constitution—by virtue of the fact that it occurs at the border.

Indeed, as noted above, both the Supreme Court and the Fifth Circuit have consistently refused to expand any requirement of reasonable suspicion for border searches beyond the most intrusive searches of a person's body.[5] *See Flores-Montano*,

---

[5] It seems that only one Circuit has extended the reasonable-suspicion requirement to any type of non-personal border search of an electronic device. Specifically, in *United States v. Cotterman*, 709 F.3d 952, 956–57 (9th Cir. 2013) (en banc), the Ninth Circuit required a showing of reasonable suspicion to justify the government's detention and shipping of the defendant's laptop computer 170 miles from the border to perform a "comprehensive forensic evaluation" at a later date, which search was capable of restoring

541 U.S. at 152–53 (holding that reasonable suspicion was not required to remove and

dismantle a gas tank at the border); *United States v. Kelly*, 302 F.3d 291, 294 (5th Cir.

2002) (explaining that non-routine searches requiring reasonable suspicion "include body

cavity searches, strip searches, and x-rays," but that a "canine sniff" that made contact

with the person's "groin area" did not require reasonable suspicion); *Sandler*, 644 F.2d at

1167–69 (declining to require reasonable suspicion for patdowns or frisks that fall short

of a strip search).  Because Anibowei does not allege that he was subjected to any such

highly intrusive search of his person, there is no basis for his claim that the Fourth

Amendment was violated due to an alleged lack of reasonable suspicion.

### 2. Anibowei has not stated any claim for relief under the First Amendment because there is no First Amendment exception to the border-search doctrine.  (Second Cause of Action)

Anibowei fares no better with his allegations that the government violated the First

Amendment.  The basis for this claim appears to be Anibowei's contention that his cell

phone contained private, sensitive, or confidential materials.  (Doc. 1, ¶ 42–43.)

Presumably Anibowei would argue that these were protected by the First Amendment,

perhaps as expressive materials.  However, the Supreme Court has never recognized an

---

deleted material and retrieving images viewed on web sites.  The Ninth Circuit's reasoning was
essentially that these actions were so intrusive as to require reasonable suspicion, *see id.* at 962–68, which
approach would seem to conflict with the Supreme Court's previous admonition to the Ninth Circuit not
to create "[c]omplex balancing tests" for border searches of property, *Flores-Montano*, 541 U.S. at 152,
and is also one that the Fifth Circuit has refrained from adopting, *see McCauley*, 420 F. App'x at 400–01.
(The Ninth Circuit ultimately affirmed the defendant's conviction in *Cotterman* on the ground that there
was reasonable suspicion for the "forensic" search, so the government did not have any occasion to obtain
further review of the ruling that reasonable suspicion was required.)  In any event, Anibowei does not
allege any facts similar to the days-long detention and shipping-to-another-location of a computer as in
*Cotterman*, but instead states that his cell phone was returned to him at the conclusion of his interview.
(Doc. 1, ¶¶ 35–37.)

exception to the border-search doctrine based on the First Amendment status of the material being searched, and in *New York v. P.J. Video, Inc.*, 475 U.S. 868, 874 (1986), it rejected an analogous argument that would have required a higher standard of probable cause for warrant applications when expressive material is involved.  The Court instead explained that the seizure of such materials "should be evaluated under the same standard of probable cause used to review warrant applications generally."  *Id.* at 875.  Since under *P.J. Video* it is clear that the First Amendment does not justify any exception to the usual standards of reasonableness for a non-border search, it likewise would follow that the First Amendment does not change the calculus for assessing when a border search is reasonable.

Indeed, in *United States v. Ickes*, 393 F.3d 501, 506 (4th Cir. 2005), the Fourth Circuit squarely rejected an attempt to "carve out a First Amendment exception to the border search doctrine" for searches of electronic devices at the border.  In addition to noting that Supreme Court precedent did not support an exception, the court explained that adopting such a rule would create "significant headaches" as government officers would be faced with making difficult on-the-spot determinations about the First Amendment value of materials crossing the border.  *Id.* at 506.  Because "[t]hese sorts of legal wrangles at the border are exactly what the Supreme Court wished to avoid by sanctioning expansive border searches," the claim of First Amendment protection was rejected.  *Id.*  For the same reasons, Anibowei's allegations of a First Amendment violation fail to state any claim for relief.

**C.    Anibowei has not pleaded any facts about government officials outside of DHS; this is an additional basis for dismissing the non-DHS defendants from the case.**

Finally, all claims against the non-DHS defendants—the heads of the Department of Justice, FBI, FBI Terrorist Screening Center, and National Counterterrorism Center, in their official capacities—are subject to dismissal for the additional reason that Anibowei has failed to plead any specific facts showing involvement by any government officers from these agencies in any of the alleged wrongdoing made the basis of the suit.  (*See* Doc. 1.)  Other than identifying the heads of these agencies as defendants, the complaint sets forth no facts showing involvement by them or their agencies.  Accordingly, Anibowei has not established standing to pursue claims against these defendants because he has not identified an injury he allegedly sustained that was caused by them.  *See Defenders of Wildlife,* 504 U.S. at 560.  He also fails to state a claim against them because he has not pleaded facts showing that they had any involvement in the alleged Fourth and First Amendment violations.  *See Escamilla v. City of Dallas*, No. 3:03-CV-848-K, 2004 WL 1932867, at *5 (N.D. Tex. Aug. 30, 2004) (in a multi-defendant suit, dismissing claims against the City of Dallas under Rule 12(b)(6) because the plaintiff had "not pleaded any involvement of the City" in the alleged wrongdoing).

## IV.    Conclusion

For all these reasons, Anibowei's complaint should be dismissed under either Rule 12(b)(1) or Rule 12(b)(6).  The defendants further request general relief.

Respectfully submitted,

JOHN R. PARKER
United States Attorney

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

Certificate of Service

On March 6, 2016, I electronically submitted the foregoing document with the

clerk of court for the U.S. District Court, Northern District of Texas, using the electronic

case filing system of the court.  I hereby certify that I have served all parties

electronically or by another manner authorized by Federal Rule of Civil Procedure

5(b)(2).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney