IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

---

GEORGE ANIBOWEI,

     Plaintiff,

v.

LORETTA LYNCH\*, Attorney General of
the United States, in her official capacity,
*et al.*,

     Defendants.

Civil Action No. 3:16-CV-3495-D

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S FIRST AMENDED COMPLAINT

JOHN R. PARKER
United States Attorney

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:   214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

---

\* The defendants are federal officials sued in their official capacities.  Some no longer hold government office, and hence their successors should be "automatically substituted" as defendants pursuant to Fed. R. Civ. P. 25(d).  These successors are:  Jeff Sessions (Attorney General, for Loretta Lynch), John F. Kelly (Secretary of Homeland Security, for Jeh Johnson), Kevin K. McAleenan (Acting Commissioner of U.S. Customs and Border Protection, for R. Gil Kerlikowske), Huban Gowadia (Acting Administrator of the U.S. Transportation Security Administration, for Peter Neffenger), and Thomas D. Homan (Acting Director of U.S. Immigration and Customs Enforcement, for Sarah R. Saldana).

# Table of Contents

I.   Background ............................................................................................ 2

    A.   The government's authority to conduct border searches. ........................... 2

    B.   Anibowei's allegations and request for declaratory and injunctive relief ........................................................................................................ 4

    C.   The government defendants. ....................................................................... 5

II.   Legal Standards ................................................................................... 6

III.   Argument and Authorities ..................................................................... 7

    A.   Anibowei cannot establish standing to obtain the purely equitable relief he seeks. ........................................................................................... 7

    B.   Even assuming for the sake of argument that Anibowei has standing, the first amended complaint is subject to dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted ........ 13

        1.   Anibowei's Fourth Amendment claim fails because reasonable suspicion was not required in order to inspect Anibowei's cell phone at the border.  (First Cause of Action) ........ 13

        2.   Anibowei has not stated any claim for relief under the First Amendment because there is no First Amendment exception to the border-search doctrine.  (Second Cause of Action) .............. 18

    C.   Anibowei has not pleaded any non-speculative facts showing any involvement by a number of the government officials (or their agencies) who are named as defendants; this is an additional basis for dismissing these defendants from the case. .......................................... 19

IV.   Conclusion ......................................................................................... 21

# Table of Authorities

## Cases

*Abidor v. Napolitano*,
    990 F. Supp. 2d 260 (E.D.N.Y. 2013).................................................. 10, 11, 12, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................... 6, 7

*Bauer v. Texas*,
    341 F.3d 352 (5th Cir. 2003)............................................................... 8, 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................... 6, 7, 21

*Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*,
    855 F. Supp. 2d 615 (N.D. Tex. 2012)..................................................... 6

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ............................................................................. 8, 9

*Eccles v. Peoples Bank of Lakewood Vill.*,
    333 U.S. 426 (1948) ............................................................................. 11

*Escamilla v. City of Dallas*,
    No. 3:03-CV-848-K, 2004 WL 1932867 (N.D. Tex. Aug. 30, 2004)................... 21

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007)................................................................. 6

*Little v. Obryan*,
    655 F. App'x 1027 (5th Cir. 2016).......................................................... 6

*Little v. Tex. Attorney Gen.*,
    No. 3:14-CV-3089-D, 2015 WL 5613321 (N.D. Tex. Sept. 24, 2015) ................. 6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ......................................................................... 7, 21

*New York v. P.J. Video, Inc.*,
    475 U.S. 868 (1986) ............................................................................. 18

*Procter & Gamble Co. v. Amway Corp.*,
    242 F.3d 539 (5th Cir. 2001)................................................................. 7

*Raines v. Byrd,*
 521 U.S. 811 (1997) ........................................................................................ 8

*Ramming v. United States,*
 281 F.3d 158 (5th Cir. 2001) ......................................................................... 6

*Ruiz v. Estelle,*
 161 F.3d 814 (1998) ........................................................................................ 8

*Stockman v. Fed. Election Comm'n,*
 138 F.3d 144 (5th Cir. 1998) ......................................................................... 6

*United States v. Cotterman,*
 709 F.3d 952 (9th Cir. 2013) ....................................................................... 17

*United States v. Ickes,*
 393 F.3d 501 (4th Cir. 2005) .................................................................. 10, 19

*United States v. Flores-Montano,*
 541 U.S. 149 (2004) ...................................................... 2, 14, 15, 16, 17

*United States v. Kelly,*
 302 F.3d 291 (5th Cir. 2002) ....................................................................... 17

*United States v. McCauley,*
 420 F. App'x 400 (5th Cir. 2011) ........................................................... 16, 17

*United States v. McCauley,*
 563 F. Supp. 2d 672 (W.D. Tex. 2008) ..................................................... 16

*United States v. Montoya de Hernandez,*
 473 U.S. 531 (1985) .................................................................................. 13, 14

*United States v. Pickett,*
 598 F.3d 231 (5th Cir. 2010) ....................................................................... 16

*United States v. Ramsey,*
 431 U.S. 606 (1977) ..................................................................................... 2, 14

*United States v. Sandler,*
 644 F.2d 1163 (5th Cir. 1981) ............................................................. 15, 17–18

*United States v. Thompson,*
 53 F. Supp. 3d 919 (W.D. La. 2014) ..................................................... 16, 17

*Valley Forge Christian College v. Americans United for Separation of
  Church & State, Inc.*, 454 U.S. 464 (1982) ............................................................ 8

*Walch v. Adjutant General's Dep't of Tex.*,
  533 F.3d 289 (5th Cir. 2008) ................................................................................ 3

*Warth v. Seldin*,
  422 U.S. 490 (1975) .............................................................................................. 7

## Statutes and Rules

6 U.S.C. § 202 ........................................................................................................ 3

6 U.S.C. § 202(1) .................................................................................................... 3

Fed. R. Civ. P. 8(a)(2) ........................................................................................... 7

Fed. R. Civ. P. 12(b)(1) ............................................................................ 2, 5, 6, 21

Fed. R. Civ. P. 12(b)(6) ...................................................................... 2, 5, 6, 13, 21

## Other Authorities

10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
  *Federal Practice & Procedure* § 2762 (3d ed. 1998) ............................................ 11

This suit arises out of a search by government officers of plaintiff George Anibowei's cell phone upon his return to the country from international travel.  Subject only to very narrow exceptions for highly intrusive searches of a person's body or destructive searches of property, neither of which is at issue here, the Supreme Court has made clear that searches of persons or property at the border are not subject to any requirement of reasonable suspicion (or any greater showing, such as probable cause). Instead, such searches are considered reasonable—and do not offend the Constitution— simply by virtue of the fact that they occur at the border, where the government's power to protect the territorial integrity of the country is at a maximum and the government's search authority is therefore broad.

Nonetheless, Anibowei claims in this suit that his Fourth and First Amendment rights were violated by the government's actions in inspecting the contents of his cell phone at the border, and on that basis he seeks various forms of equitable relief, including a declaration that the border search of his cell phone without reasonable suspicion violates the Constitution.   As explained below, though, Anibowei's first amended complaint is subject to dismissal on two grounds.  First, Anibowei lacks standing to obtain the purely equitable relief he seeks, because the fact that Anibowei was exposed to allegedly illegal conduct in the past is not sufficient to entitle him to litigate in federal court absent some showing that the allegedly illegal act will be repeated against him in the future.  Second, Anibowei has failed to state a claim upon which relief can be granted because neither the Fourth Amendment nor the First Amendment requires a showing of reasonable suspicion before an electronic device can be searched at the border.

Accordingly, the defendants request that Anibowei's first amended complaint be dismissed in its entirety, under either Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Finally, there is an additional ground for partial dismissal of Anibowei's suit as to some of the defendants, because while Anibowei has named eight different defendants in their official capacities as the heads of various government agencies, he has not pleaded any facts showing involvement by a number of those agencies in the matters at issue in the first amended complaint.

## I.   Background

### A.   The government's authority to conduct border searches.

"[T]he United States, as sovereign, has the inherent authority to protect, and a paramount interest in protecting, its territorial integrity."  *United States v. Flores-Montano*, 541 U.S. 149, 153 (2004).  "The Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border.  Time and again, we have stated that 'searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border.'"  *Id.* at 152–53 (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)).

This border-search power of the government has an "impressive historical pedigree," with the First Congress having authorized a wide range of border-search activities.  *Id.* at 153.  Today it is the Department of Homeland Security (DHS), principally through its component agencies U.S. Customs and Border Protection (CBP) and U.S. Immigration and Customs Enforcement (ICE), that is the first line of defense at

the border.  DHS has responsibility for administering the customs and immigration laws

of the United States, securing the borders, and inspecting individuals and items that seek

entry into the United States.  *See* 6 U.S.C. § 202.  These responsibilities include

"[p]reventing the entry of terrorists and the instruments of terrorism into the United

States," *id.* § 202(1), as well as enforcing hundreds of laws and regulations, including

those respecting immigration, currency and financial transactions, customs, commerce

and trade, copyrights and trademarks, narcotics, the safety of agricultural products and

other goods, and import and export controls on wildlife and plants, chemical and

biological weapons, guns, and other items.  *See generally* Summary of Laws Enforced by

CBP, https://www.cbp.gov/trade /rulings/summary-laws-enforced/us-code (published

Mar. 8, 2014).

    As noted in Anibowei's first amended complaint, CBP and ICE have both issued

formal policy statements that authorize their officers and agents to inspect electronic

devices carried across international borders by travelers.  (*See* Doc. 8, ¶¶ 40–42.)  These

statements establish policies and procedures governing the gathering of information from

electronic devices at the border, as well as for the retention, sharing, safeguarding, and

destruction of such information.  *See* CBP Directive No. 3340-049, Border Search of

Electronic Devices Containing Information (Aug. 20, 2009); ICE Directive No. 7-6.1,

Border Searches of Electronic Devices (Aug. 18, 2009).[1]

---

[1] Because these policies are referenced in Anibowei's first amended complaint, they may be considered
here.  *See Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008).  The CBP
statement is available at https://www.dhs.gov/xlibrary/assets/cbp_directive_3340-049.pdf, and the ICE
statement at https://www.dhs.gov/xlibrary/assets/ice_border_search_electronic_devices.pdf.

**B.      Anibowei's allegations and request for declaratory and injunctive relief.**

According to the first amended complaint, Anibowei is a U.S. citizen who lives in

the Dallas area but travels internationally with some frequency.  (Doc. 8, ¶¶ 6, 25.)  On

October 10, 2016, Anibowei returned from a trip to Canada on a flight that landed at

Dallas/Fort Worth International Airport.  (Doc. 8, ¶ 31.)  Upon exiting the plane,

Anibowei was met by DHS officers and questioned about various matters, including the

purpose of his trip to Canada.  (Doc. 8, ¶¶ 34–35.)  During this interview, Anibowei's cell

phone was briefly "detained for 'examination and copying'" and then returned to him.

(Doc. 8, ¶ 35.)  According to Anibowei, this encounter with government officers lasted

for approximately two hours.  (Doc. 8, ¶ 36.)

Anibowei states that his cell phone contained "private and sensitive materials" that

he did not intend for others to view without his consent, and that the government did not

have "reasonable suspicion to believe that [Anibowei's] device[] contained any material

constituting a violation [of] any law respecting customs, immigration, or terrorism."

(Doc. 8, ¶¶ 44, 46.)  He also alleges on information and belief that electronic information

from his cell phone may have been disclosed to other government agencies after the

search.  (Doc. 8, ¶ 43.)  In addition to the October 10, 2016 inspection, Anibowei states

that he has been selected for "secondary inspection" on various instances during the

course of international travel, and that on one other occasion a customs officer "went

through [Anibowei's] text messages and emails" on his cell phone during an inspection

when Anibowei was returning from Nigeria, but apparently without copying anything

from the phone.  (Doc. 8, ¶¶ 25, 38.)

Based on the foregoing, Anibowei asserts that the government's actions in inspecting his cell phone violated the Fourth and First Amendments of the Constitution.[2] (Doc. 8, ¶¶ 47–48.)  As relief, Anibowei requests (1) a declaration that the detention and seizure of his cell phone and the review, copying, retention, and dissemination of its contents without reasonable suspicion violates the Fourth and First Amendments, and (2) injunctions requiring the government to return or expunge any information retained from Anibowei's cell phone and to disclose details about whether or how any information was disseminated to other agencies.  (Doc. 8, Prayer.)

## C.      The government defendants.

Anibowei's first amended complaint names as defendants eight government officials, each in his or her official capacity as the head of a federal department or agency.  These are the Secretary of Homeland Security and the heads of CBP, ICE, and the Transportation Security Administration (TSA) (which are DHS components); the Attorney General and the heads of the Federal Bureau of Investigation (FBI) and Terrorist Screening Center (which is an FBI component); and the head of the National Counterterrorism Center (which is a component of the Office of the Director of National Intelligence).  (*See* Doc. 8, ¶¶ 7–14.)  As explained below, all defendants now move for dismissal under Rule 12(b)(1), for lack of standing, and under Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

---

[2] Anibowei also makes allegations about his international travel and the revocation of his participation in the CBP "Global Entry Trusted Traveler" program.  (*See* Doc. 8, ¶¶ 15–30.)  However, Anibowei does not appear to assert any cause of action or seek any relief relating to these matters.

## II.      Legal Standards

"Standing is an issue of subject matter jurisdiction, and thus can be contested by a Rule 12(b)(1) motion to dismiss." *Little v. Tex. Attorney Gen.*, No. 3:14-CV-3089-D, 2015 WL 5613321, at *2 n.5 (N.D. Tex. Sept. 24, 2015) (internal quotation marks and citation omitted), *aff'd*, *Little v. Obryan*, 655 F. App'x 1027 (5th Cir. 2016).  "Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court evaluates the sufficiency of the plaintiff's complaint by "'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F. Supp. 2d 615, 618 (N.D. Tex. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) (internal brackets omitted).  To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also*

*Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief

above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged—but it

has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679

(quoting Rule 8(a)(2)).  "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."  *Id.* at 678 (citation omitted).

### III.    Argument and Authorities

**A.    Anibowei cannot establish standing to obtain the purely equitable relief he seeks.**

The standing doctrine addresses the question of who may properly bring suit in

federal court, and "is an essential and unchanging part of the case-or-controversy

requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  It

"involves both constitutional limitations on federal-court jurisdiction and prudential

limitations on its exercise."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  To establish

standing, a plaintiff must meet both constitutional and prudential requirements.  *See, e.g.*,

*Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001).

The "irreducible constitutional minimum" of standing requires a plaintiff to show

(1) a concrete and particularized injury in fact which is actual or imminent, not

conjectural or hypothetical; (2) a causal connection between the injury and the

defendant's conduct; and (3) that the injury will likely be redressed by a favorable

decision.  *Defenders of Wildlife,* 504 U.S. at 560.  And "[b]eyond the constitutional

requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982). "Prudential standing limitations help courts identify proper questions for judicial adjudication, and further define the judiciary's role in the separation of powers." *Ruiz v. Estelle*, 161 F.3d 814, 829 n.22 (5th Cir. 1998). The law of standing is built on separation-of-powers principles and, as such, the standing inquiry is "especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997).

Here, Anibowei seeks equitable relief—a declaratory judgment and preliminary and permanent injunctions—under a premise that the government violated the Fourth and First Amendments by searching and copying information from his cell phone at the border. (*See* Doc. 8, ¶¶ 47–48 & Prayer.) However, even assuming some constitutional violation did occur, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (internal quotation marks and citation omitted). Instead, to obtain declaratory or injunctive relief based on an alleged past wrong, "a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." *Id.* (citation omitted).

For example, in *City of Los Angeles v. Lyons*, 461 U.S. 95, 98 (1983), the Supreme Court considered whether a plaintiff who had been subjected to a chokehold by police had standing to seek equitable relief in the form of (i) a declaration that the use of such

chokeholds violated the Constitution and (ii) an injunction against their future use.  The Court explained that the plaintiff would have standing only if he could show that he "would again be stopped for a traffic or other violation in the reasonably near future" and "that strangleholds are applied by the Los Angeles police to every citizen who is stopped or arrested regardless of the conduct of the person stopped." *Id.* at 108.  Noting that the plaintiff did not claim to have been subjected to a chokehold on any other occasion, the Court found that the "odds" of a repeat occurrence of the allegedly illegal conduct were not "sufficient to make out a federal case for equitable relief." *Id.*

The same is true with respect to Anibowei's suit challenging the allegedly unconstitutional actions of the government in inspecting his cell phone.  Anibowei's first amended complaint details that he has traveled internationally on numerous occasions and has had many encounters with government officers when being processed through customs.  (*See* Doc. 8, ¶¶ 22–25.)  Nonetheless, Anibowei alleges that his cell phone was "detained for 'examination and copying'" on only a single occasion, and that on only one other occasion did a government officer even make any examination of the phone.  (*See* Doc. 8, ¶¶ 31–40.)  Accordingly, Anibowei's allegations are not "sufficient to make out a federal case for equitable relief" because they do not establish a likelihood that Anibowei's cell phone will be similarly searched again in the future.  *Lyons*, 461 U.S. at 108; *see also Bauer*, 341 F.3d at 358.

Indeed, a similarly situated plaintiff—whose electronic devices were actually subject to a much more intrusive seizure and detention for inspection—was found to lack standing to challenge the government's border-search authority in civil litigation in

*Abidor v. Napolitano*, 990 F. Supp. 2d 260 (E.D.N.Y. 2013).   In that case, the plaintiff

Abidor had his cell phones and other electronic devices seized when returning to the

United States from abroad, with some devices kept for eleven days and only later

returned to him by mail.   *Id.* at 267–68.   Abidor sued various government officials

seeking purely equitable relief, including a declaration that his rights had been violated

and an injunction against copying the information from his devices and for the

expungement of the information from the government's possession.   *Id.* at 264, 275.

In dismissing Abidor's claims for lack of standing, the court employed reasoning

that is equally applicable to Anibowei's claims.   The court took judicial notice of the fact

that "there is less than a one in a million chance that a computer carried by an inbound

international traveler will be detained" at customs when a traveler is entering the United

States.   *Id.* at 271; *see also United States v. Ickes*, 393 F.3d 501, 506–07 (4th Cir. 2005)

(rejecting as "far-fetched" the suggestion that "any person carrying a laptop computer . . .

on an international flight would be subject to a search of the files on the computer hard

drive[,]" because "[c]ustoms agents have neither the time nor the resources to search the

contents of every computer").   Given these low odds of a future search occurring, there

was at most only an "alleged injury based on speculation as to conduct which may or may

not occur at some unspecified future date," which was insufficient to support an action in

federal court.   *Abidor*, 990 F. Supp. 2d at 272.   The court also noted that Abidor had

frequently traveled internationally and had been stopped at the border on other occasions,

but that his electronic devices had been comprehensively searched only once.   *Id.* at 274–

75.   The same is true of Anibowei, according to his own first amended complaint.   (*See*

Doc. 8, ¶¶ 15–40 (detailing various occasions of international travel by Anibowei, but only the single inspection and copying of his cell phone on October 10, 2016, and only one other occasion on which his cell phone was inspected in any way).)  For all the same reasons that the similarly situated plaintiff lacked standing in the *Abidor* case, Anibowei lacks standing in this case in which he seeks essentially the same type of equitable relief.

Moreover, even if it were assumed that Anibowei could establish Article III standing, dismissal would still be warranted for closely related prudential reasons.  "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest.  It is always the duty of a court of equity to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired relief."  *Eccles v. Peoples Bank of Lakewood Vill.*, 333 U.S. 426, 431 (1948) (citations omitted).  Thus, "[e]specially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative."  *Id.*; *see also Abidor*, 990 F. Supp. 2d at 274 ("'The Supreme Court has frequently, although not invariably, indicated a marked reluctance to have important issues of public law resolved by declaratory judgments.'" (quoting 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2762 (3d ed. 1998))).

Anibowei essentially seeks a judgment from this Court that the Constitution requires the government to have reasonable suspicion before undertaking the search of an electronic device at the border.  (*See* Doc. 8, ¶¶ 47–48 & Prayer.)  However, as discussed in more detail below, neither the Supreme Court nor the Fifth Circuit has ever recognized

such a requirement.  Anibowei therefore cannot show a "clear" need for the relief he

seeks, *Eccles*, 333 U.S. at 431, and indeed the type of judgment he seeks would represent

a marked departure from the longstanding principles that the government's border-search

authority is broad and that border searches are reasonable simply by virtue of the fact that

they occur at the border.  Furthermore, while it is conceivable that in some instances it

might become absolutely necessary and unavoidable for a court to address the legality of

an electronic border search (such as in a criminal prosecution where the defendant's

freedom may hinge on whether evidence from a border search of an electronic device is

admitted into evidence or instead suppressed), Anibowei's civil suit does not present such

a case. *See Abidor*, 990 F. Supp. 2d at 272 (contrasting a claim for a declaratory

judgment regarding the legality of a border search, for which standing was lacking, with

that same issue being raised in a criminal case in the context of a motion to suppress).

In addition, declining to exercise discretionary equitable jurisdiction over a suit

like Anibowei's has the added benefit of affording Congress and the relevant Executive

Branch agencies the first opportunity to "respond to any abuses that should develop as a

consequence" of government policies providing for border searches of electronic devices.

*Id.* at 274.  As the CBP and ICE border-search policies cited by Anibowei make clear, the

government is "sensitive to the privacy and confidentiality issues posed by border

searches of electronic devices," and has made "efforts to cabin the nature and extent of

such searches" while also putting in place "significant precautionary measures" to protect

sensitive information.  *Id.*  Congress is likewise aware that electronic devices are subject

to being searched at the border, but has not seen fit to withdraw or modify the broad

search authority that it has consistently granted to government officers at the border for well over 200 years (including at the time the Fourth Amendment was adopted).[3]  *See id.* (referencing a Congressional report on border searches of electronic devices).  As the *Abidor* court noted, these factors counsel against entertaining this suit.  *Id.*

In sum, under both the Article III case-or-controversy requirement and under closely related prudential requirements of standing, Anibowei's first amended complaint is subject to dismissal for lack of standing.

**B.    Even assuming for the sake of argument that Anibowei has standing, the first amended complaint is subject to dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.**

**1.    Anibowei's Fourth Amendment claim fails because reasonable suspicion was not required in order to inspect Anibowei's cell phone at the border.  (First Cause of Action)**

Anibowei's allegations that the government's search and seizure of information from his cell phone at the border violated the Fourth Amendment fail to state any claim for relief.  The Fourth Amendment requires only "that searches and seizures be reasonable."  *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985).

---

[3] Congress' continuing awareness of this issue can be seen in the fact that, just within the last week, legislation was filed in both the House and the Senate that would require the government to obtain a warrant to search electronic devices of U.S. citizens at the border.  *See* H.R. 1899, 115th Cong. (2017) (introduced Apr. 4, 2017); S. 823, 115th Cong. (2017) (same).  Notably, though, one of the Senate sponsors of this legislation explained that under current law, electronic border searches are permissible "without suspicion or a warrant."  *See* Press Release, Wyden, Paul, Polis and Farenthold Bill Requires Warrants to Search Americans' Digital Devices at the Border, https://www.wyden.senate.gov/news/press-releases/wyden-paul-polis-and-farenthold-bill-requires-warrants-to-search-americans-digital-devices-at-the-border (Apr. 4, 2017) (explaining that the proposed legislation is intended to "shut[] down a legal Bermuda Triangle that currently allows law enforcement agencies to search Americans' phones and laptops – including pictures, email, and anything on the device and possibly the cloud – when they cross the border without suspicion or a warrant").  In any event, the fact that there is pending legislation on the same issues raised by Anibowei's suit reinforces that these "important issues of public law" should not be resolved by the issuance of a declaratory judgment in a civil suit.  *See Abidor*, 990 F. Supp. 2d at 274.

According to Anibowei, the government's actions were unreasonable because the government allegedly lacked reasonable suspicion to believe that his cell phone contained evidence of any crime respecting customs, immigration, or terrorism.  (*See* Doc. 8, ¶¶ 46–47.)

But "the Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior." *Montoya de Hernandez*, 473 U.S. at 538. "[T]he United States, as sovereign, has the inherent authority to protect, and a paramount interest in protecting, its territorial integrity." *Flores-Montano*, 541 U.S. at 153.  Indeed, the Supreme Court has stressed that "[t]he Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border." *Id.* at 152. For this reason, it has long been acknowledged that "'searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border.'" *Id.* at 152–53 (quoting *Ramsey*, 431 U.S. at 616).  Indeed, the border-search doctrine, which permits suspicionless searches of those persons and things crossing the border, has a history as old as the Fourth Amendment itself.  *See id.* at 153 (citing a statute authorizing border searches passed by the First Congress, and explaining that the government's authority to conduct warrantless searches at the border has an "impressive historical pedigree").

As the Supreme Court has held, "[r]outine searches of the persons and effects of entrants [into the United States] are not subject to any requirement of reasonable suspicion, probable cause, or warrant." *Montoya de Hernandez*, 473 U.S. at 538.  The

only exception the Court has suggested exists is for a narrow category of *personal* searches—"such as strip, body-cavity, or involuntary x-ray searches"—that are considered non-routine and for which reasonable suspicion may be required. *Flores-Montano*, 541 U.S. at 152 (quoting *Montoya de Hernandez*, 473 U.S. at 541 n.4); *see also United States v. Sandler*, 644 F.2d 1163, 1167–68 (5th Cir. 1981) (explaining that while reasonable suspicion may be required for strip searches or body-cavity searches at the border, it is not required for less intrusive personal searches such as patdowns or frisks).[4]

Anibowei has not alleged that he was subjected to any such search, and, notably, the Supreme Court has rejected the attempt to extend the reasonable-suspicion requirement beyond the category of "highly intrusive searches of the person." *Flores-Montano*, 541 U.S. at 152. In *Flores-Montano*, customs officers removed and dismantled the gas tank of a car entering the country, leading to the discovery of narcotics inside. *Id.* at 150–51. Reversing a decision of the Ninth Circuit, which had held that such a search required reasonable suspicion under a theory that it went beyond a "routine" search, the Supreme Court explained that "[c]omplex balancing tests to determine what is a 'routine' search of a vehicle, as opposed to a more 'intrusive' search of a person, have no place in border searches of vehicles." *Id.* at 152.

Accordingly, when the thing searched at the border is property (rather than a person), no balancing must be done to determine whether the search was "routine" or

_____

[4] The Supreme Court also suggested in *Flores-Montano* that some searches of property might be "so destructive as to require a different result." 541 U.S. at 156. However, that issue is not implicated by the facts pleaded in Anibowei's complaint, as Anibowei does not contend that any action by the government had the effect of destroying his cell phone.

instead required reasonable suspicion, as would be the case with a strip search or body-cavity search. *See United States v. McCauley*, 563 F. Supp. 2d 672, 677 (W.D. Tex. 2008) ("Relying on the Supreme Court's reasoning in *Flores-Montano*, this Court cannot equate the search of a computer with the search of a person. The Court finds that the search of a computer is more analogous to the search of a vehicle and/or its contents."), *aff'd*, 420 F. App'x 400 (5th Cir. 2011)[5]; *United States v. Thompson*, 53 F. Supp. 3d 919, 920–21, 923 (W.D. La. 2014) (holding that no reasonable suspicion was required when DHS agents "performed data extractions on both a Nokia cell phone and an iPhone seized from [the defendant], completely downloading and copying their contents, including all personal information," because the search had occurred at an international border).

In both *McCauley* and *Thompson*, district courts within the Fifth Circuit rejected the argument that the Fourth Amendment requires reasonable suspicion before an electronic device may be searched (or detained, or copied) at the border. *See McCauley*, 563 F. Supp. 2d at 676–79; *Thompson*, 53 F. Supp. 3d at 920–23. And, the Fifth Circuit has approved generally of the warrantless search of electronic devices at the border, albeit in a case in which it apparently was not asked to address any question of whether something short of a warrant, such as reasonable suspicion, would be required. *See United States v. Pickett*, 598 F.3d 231, 233–35 (5th Cir. 2010) (rejecting the argument

---

[5] In the appeal in the *McCauley* case, the Fifth Circuit suggested that it agreed with the district court that reasonable suspicion is not required for searches of electronic devices at the border, but ultimately determined that it "need not decide whether the search was constitutionally permissible as a routine search under the border-search doctrine," because it could affirm the district court's decision (denying a motion to suppress) on the alternate ground that the defendant had given consent for the search. *See McCauley*, 420 F. App'x at 401.

that a warrant was required for ICE agents to search a person's thumb drives, portable

hard drive, and laptop memory card at the border).  The same reasoning employed in

*McCauley*, *Thompson*, and *Pickett* dictates that Anibowei has failed to allege a viable

Fourth Amendment claim in this case.  Under the border-search doctrine, the search of an

electronic device at the border is reasonable—and therefore does not offend the

Constitution—by virtue of the fact that it occurs at the border.

Indeed, as noted above, both the Supreme Court and the Fifth Circuit have

consistently refused to expand any requirement of reasonable suspicion for border

searches beyond the most intrusive searches of a person's body.[6]  *See Flores-Montano*,

541 U.S. at 152–53 (holding that reasonable suspicion was not required to remove and

dismantle a gas tank at the border); *United States v. Kelly*, 302 F.3d 291, 294 (5th Cir.

2002) (explaining that non-routine searches requiring reasonable suspicion "include body

cavity searches, strip searches, and x-rays," but that a "canine sniff" that made contact

with the person's "groin area" did not require reasonable suspicion); *Sandler*, 644 F.2d at

---

[6] It seems that only one Circuit has extended the reasonable-suspicion requirement to any type of non-personal border search of an electronic device.  Specifically, in *United States v. Cotterman*, 709 F.3d 952, 956–57 (9th Cir. 2013) (en banc), the Ninth Circuit required a showing of reasonable suspicion to justify the government's detention and shipping of the defendant's laptop computer 170 miles from the border to perform a "comprehensive forensic evaluation" at a later date, which search was capable of restoring deleted material and retrieving images viewed on web sites.  The Ninth Circuit's reasoning was essentially that these actions were so intrusive as to require reasonable suspicion, *see id.* at 962–68, which approach would seem to conflict with the Supreme Court's previous admonition to the Ninth Circuit not to create "[c]omplex balancing tests" for border searches of property, *Flores-Montano*, 541 U.S. at 152, and is also one that the Fifth Circuit has refrained from adopting, *see McCauley*, 420 F. App'x at 400–01. (The Ninth Circuit ultimately affirmed the defendant's conviction in *Cotterman* on the ground that there was reasonable suspicion for the "forensic" search, so the government did not have any occasion to obtain further review of the ruling that reasonable suspicion was required.)  In any event, Anibowei does not allege any facts similar to the days-long detention and shipping-to-another-location of a computer as in *Cotterman*, but instead states that his cell phone was returned to him at the conclusion of his interview. (Doc. 8, ¶¶ 35–37.)

1167–69 (declining to require reasonable suspicion for patdowns or frisks that fall short of a strip search).  Because Anibowei does not allege that he was subjected to any such highly intrusive search of his person, there is no basis for his claim that the Fourth Amendment was violated due to an alleged lack of reasonable suspicion to support any search (or copying, or dissemination) of information from his phone.

> **2.      Anibowei has not stated any claim for relief under the First Amendment because there is no First Amendment exception to the border-search doctrine.  (Second Cause of Action)**

Anibowei fares no better with his allegations that the government violated the First Amendment.  The basis for this claim appears to be Anibowei's contention that his cell phone contained private, sensitive, or confidential materials.  (Doc. 8, ¶¶ 44–45.)  Presumably Anibowei would argue that these were protected by the First Amendment, perhaps as expressive materials.  However, the Supreme Court has never recognized an exception to the border-search doctrine based on the First Amendment status of the material being searched, and in *New York v. P.J. Video, Inc.*, 475 U.S. 868, 874 (1986), it rejected an analogous argument that would have required a higher standard of probable cause for warrant applications when expressive material is involved.  The Court instead explained that the seizure of such materials "should be evaluated under the same standard of probable cause used to review warrant applications generally."  *Id.* at 875.  Since under *P.J. Video* it is clear that the First Amendment does not justify any exception to the usual standards of reasonableness for a non-border search, it likewise would follow that the First Amendment does not change the calculus for assessing when a border search is reasonable.

Indeed, in *United States v. Ickes*, 393 F.3d 501, 506 (4th Cir. 2005), the Fourth Circuit squarely rejected an attempt to "carve out a First Amendment exception to the border search doctrine" for searches of electronic devices at the border.  In addition to noting that Supreme Court precedent did not support an exception, the court explained that adopting such a rule would create "significant headaches" as government officers would be faced with making difficult on-the-spot determinations about the First Amendment value of materials crossing the border.  *Id.* at 506.  Because "[t]hese sorts of legal wrangles at the border are exactly what the Supreme Court wished to avoid by sanctioning expansive border searches," the claim of First Amendment protection was rejected.  *Id.*  For the same reasons, Anibowei's allegations of a First Amendment violation fail to state any claim for relief.

**C.**     **Anibowei has not pleaded any non-speculative facts showing any involvement by a number of the government officials (or their agencies) who are named as defendants; this is an additional basis for dismissing these defendants from the case.**

Finally, all claims against the Attorney General and the heads of the TSA, FBI, FBI Terrorist Screening Center, and National Counterterrorism Center (i.e., the defendants other than the heads of CBP and ICE, and the Secretary of Homeland Security in whose department these two agencies reside) are subject to dismissal for the additional reason that Anibowei has failed to plead any specific facts showing involvement by any government officers from these agencies in any of the alleged wrongdoing made the basis of the suit.  (*See* Doc. 8.)  As explained below, other than identifying the heads of these agencies as defendants, the first amended complaint sets forth no non-speculative facts

showing any wrongdoing by them or their agencies.

Anibowei first attempts to link some of these defendants to the case by stating that the National Counterterrorism Center and the FBI are "the two government entities that are primarily responsible for 'nominating' individuals for inclusion in the terrorist watch list," and that "certain passenger complaints [about border screening procedures] . . . actually have some connection to the Terrorist Watch list." (Doc. 8, ¶ 30.) The factual support offered for this latter statement is a June 30, 2016 letter Anibowei received after he made an inquiry to the DHS Traveler Redress Inquiry Program (TRIP). (*See* Doc. 8, ¶ 30; *see also* Doc. 8-4 (copy of the June 30, 2016 letter).) But the only reference to any connection to the terrorist watchlist in the June 30, 2016 letter is the statement—possibly in response to some inquiry by Anibowei about a terrorist watchlist—that "less than 1% of the DHS TRIP complainants actually have some connection to the Terrorist Watchlist." (Doc. 8-4.) Accordingly, by stating that Anibowei's traveler redress request likely had no connection to the terrorist watchlist, the June 30, 2016 letter does not establish any link between the FBI, National Counterterrorism Center, and any terrorist watchlist, on the one hand, and the events at issue in this case, on the other.

Additionally, Anibowei's suggestion that he may have been subjected to heightened searching or inspection at the border (i.e., by CBP/ICE) because of information provided by other defendants who do not have a border-search function, but who instead administer or have responsibility for terrorist screening or watchlists, is no more than speculation. (*See* Doc. 8, ¶ 30.) And the same is true of Anibowei's assertion that these other defendants may have received information developed during some border

search or inspection that Anibowei previously underwent—again, this is merely speculation.  (Doc. 8, ¶ 30.)  Indeed, Anibowei provides no basis whatsoever for these assertions beyond stating the responsibilities and missions of the government agencies themselves, which is not sufficient to raise a plausible claim for relief against these defendants.  *See Twombly*, 550 U.S. at 557 (finding that "a naked assertion . . . without some further factual enhancement [] stops short of the line between possibility and plausibility of entitlement to relief") (internal brackets, quotation marks, and citation omitted)).

In sum, Anibowei has not established standing to pursue claims against the Attorney General and the heads of the TSA, FBI, FBI Terrorist Screening Center, and National Counterterrorism Center, because he has not identified any injury he allegedly sustained that was caused by them.  *See Defenders of Wildlife,* 504 U.S. at 560.  He also fails to state a claim against them because he has not pleaded facts showing that they had any involvement in the alleged Fourth and First Amendment violations so as to give rise to any plausible claim for relief against them*.  See Escamilla v. City of Dallas*, No. 3:03-CV-848-K, 2004 WL 1932867, at *5 (N.D. Tex. Aug. 30, 2004) (in a multi-defendant suit, dismissing claims against the City of Dallas under Rule 12(b)(6) because the plaintiff  had "not pleaded any involvement of the City" in the alleged wrongdoing).

## IV.     Conclusion

For all these reasons, Anibowei's first amended complaint should be dismissed under either Rule 12(b)(1) or Rule 12(b)(6).  The defendants further request general relief.

Respectfully submitted,

JOHN R. PARKER
United States Attorney

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:   214-659-8626
Facsimile:    214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

<u>Certificate of Service</u>

On April 10, 2016, I electronically submitted the foregoing document with the

clerk of court for the U.S. District Court, Northern District of Texas, using the electronic

case filing system of the court.  I hereby certify that I have served all parties

electronically or by another manner authorized by Federal Rule of Civil Procedure

5(b)(2).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney