IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

| | |
|---|---|
| GEORGE ANIBOWEI, | |
| Plaintiff, | |
| v. | Civil Action No. 3:16-CV-3495-D |
| LORETTA LYNCH, Attorney General of the United States, in her official capacity, *et al.*, | ** Relates to motion referred to the U.S. Magistrate Judge for recommendation (*See* Doc. 14, Order of Reference) |
| Defendants. | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff George Anibowei's response (Doc. 17) to the defendants' motion to dismiss (Doc. 13) narrows the issues in dispute in this case by making clear that Anibowei is challenging only a single border search conducted by the government, the October 10, 2016 search of his cell phone.  Anibowei argues that this search was "forensic" in nature and thus fell outside the scope of the government's usual authority for border searches.  But this argument is flawed in two significant respects.  First, it confirms that Anibowei lacks standing to litigate this case because the allegedly unlawful conduct—a "forensic" search without reasonable suspicion—occurred only once, and Anibowei cannot show a likelihood of reoccurrence sufficient to justify the exercise of equitable jurisdiction.  Second, it shows that even if Anibowei could establish standing, he nonetheless would fail to state a claim upon which relief can be granted. That is

because neither Supreme Court nor Fifth Circuit precedent supports the distinction that Anibowei is attempting to draw between "forensic" searches, which Anibowei says should be subject to a reasonable-suspicion requirement, and other "conventional" searches which carry no such requirement. Accordingly, and as explained in more detail below, the defendants' motion should be granted and Anibowei's first amended complaint should be dismissed.

### I.     Argument and Authorities

**A.     Anibowei lacks standing to obtain the equitable relief he seeks because, notwithstanding his frequent international travel, he was subjected to an allegedly wrongful electronic border search only on one isolated occasion.**

On the issue of standing, the defendants' motion pointed out that for a plaintiff to establish standing to seek equitable relief of the type Anibowei requests (declaratory and injunctive relief), it is not enough merely to show that some alleged violation occurred in the past. (*See* Doc. 13 at 7–13.)  Instead, as discussed by the Supreme Court in *City of Los Angeles v. Lyons*, 461 U.S. 95, 98, 108 (1983), the plaintiff must demonstrate a high likelihood of being subjected to a repeat occurrence of the alleged wrongdoing. The example given by the Supreme Court in *Lyons*, which involved the use of an allegedly unlawful chokehold by police, was that the plaintiff would need to show that he would be stopped by police in the reasonably near future *and* that chokeholds of the type at issue were routinely applied in police-citizen encounters, such that it was likely the plaintiff would be subjected to one again.  *See id.* at 108.  In the absence of this kind of showing, the plaintiff was held to lack standing.  *See id.* at 105.

The same deficiencies are likewise present in Anibowei's suit and dictate that it

should be dismissed for lack of standing. Anibowei's first amended complaint makes clear that he has had numerous encounters with government officers during the course of his frequent international travels. (*See* Doc. 8, ¶¶ 15–25.) And yet, in spite of these numerous encounters, Anibowei acknowledges that he believes he was subjected to an improper electronic border search on only one occasion—during the October 10, 2016 customs inspection.[1] (Doc. 8, ¶¶ 31–37.) As discussed in the defendants' motion, standing was found to be lacking under essentially identical circumstances in *Abidor v. Napolitano*, 990 F. Supp. 2d 260 (E.D.N.Y. 2013), where a plaintiff was likewise seeking equitable relief after having his electronic devices searched at the border. (*See* Doc. 13 at 9–12.) Indeed, the search in *Abidor* was even more intrusive than the search Anibowei is challenging. Abidor's electronic devices were seized by the government at customs and detained for eleven days. *See Abidor*, 990 F. Supp. 2d at 267–68. Anibowei's cell phone, in contrast, was returned to him at the conclusion of his interview on the same day he arrived in the United States. (*See* Doc. 8, ¶ 37.) Notably, Anibowei's response does not even mention the *Abidor* case, much less attempt to distinguish it. Given that Abidor's claims were dismissed for lack of standing, Anibowei's should be as well, for all of the same reasons. *See Abidor*, 990 F. Supp. 2d at 270–77.

The standing inquiry in the instant case is especially rigorous because "reaching

---

[1] Although Anibowei also states in the first amended complaint that his cell phone was manually inspected by a customs officer on another occasion, on February 27, 2017, that search is not alleged to have been "forensic" in nature (e.g., Anibowei does not allege that data was copied from the cell phone at that time and searched using specialized tools). (*See* Doc. 8, ¶ 38.) Accordingly, even under Anibowei's own theory as explained in his response to the motion to dismiss, the February 27, 2017 search would not have been unlawful, because Anibowei states that a "conventional" (i.e., non-"forensic") search of an electronic device is within the government's border-search authority. (*See* Doc. 17 at 16–17.)

the merits of the dispute would force [the Court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997).  Further, and especially damaging to Anibowei's effort to establish standing given the factors described above, the burden to establish standing is on the plaintiff, as a federal court must presume that it "lack[s] jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (internal quotation marks and citations omitted).  Here, Anibowei has not shown that he has standing to obtain the equitable relief he seeks.

**B.     Anibowei's Fourth Amendment claim should be dismissed because neither the Supreme Court nor the Fifth Circuit has recognized the distinction he relies on between "conventional" and "forensic" electronic border searches.**

With respect to his Fourth Amendment claim, Anibowei attempts to draw a distinction between a "conventional" search of an electronic device and a "forensic" search.  According to Anibowei, a "conventional" search is when a government officer simply operates or searches an electronic device in the same way that a typical user would use it—for example, by manually scrolling through a device's email inbox or text messages.  (*See* Doc. 17 at 16.)  Anibowei characterizes as "forensic," on the other hand, any search that uses specialized software to comb through the full contents of a device's hard drive, so as to view things like unallocated "slack space" or deleted files that have not yet been overwritten.  (Doc. 17 at 16–17 & n.17.)

Anibowei concedes that what he describes as a "conventional" electronic search may be performed at the border under the government's broad border-search authority, i.e., without any reasonable-suspicion requirement.  (*See* Doc. 17 at 16–17 (stating that

while a "conventional computer search" at the border may be probing and potentially invasive, "these concerns do not bring a conventional computer search outside of the broad authority granted under the border search doctrine").) On the other hand, Anibowei argues that if a search can be characterized as a "forensic" search, it is different and constitutes a non-routine border search for which reasonable suspicion is required. (Doc. 17 at 18–19.) Based on this premise, Anibowei argues that he has stated a Fourth Amendment claim arising from the government's alleged "forensic search" of his cell phone, which Anibowei says "involved [the] copying of every bit of data" from it.[2] (Doc. 17 at 20.) According to Anibowei, this search represented a non-routine border search for which the government did not have reasonable suspicion.

But the problem with Anibowei's argument is that neither the Supreme Court nor the Fifth Circuit has ever recognized a distinction between "conventional" and "forensic" electronic border searches that creates a reasonable-suspicion requirement for some searches (if they can be labeled "forensic," under a theory that they are non-routine) but not for others. To the contrary, Anibowei's argument closely resembles the reasoning of

---

[2] It is clear from these statements and from Anibowei's focus on the concept of a "forensic search" that Anibowei's Fourth Amendment claim is premised on the October 10, 2016 search in which his cell phone was briefly removed from his presence for "examination and copying" and then returned with an explanation that its contents had been copied. (Doc. 8, ¶¶ 35, 37.) The inference Anibowei is apparently drawing is that the data from his cell phone was then subjected to a "forensic" search of the type that Anibowei says requires reasonable suspicion.

The only other occasion on which Anibowei's cell phone was inspected in any way, according to the first amended complaint, was on February 27, 2017, but at that time a customs officer simply "went through Plaintiff's text messages and emails" (apparently in Anibowei's presence) without actually copying anything from the phone. (*See* Doc. 8, ¶ 38.) Under Anibowei's own analysis, this would be a "conventional" search for which no reasonable suspicion is required, as there is no allegation that information was copied from Anibowei's phone on February 27, 2017 and subjected to any "forensic" search using specialized tools. (*See* Doc. 17 at 16–17 (Anibowei's statement that a "conventional" search is within the government's border-search authority).)

the Ninth Circuit that the Supreme Court rejected in *United States v. Flores-Montano*, 541 U.S. 149 (2004). There, the Ninth Circuit had suppressed evidence in a criminal case by focusing on the details of the particular search at issue (of a car gas tank) and concluding that the search was non-routine in nature so as to require reasonable suspicion. *See id.* at 151. In reversing this decision, the Supreme Court explained that it was error in the context of a vehicle search to employ "[c]omplex balancing tests" to determine whether a search is routine or non-routine. *Id.* at 152. Contrasting the search of property with the search of a person, the Court explained that the type of balancing analysis employed by the Ninth Circuit was proper only to determine whether a physical search of a person's body is so intrusive as to require reasonable suspicion. *Id.*

Anibowei's case, of course, involves only the search of property—a cell phone—rather than Anibowei's own body. And Anibowei does not identify any authority from the Supreme Court or the Fifth Circuit licensing the use of "[c]omplex balancing tests" to determine if a border search of property is routine or non-routine (e.g., "conventional" or "forensic"), even if that property is a cell phone. In effect, Anibowei would have this Court create a new rule whereby the details and specific searching protocols of every electronic border search would need to be weighed and analyzed to determine if the search qualifies as a "conventional" or "forensic" one. But precedent does not support engrafting such a rule onto the border-search doctrine.[3] For this reason, Anibowei has

---

[3] The fact that Anibowei is essentially asking this Court to create a new rule of law governing border searches of electronic devices also weighs heavily in favor of dismissing this case on prudential standing grounds. As noted in the defendants' motion, a civil complaint for a declaratory judgment or similar equitable relief is a poor vehicle for fashioning a new rule on a matter of such broad application and public importance. (*See* Doc. 13 at 11–13.)

not stated any claim for relief under the Fourth Amendment.

The Supreme Court's decision in *Riley v. California*, 134 S. Ct. 2473 (2014), which Anibowei discusses in his response, is not to the contrary. (*See* Doc. 17 at 15–18.) The *Riley* case did not concern any border search, but instead arose out of searches of persons arrested by local law enforcement for ordinary criminal violations. *Riley*, 134 S. Ct. at 2480–82. The Supreme Court was thus called upon to construe the scope of the search-incident-to-arrest doctrine, and to determine whether that doctrine—as opposed to the border-search doctrine at issue in this case—permits the warrantless search of an arrestee's cell phone. *See id.* at 2482–83. And, in deciding that such searches are generally not permissible under the search-incident-to-arrest doctrine, the Court's reasoning was that a cell-phone search at the time of arrest does not fit within that doctrine's (limited) dual purposes of (i) protecting the safety of the arresting officer and (ii) preventing the destruction of evidence. *See id.* at 2484–85. These principles simply do not apply in the context of a border search, as the border-search doctrine springs from the government's broad authority at the border as sovereign, and is not cabined by the much narrower concerns that animate the search-incident-to-arrest doctrine. *See Flores-Montano*, 541 U.S. at 152–54; *see also United States v. 12 200-Ft. Reels of Super 8mm. Film*, 413 U.S. 123, 125 (1973) ("Import restrictions and searches of persons or packages at the national borders rest on different considerations and different rules of constitutional law from domestic regulations."). Indeed, the Supreme Court recognized in the *Riley* opinion itself that its holding was limited to the search-incident-to-arrest context, stating that "even though the search incident to arrest exception does not apply to cell phones,

other case-specific exceptions may still justify a warrantless search of a particular phone." *Riley*, 134 S. Ct. at 2494; *see also United States v. Gonzalez*, 658 F. App'x 867, 870 (9th Cir. 2016) (explaining that "*Riley* did not address border searches," and therefore finding *Riley* inapplicable to a defendant's challenge to a search conducted under the border-search doctrine). Accordingly, *Riley* is inapplicable and does not assist Anibowei in stating any cause of action.[4]

C.      **No First Amendment claim has been stated.**

With respect to his First Amendment claim, Anibowei attempts to distinguish *United States v. Ickes*, 393 F.3d 501 (4th Cir. 2005), on the grounds that *Ickes*'s holding that there is no First Amendment exception to the border-search doctrine for searches of electronic devices was made in the context of a "manual digital search of an electronic device" rather than a "more sophisticated forensic search[]." (*See* Doc. 17 at 30.) However, this argument fails because it suffers from the same deficiency noted above with respect to Anibowei's Fourth Amendment claim: it relies on a purported distinction between "conventional" and "forensic" electronic border searches that has not been recognized by either the Supreme Court or the Fifth Circuit.

Anibowei instead relies on *United States v. Saboonchi*, 990 F. Supp. 2d 536 (D. Md. 2014), for his argument that there is a meaningful distinction between "conventional" and "forensic" border searches. (Doc. 17 at 30–31.) However, for several reasons *Saboonchi* does not support Anibowei's claims in this case. As an initial

---

[4] The same is true of other cases that Anibowei relies on to argue that the border search of his cell phone was "particularly offensive" so as to require reasonable suspicion—as Anibowei concedes, these cases "did not involve border searches." (Doc. 17 at 23.)

matter, *Saboonchi* was a criminal case in which the defendant had moved to suppress evidence obtained through a border search of the defendant's digital devices. *Saboonchi*, 990 F. Supp. 2d at 539–40. Thus, there was no question of the defendant's standing to challenge the search in the context of the criminal prosecution that had been brought against him. In contrast, Anibowei is positioned as a civil litigant seeking discretionary equitable relief, which raises altogether different requirements of standing that Anibowei cannot satisfy. Moreover, due to evidence that the government had already collected against the defendant in *Saboonchi* during an investigation that preceded the border search at issue, the court found that there *was* reasonable suspicion—and possibly even probable cause—for the search. *Id.* at 571. It was therefore not necessary for the court to address whether the search was "conventional" or "forensic," or for it to weigh in on the legal issue of whether a meaningful distinction exists in this regard.

**D.    Anibowei has not identified any basis for proceeding on claims against the various agency defendants who do not have responsibility for border searches.**

The defendants' motion noted that Anibowei had not established standing or any basis to litigate claims against a number of the defendants, because no specific facts have been pleaded showing their involvement in any border search of Anibowei's cell phone. (*See* Doc. 13 at 19–21.) In response, Anibowei states that he has "every reason to believe" that information from his cell phone has been disclosed to these other defendants. (Doc. 17 at 32.) However, this statement is speculative and constitutes an unsupported assertion rather than a well-pleaded factual statement, and thus does not give rise to any claim for relief.

Anibowei also suggests that it is significant that the defendants have not "denied this claim [that information was shared with other agencies] or disputed Plaintiff's allegations"; in fact, Anibowei makes similar statements throughout his brief that effectively invite the Court to draw some conclusion favorable to Anibowei based on the defendants' alleged acquiescence in his claims.  (*See* Doc. 17 at 32; *see also* Doc. 17 at 1, 8.)  But these arguments are unavailing because, as noted in the defendants' motion, the defendants are *required* to accept all well-pleaded facts as true for purposes of their Rule 12(b)(6) motion, so it would not have been proper to use the motion to "dispute" or "deny" any of Anibowei's factual allegations.  (*See* Doc. 13 at 6.)  Nonetheless, this principle does not extend to requiring the defendants—or the Court—to accept as true whatever speculative conclusions Anibowei offers without the support of well-pleaded facts.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Because Anibowei's allegations and arguments about the Attorney General and the heads of the TSA, FBI, FBI Terrorist Screening Center, and National Counterterrorism Center fall into this latter category, all claims against these defendants should be dismissed.

## II.   Conclusion

The defendants' motion to dismiss the first amended complaint should be granted.  The defendants further request general relief.

          Respectfully submitted,

          JOHN R. PARKER
          United States Attorney

          /s/ Brian W. Stoltz
          Brian W. Stoltz
          Assistant United States Attorney
          Texas Bar No. 24060668
          1100 Commerce Street, Third Floor
          Dallas, Texas 75242-1699
          Telephone:   214-659-8626
          Facsimile:    214-659-8807
          brian.stoltz@usdoj.gov

          Attorneys for Defendants

<u>Certificate of Service</u>

On May 15, 2017, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

          /s/ Brian W. Stoltz
          Brian W. Stoltz
          Assistant United States Attorney