IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GEORGE ANIBOWEI, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:16-CV-3495-D |
| | § | |
| JEFFERSON B. SESSIONS, et al.,[1] | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By *Order of Reference* dated April 11, 2017 (doc. 14), before the Court for recommendation is *Defendants' Motion to Dismiss Plaintiff's First Amended Complaint*, filed April 10, 2017 (doc. 13). Based on the relevant filings and applicable law, the defendants' motion to dismiss should be **DENIED in part**, and **GRANTED in part**.

## I.  BACKGROUND

On December 23, 2016, George Anibowei (Plaintiff) filed suit under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and 5 U.S.C. §§ 702, 706 of the Administrative Procedures Act (APA), for alleged violations of his First and Fourth Amendment rights during a border search on October 10, 2016.  (doc. 1 at 1-2.)[2]  He names the U.S. Attorney General, Director of the Federal Bureau of Investigation, Director of the Terrorist Screening Center, Director of the National Counterterrorism Center, Secretary of the Department of Homeland Security, Commissioner of the United States Customs and Border Protection Agency, Administrator of the United States Transportation Security Administration, and the Director of the United States

---

[1]  Jefferson B. Sessions succeeded Loretta Lynch, Christopher Wray succeeded James Comey, Elaine Duke succeeded Jeh Johnson, Kevin K. McAleenan succeeded Gil Kerlikowske, David P. Pekoske succeeded Peter Neffenger, and Thomas D. Homan succeeded Sarah Saldana.  Under Rule 25(d) of the Federal Rules of Civil Procedure, each successor "is automatically substituted as a party."

[2]  Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Immigration and Customs Enforcement Agency (Defendants) in their official capacities only. (doc. 8 at 1-3.)

Plaintiff is a licensed Texas attorney who frequently flies internationally.  (doc. 17 at 8.)  He was an approved member of the Global Entry Trusted Traveler Program administered by the United States Customs and Border Protection Agency (CBP).  (doc. 8 at 5, 21.)  After approximately two and a half years of active membership, his membership was revoked for not meeting the "program eligibility requirements."  (*Id*. at 6, 22.)  Plaintiff asserts that "even before and subsequent to the revocation" of his membership, he was referred for secondary inspection, detained, and questioned by CBP officers on many occasions.  (*Id*. at 7-8.)  On one occasion, he and his teenage son were prevented from boarding and detained for approximately two hours before being allowed to board their flight, which was delayed while they were detained.  (*Id*.)  On another occasion, he was detained and questioned for almost five hours by the Canada Border Services at the insistence of CBP, which caused him to miss his flight.  (*Id*.)

On October 10, 2016, Plaintiff arrived at the Toronto International airport to board his flight to the United States.  (*Id*. at 12.)  Plaintiff contends that, upon his arrival at the Dallas/Fort Worth International Airport (DFW), CBP agents escorted him to an interrogation room.  (*Id*. at 2; doc. 17 at 9.)  There, they "seized and detained" his cell phone without consent or a search warrant for "examination and copying," but they did not tell him why.  (doc. 8 at 2, 14.)  CBP agents detained and questioned Plaintiff for approximately two hours, during which time they allegedly copied the contents of his cell phone for examination.  (*Id*. at 14.)  CBP agents then returned Plaintiff's cell phone and released him without indicating "what information had been copied from his cell phone, what agencies or individuals would have access to any copies made, and whether any such copies would ultimately

2

be destroyed or stored." (*Id.*)

After filing this lawsuit, on February 27, 2017, Plaintiff returned to the United States from Nigeria and landed at DFW, where he was again referred for secondary inspection. (*Id.* at 15.) During this subsequent inspection, he was detained and questioned by CBP agents while his cell phone, luggage, and carry-on bag were searched. (*Id.*) Plaintiff asserts that a CBP agent went through his text messages and emails on his cell phone without his consent or a search warrant. (*Id.* at 15-16.) CBP agents detained him for approximately three hours during this inspection. (*Id.* at 16.)

Plaintiff seeks a declaratory judgment that the detention of his cell phone for copying and examination and the retention and dissemination of its contents without reasonable suspicion violates the First and Fourth Amendments. (*Id.* at 19.) He also seeks "injunctive relief" in the form of an order requiring Defendants to (1) return all information retrieved from his cell phone or, if the information cannot be returned, to expunge or destroy that information; and (2) disclose whether the information obtained from his cell phone was disclosed to other agencies and, if so, what information was disclosed and in what form. (*Id.* at 2-3, 19-20.) Finally, he seeks attorneys' fees and costs. (*Id.* at 20.)

## II. RULE 12(b)(1)

Defendants move to dismiss Plaintiff's claims for declaratory and injunctive relief under Rule 12(b)(1) for lack of subject-matter jurisdiction, alleging that he lacks standing to sue. (doc. 13 at 10.)

### A. <u>Legal Standard</u>

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by the Constitution and statute, they lack the power to adjudicate claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)

3

(citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). When a court dismisses for lack of subject matter jurisdiction, that dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*.

The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id*.

Here, because the Rule 12(b)(1) motion to dismiss relies on Plaintiff's amended complaint, it presents a facial attack that does not require resolution of matters outside the pleadings. *See Bridgewater v. Double Diamond–Delaware, Inc.*, 3:09–CV–1758–B, 2010 WL 1875617, at *5 (N.D. Tex. May 10, 2010); *Lester v. Lester*, No. 3:06-CV-1357-BH, 2009 WL 3573530, at *4 (N.D. Tex. Oct. 29, 2009).

## B.    <u>Constitutional Standing</u>

Defendants assert that Plaintiff's claims for equitable relief should be dismissed for lack of Article III standing because he has not demonstrated that he has suffered the requisite harm, since his allegations "do not establish a likelihood that [his] cell phone will be similarly searched again in the

4

future."  (doc. 13 at 14.)

"Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'"  *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980).  One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue.  *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  "Standing is an issue of subject matter jurisdiction, and thus can be contested by a Rule 12(b)(1) motion to dismiss."  *Lee v. Verizon Commc'ns Inc.*, 954 F. Supp. 2d 486, 496 (N.D. Tex. 2013) (citing *Hunter v. Branch Banking & Trust Co.*, 2013 WL 607151, at *1 (N.D. Tex. Feb. 19, 2013); *see Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006) (noting "the issue of standing is one of subject matter jurisdiction").  This requirement, like other jurisdictional requirements, is not subject to waiver.  *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996).

To meet the Article III constitutional standing requirement, plaintiffs "must *allege personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Raines*, 521 U.S. at 818 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)); *accord Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  A plaintiff seeking equitable relief can establish standing by showing "actual present harm or a significant possibility of future harm."  *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (quoting *Peoples Rights Org. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998).  "Past exposure to illegal conduct" does not in itself establish standing for equitable relief "if unaccompanied by continuing, present adverse effects."  *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); *see Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015); *Bauer*, 341 F.3d at 358 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).  "To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future."  *Bauer*, 341 F.3d at 358.  When a plaintiff seeks

5

relief from governmental action, as here, the court "should not intervene unless the need for equitable relief is clear, not remote or speculative." *Id*. (quoting *Henschen v. City of Houston*, 959 F.2d 584, 588 (5th Cir. 1992)).

Neither the Supreme Court nor the Fifth Circuit have specifically addressed the issue of Article III standing to sue for equitable relief in the context of a border search.[3]  The seminal case, upon which Defendants rely, appears to be *Abidor v. Napolitano*, 990 F. Supp. 2d 260 (E.D.N.Y. 2013).  In that case, CBP agents searched an individual's laptop computer and hard drive upon his return to the United States from Canada.  *Id*. at 268.  They found pictures depicting terrorist organizations and retained the laptop for further inspection, but returned it along with the external hard drive eleven days later by mail.  *Id*.  The individual and two associations filed suit seeking a declaratory judgment that the CBP and Immigration and Customs Enforcement (ICE) policies violated the First and Fourth Amendments and that the border search of the individual's laptop violated his rights, and an injunction to prevent the defendants from "enforcing their policies of searching, copying, and detaining electronic devices at the international border without reasonable suspicion."  990 F. Supp. 2d at 264.[4]  The defendants' motion to dismiss argued that the plaintiffs lacked standing to challenge the directives, and alternatively, that they failed to state a claim upon which relief could be granted.  *Id*.  The court determined that all of the plaintiffs lacked standing because it was "unlikely" that the individual plaintiff or any member of the association would "have his electronic device searched at the border . . . ."  *Abidor*, 990 F. Supp. 2d at 274–75.

More recently, the same court again considered the standing issue in *Janfeshan v. United*

---

[3] No other circuit court appears to have specifically addressed this issue either.

[4] CBP and ICE directives authorize agents to inspect a traveler's electronic devices without reasonable suspicion upon reentry into the United States.  *See Abidor*, 990 F. Supp. 2d at 264–67 (describing the challenged directives).

*States*, No. 16-CV-6915 (ARR) (LB), 2017 WL 3972461, *2 (E.D.N.Y. Aug. 21, 2017), which

involved the questioning of the plaintiff upon his reentry into the United States and a forensic search

of his phone.  The plaintiff sued for declaratory and injunctive relief, alleging that the defendants had

violated his rights under the Fourth and Fifth Amendments when they "reviewed and copied the

contents of [his] smartphone, retained this information, and [] possibly disclosed it to other U.S.

government or foreign agencies that in turn, may have retained that information as well."  *Id.* at *2,

4.  He sought (1) "a declaration that defendants violated the Fourth and Fifth Amendments . . . ."; (2)

"that defendants return to him, or destroy, all the information they seized from his phone . . . ."; and

(3) "that defendants disclose what information from his phone was shared with other agencies."  *Id.*

at *4.  Relying on *Abidor*, the defendants argued that the plaintiff lacked standing because he "failed

to establish a threatened future injury that was certainly impending."  *Id.* at *6–7.  The court found

*Abidor* distinguishable, stating:

> I need not conclude that Janfeshan has established that a future search of his phone is
> certainly impending.  Rather, Janfeshan has adequately alleged an injury in fact based
> on the ongoing effects of the previous search. And here, unlike in *Abidor*, Janfeshan
> has alleged that, under CBP Directive ¶ 5.4.1.2, CBP "retain[ed] . . . information
> relating to immigration, customs, and other enforcement matters"—the destruction of
> which the Directive does not provide for.

*Id.* at *7.  It held that the plaintiff had standing because he had "alleged a concrete, particularized

injury stemming from the copying and retention of the digital contents of his phone."  *Id.* at *7.[5]

Here, as in *Janfeshan*, Plaintiff alleges that officers violated his constitutional rights when they

reviewed and copied the contents of his cell phone and retained and disseminated the information.

---

[5]   The court also noted that its decision was consistent with the Second Circuit's decision in *Am. Civ. Liberties
Union v. Clapper*, 785 F.3d 787, 801 (2d Cir. 2015), which found that plaintiffs challenging a government telephone
metadata collection program had "standing to allege injury from the collection, and maintenance in a government database,
of records relating to them."  2017 WL 3972461 at *7.

(*See* doc. 8 at 3, 13-16, 18-19.) He likewise claims that his alleged injury—the retention of his cell phone for copying and the dissemination of its contents—is actual and ongoing. (*Id.* at 12-16; doc. 17 at 14-15.) Finally, he is also requesting a declaration that his constitutional rights were violated, an order that Defendants return or destroy any of the data seized from his phone, and information regarding whether the cell phone data has been disclosed to other agencies. (*Id.* at 2-3, 19-20.)

Based on the similarity of the allegations in this case to those in *Janfeshan,* its reasoning is more persuasive than that in *Abidor*, and the Court adopts it. Plaintiff has alleged more than a past injury because he claims that he continues to experience ongoing adverse effects from the allegedly unlawful copying, retention and dissemination of the contents of his phone. *See Janfeshan*, 2017 WL 3972461, at *7.[6] Additionally, because he alleges that CBP and ICE policies permit the retention of "information relating to immigration, customs, and other enforcement matters," and he seeks to have this information either returned or destroyed, his injury is redressable. *See Janfeshan*, 2017 WL 3972461, at *7 (finding that the plaintiff's injury was redressable where the CBP directive authorized the retention of information and the plaintiff requested destruction of his information).[7] Because Plaintiff has demonstrated an ongoing injury from the retention and copying of his cell phone and that

---

[6] *See also O'Shea*, 414 U.S. at 495–96 (recognizing that "continuing present adverse effects" in addition to "past exposure to illegal conduct" can establish standing); *Am. Civ. Liberties Union*, 785 F.3d at 801 (finding that if the challenged action is unlawful, "appellants have suffered a concrete and particularized injury fairly traceable to the challenged [conduct] and redressable by a favorable ruling").

[7] At least one other district court has followed this reasoning in determining that a plaintiff has standing to seek the return or expungement of information gathered from him during a border search. *See Tabaa v. Chertoff*, No. 05-CV-582S, 2005 WL 3531828, at *7–9 (W.D.N.Y. 2005) (citing *Hedgepeth v. Wash. Metro. Area Transit Auth.*, 386 F.3d 1148, 1152 (D.C. Cir. 2004)) ("the government's continued possession of information that the Plaintiffs allege was obtained from them through unlawful means constitutes a sufficient harm for purposes of establishing standing to pursue expungement of the information."). Although not in the context of a border search, other courts have similarly determined that plaintiffs have standing to challenge the government's maintenance of information relating to them in a government database. *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 209–10 (4th Cir. 2017) (finding that the organization had standing to challenge the government's action of intercepting and copying its communications); *Shuchardt v. President of the United States*, 839 F.3d 336, 352–53 (3d Cir. 2016) (determining that the plaintiff had standing to challenge the government's storage of his confidential communications in a government database).

injury is redressable by a ruling in his favor, a finding of standing is consistent with Fifth Circuit precedent. *See Machete Prods., L.L.C.*, 809 F.3d at 288 (holding that the plaintiff lacked standing because there was no ongoing injury and its claims of future injury were too speculative); *Bauer*, 341 F.3d at 358 (finding that the plaintiff did not have standing where "there [was] no ongoing injury . . . and any threat of future injury [was] neither imminent or likely").

Because Plaintiff has met the Article III constitutional requirements to establish that he has standing to seek the equitable relief he requests, Defendants' motion to dismiss should be denied "to the extent they seek dismissal pursuant to [Rule] 12(b)(1)." *See Reitz v. City of Abilene*, No. 1:16-CV-0181-BL, 2017 WL 3046881, at *9 (N.D. Tex. May 25, 2017).[8]

## III. RULE 12(b)(6)

Defendants also move to dismiss Plaintiff's constitutional claims under Rule 12(b)(6) for failure to state a claim. (doc. 13 at 2, 18.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th

---

[8] Defendants also seem to assert that Plaintiff lacks prudential standing as a basis for dismissal under Rule 12(b)(1). (doc. 13 at 16.) A motion to dismiss "for lack of prudential or statutory standing" is properly brought under Rule 12(b)(6) rather than Rule 12(b)(1). *Reitz*, 2017 WL 3046881, at *4 (citing *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011)).

9

Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

## A. Prudential Standing

Defendants contend that even if Article III constitutional standing requirements are met, "dismissal would still be warranted for closely related prudential reasons." (doc. 13 at 16, 18.) This argument implicates prudential standing. Defendants assert that this court should decline to exercise jurisdiction over Plaintiff's claims because he "cannot show a clear need for the relief he seeks," and

declining jurisdiction would afford Congress the first opportunity to address government policies. (doc. 13 at 17.)

"Beyond the constitutional requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Bauer*, 341 F.3d at 357 (citing *McClure v. Ashcroft*, 335 F.3d 404, 410 (5th Cir. 2003)). Prudential standing limitations help courts identify proper questions of judicial adjudication, and further define the judiciary's role in the separation of powers. *Id.* Prudential standing relates to whether: (1) a plaintiff's grievance falls within the zone of interests protected by the statute or constitutional provision invoked, (2) the complaint raises a generalized grievance more properly addressed by the legislature, and (3) the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties. *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009); *see also Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004).

Here, Plaintiff has clearly asserted his need for relief and, as stated previously, a decision in his favor would grant him the relief he seeks. "If the seizure of [his] phone and the search of its contents were to be declared unlawful, CBP could be compelled to destroy any remaining copies of [his] data." *Janfeshan*, 2017 WL 3972461, at *7. Moreover, Plaintiff's claims are not generalized grievances more properly addressed by the legislature. *See St. Paul Fire & Marine Ins. Co.*, 579 F.3d at 539. His claims are specific to the search of his cell phone that occurred on October 10, 2016, and the rights he is seeking to protect—his right against unlawful search and seizure and his expressive and associational interests—are protected by the First and Fourth Amendments of the Constitution. (doc. 8 at 12, 18-19; doc. 17 at 30.) *See id*. at 543–44; *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 211 (5th Cir. 2009) (recognizing the First Amendment rights to freedom of expression and association as

well as the "Fourth Amendment's prohibition on unreasonable searches and seizures"). Plaintiff has alleged prudential standing, and Defendants' motion to dismiss his claims for equitable relief on this basis should be denied.

**B.     _Bivens_**

Defendants also assert that all of Plaintiff's claims against them are subject to dismissal because he "has failed to plead any specific facts showing involvement by any government officers from these agencies in any of the alleged wrongdoing made the basis of the suit." (doc. 13 at 24.)

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court held that the violation of a person's constitutional rights by a federal official may give rise to an action for monetary damages in federal court. The Fifth Circuit has recognized that a plaintiff may request "injunctive relief from violation of his federal constitutional rights." *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993) (citing *Bell v. Hood*, 327 U.S. 678, 684 (1946)); *see also Ramsey v. United States*, No. 3:96–CV–3358–G, 1997 WL 786252, at *2 n.2 (N.D. Tex. Dec. 11, 1997) (a plaintiff may seek injunctive or declaratory relief in addition to monetary relief in a *Bivens* action). Unless the defendants have deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States, however, a plaintiff has no viable claim under *Bivens*. *See Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999) (recognizing that "[a] *Bivens* action is analogous to an action under § 1983— the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials").

Here, Plaintiff expressly names Defendants in their official capacities only. *Bivens* provides a remedy for victims of constitutional violations by government officers in their *individual capacities*. *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999). This is

12

because the purpose of a *Bivens* cause of action is to deter a federal officer from violating a person's constitutional rights. *FDIC v. Meyer*, 510 U.S. 471, 485 (1994); *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70 (2001). Claims against federal employees in their official capacities based on alleged constitutional violations are therefore barred under *Bivens* because they are the equivalent to claims against the federal agencies who employ the employees. *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). Because Plaintiff expressly names Defendants in their official capacities only, he has not stated a viable *Bivens* claim against them (or their predecessors).

To the extent that Plaintiff's pro se complaint may be liberally construed as asserting claims against Defendants (or their predecessors) in their individual capacities, a *Bivens* action must be premised upon the personal involvement of the named defendants. *See Meyer*, 510 U.S. at 485; *Guerrero-Aguilar v. Ruano*, 118 F. App'x 832 (5th Cir. 2004) (per curiam). Under *Bivens*, an individual cannot be held liable under a theory of respondeat superior. *Ashcroft*, 129 S.Ct. at 1948. A supervisory federal employee and/or official may be held liable only where he has personal involvement in the acts that caused the deprivation of a constitutional right or if he implements or enforces a policy that causally results in a deprivation of constitutional rights. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 468 (5th Cir. 2010); *Cronn v. Buffington*, 150 F.3d 538, 544-45 (5th Cir. 1998). Because Plaintiff has alleged neither that Defendants had personal involvement in acts that caused the alleged deprivation of his constitutional rights, nor that they implemented policies that caused the deprivation, he has also failed to state a *Bivens* claim against them (or their predecessors) in their individual capacities.[9]

_____

[9] Because Plaintiff has failed to state a claim against Defendants under *Bivens* based on a lack of personal involvement, the Court need not reach Defendants' arguments that Plaintiff has failed to state a claim that the border search of his cell phone violated his First and Fourth Amendment rights.

## IV. *SUA SPONTE* DISMISSAL

Plaintiff also appears to allege claims under the APA. (*See* doc. 8 at 3.) Defendants have not moved to dismiss this claim. (*See* doc. 13)

As noted, federal courts are courts of limited jurisdiction and "must presume that a suit lies outside this limited jurisdiction. *Kokkonen*, 511 U.S. at 377; *Howery*, 243 F.3d at 916. Courts have "a continuing obligation to examine the basis for their jurisdiction." *See MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990). They may *sua sponte* raise the jurisdictional issue at any time. *Id.*; *EEOC v. Agro Distrib.*, LLC, 555 F.3d 462, 467 (5th Cir. 2009) (even without an objection to subject matter jurisdiction, a court must consider *sua sponte* whether jurisdiction is proper).

The APA provides a right of review for persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Judicial review under the APA is limited to "[a]gency action made reviewable by statute and final agency action for which there is no adequate remedy in a court." 5 U.S.C. § 704. If there is no "[a]gency action made reviewable by statute" or a "final agency action, a court lacks subject-matter jurisdiction." *Mackenzie v. Castro*, No. 3:15-CV-0752-D, 2017 WL 1021299, at *4 (N.D. Tex. Mar. 16, 2017) (quoting *Belle Co. v. U.S. Army Corps of Eng'rs*, 761 F.3d 383, 388 (5th Cir. 2014)); *see* 5 U.S.C. § 704. "The reason the requirements are jurisdictional is because § 704 effects a waiver of sovereign immunity." *Mackenzie*, 2017 WL 1021299, at *4.

Here, Plaintiff's amended complaint only generally alleges that "[j]urisdiction is proper pursuant to . . . 5 U.S.C. § 702, 5 U.S.C. § 706." (doc. 8 at 3.) He does not allege that he is challenging an "[a]gency action made reviewable by statute" or a "final agency action for which there

14

is no adequate remedy in a court." 5 U.S.C. § 704; *see MacKenzie*, 2017 WL 1021299, at *4–6. Any APA claim should therefore be dismissed *sua sponte* for lack of subject-matter jurisdiction because Plaintiff has failed to allege agency action. *See MacKenzie*, 2017 WL 102199, at *4-6, 8 (dismissing APA claim for lack of subject-matter jurisdiction where the plaintiff did not successfully allege a final agency action).

## V. RECOMMENDATION

Defendants' Rule 12(b)(1) motion to dismiss should be **DENIED**, and their Rule 12(b)(6) motion to dismiss should be **GRANTED in part**. Plaintiff's *Bivens* claims should be **DISMISSED with prejudice** for failure to state a claim, and his APA claims should *sua sponte* be **DISMISSED without prejudice** for lack of subject-matter jurisdiction.

**SO RECOMMENDED** on this 15th day of December, 2017.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE