IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

GEORGE ANIBOWEI,

      Plaintiff,

v.

JEFFERSON B. SESSIONS, *et al.*,

      Defendants.

Civil Action No. 3:16-CV-3495-D

**DEFENDANTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS,
CONCLUSIONS, AND RECOMMENDATION ON DEFENDANTS'
<u>MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

ERIN NEALY COX
United States Attorney

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

# Table of Contents

I.   Introduction ............................................................................................... 1

II.  Background .............................................................................................. 4

     A.   The government's longstanding authority to conduct border
          searches. ...................................................................................... 4

     B.   Anibowei's allegations and request for declaratory and injunctive
          relief .............................................................................................. 4

     C.   The defendants' motion to dismiss the first amended complaint ................. 6

III. Legal Standards ....................................................................................... 9

IV.  Argument and Authorities ....................................................................... 9

     A.   The Court should decline to adopt the Recommendation's standing
          analysis, and instead should rule that Anibowei has not established
          standing to obtain the purely equitable relief he seeks. .............................. 10

          1.   Anibowei's vague averments of possible future injury do not
               establish any real and immediate threat of repeated injury in
               the future. ................................................................................ 10

          2.   A claimed injury from the retention of information does not
               provide standing. ...................................................................... 13

          3.   Prudential reasons also support a dismissal for lack of
               standing. ................................................................................. 14

          4.   The Recommendation's reliance on *Janfeshan* is misplaced ............ 16

     B.   If the case is not dismissed for lack of standing, it is necessary to
          reach the Rule 12(b)(6) arguments that the Recommendation
          identified in footnote 9 but did not address, and the Court should
          dismiss the first amended complaint as to all defendants on the basis
          of these arguments ............................................................................. 17

          1.   Anibowei fails to state any claim for relief under the Fourth
               Amendment (first cause of action) because reasonable
               suspicion was not required in order to inspect Anibowei's cell
               phone at the border. .................................................................. 18

2.      Anibowei fails to state any claim for relief under the First
        Amendment (second cause of action) because there is no First
        Amendment exception to the border-search doctrine. .....................22

C.      The five defendants whose agencies are not alleged to have had any
        involvement in the search of Anibowei's cell phone should be
        dismissed from the case in its entirety (including with respect to
        official-capacity claims). ............................................................23

V.      Conclusion ...........................................................................................25

## Table of Authorities

### Cases

*Abidor v. Napolitano*,
   990 F. Supp. 2d 260 (E.D.N.Y. 2013)............................................ 12, 13, 15, 16, 17

*Am. Civil Liberties Union v. Clapper*,
   785 F.3d 787 (2d Cir. 2015) ........................................................... 16, 17

*Bauer v. Texas*,
   341 F.3d 352 (5th Cir. 2003) .......................................................... 11, 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................. 25

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
   403 U.S. 388 (1971) ............................................................................... 2

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ........................................................................... 11, 12

*Eccles v. Peoples Bank of Lakewood Vill.*,
   333 U.S. 426 (1948) ......................................................................... 14, 15

*Escamilla v. City of Dallas*,
   No. 3:03-CV-848-K, 2004 WL 1932867 (N.D. Tex. Aug. 30, 2004).................... 25

*Herring v. United States*,
   555 U.S. 135 (2009) ............................................................................. 14

*Janfeshan v. U.S. Customs & Border Protection*,
   No. 16-CV-6915, 2017 WL 3972461 (E.D.N.Y. Aug. 21, 2017).................... 16, 17

*Kentucky v. Graham*,
   473 U.S. 159 (1985) ............................................................................... 7

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................... 10, 13, 25

*Mauro v. Freeland*,
   735 F. Supp. 2d 607 (S.D. Tex. 2009)................................................... 7

*New York v. P.J. Video, Inc.*,
   475 U.S. 868 (1986) ............................................................................. 22

*Pa. Bd. of Prob. & Parole v. Scott,*
    524 U.S. 357 (1998) ..................................................................................... 13, 14

*Raines v. Byrd,*
    521 U.S. 811 (1997) ........................................................................................ 10

*United States v. Ickes,*
    393 F.3d 501 (4th Cir. 2005) .................................................................. 12, 22, 23

*United States v. Flores-Montano,*
    541 U.S. 149 (2004) ........................................................... 4, 18, 19, 20, 21

*United States v. Kelly,*
    302 F.3d 291 (5th Cir. 2002) ........................................................................... 21

*United States v. McCauley,*
    420 F. App'x 400 (5th Cir. 2011) ............................................................... 20, 21

*United States v. McCauley,*
    563 F. Supp. 2d 672 (W.D. Tex. 2008) ........................................................... 20

*United States v. Montoya de Hernandez,*
    473 U.S. 531 (1985) .................................................................................. 18, 19

*United States v. Pickett,*
    598 F.3d 231 (5th Cir. 2010) ........................................................................... 21

*United States v. Ramsey,*
    431 U.S. 606 (1977) ..................................................................................... 4, 18

*United States v. Sandler,*
    644 F.2d 1163 (5th Cir. 1981) .................................................................... 19, 21

*United States v. Thompson,*
    53 F. Supp. 3d 919 (W.D. La. 2014) ........................................................... 20, 21

*Valley Forge Christian College v. Americans United for Separation of*
    *Church & State, Inc.*, 454 U.S. 464 (1982) ............................................................ 10

## Statutes, Regulations, and Rules

6 U.S.C. § 211 ............................................................................................. 19

8 U.S.C. § 1225 ........................................................................................... 19

8 U.S.C. § 1357 ............................................................................................. 19

19 C.F.R. § 162.6 .......................................................................................... 19

19 U.S.C. § 482 ............................................................................................. 19

19 U.S.C. § 507 ............................................................................................. 19

19 U.S.C. § 1461 ........................................................................................... 19

19 U.S.C. § 1496 ........................................................................................... 19

19 U.S.C. § 1581 ........................................................................................... 19

19 U.S.C. § 1582 ........................................................................................... 19

19 U.S.C. § 1589a ......................................................................................... 19

19 U.S.C. § 1595a ......................................................................................... 19

28 U.S.C. § 1343(a) ........................................................................................ 6

28 U.S.C. § 1357 ............................................................................................ 6

Fed. R. Civ. P. 72(b)(3) .................................................................................. 9

### Other Authorities

10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
    Federal Practice & Procedure § 2762 (3d ed. 1998) .............................. 11

# I.      Introduction

This suit arises out of a border search of plaintiff George Anibowei's cell phone upon his return to the country from international travel.  Anibowei claims that, notwithstanding the government's broad authority to conduct border searches as enshrined in various statutes and as repeatedly recognized by the Supreme Court, the inspection of his cell phone violated the Fourth and First Amendments.  He has sued eight government officials in their official capacities, seeking equitable relief.

All eight defendants moved to dismiss on grounds that:  (1) Anibowei lacks standing, because he cannot show a likelihood that he will be subjected to a similar search in the future as would be necessary to obtain equitable relief; and (2) the first amended complaint fails to state any claim for relief under either the Fourth Amendment (because, pursuant to the longstanding border-search doctrine, all people and things attempting to cross the border are subject to inspection, questioning, and search) or the First Amendment.  In addition, a subset of five defendants also moved to dismiss on the alternate ground that, even if a claim was stated, Anibowei's allegations showed no involvement by their specific agencies in the border search.

The defendants' motion was referred to the Magistrate Judge, who issued a Findings, Conclusion, and Recommendation (the Recommendation).  (Doc. 19.)  The Recommendation recommends:  (1) denying the defendants' motion insofar as dismissal was sought due to a lack of standing (under either Rule 12(b)(1) for constitutional standing or Rule 12(b)(6) for prudential standing); and (2) partially dismissing

Anibowei's claims under Rule 12(b)(6) to the extent they might be construed as *Bivens*[1] claims asserted against the defendants in their individual capacities.[2]  (*See* Doc. 19.)  The Recommendation states in a footnote that the dismissal of any assumed *Bivens* claims makes it unnecessary to address the defendants' argument that Anibowei failed to state any claim for relief with his allegations that the search of his cell phone violated the Fourth and First Amendments.  (Doc. 19 at 13 n.9.)  Thus, the Recommendation appears not to have made any recommendation concerning the portion of the defendants' motion that sought to dismiss the official-capacity claims against the defendants for equitable relief, under Rule 12(b)(6), because no Fourth or First Amendment claim had been stated.

The defendants now object to the Recommendation, for two principal reasons.

First, the defendants' standing arguments are meritorious, and this case should be dismissed for lack of standing.  The Recommendation found that Anibowei's request to have the government destroy or return any data seized from his cell phone was sufficient to establish standing, but in a similar case that the Recommendation describes as the "seminal case," a similar allegation did not suffice to establish standing, and the Court should so hold here as well.

Second, even if it is assumed that Anibowei does have standing, the

---

[1] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] The Recommendation also recommends dismissing any claim under the Administrative Procedure Act (APA).  (*See* Doc. 19 at 14–15.)  A provision of the APA is cited in the jurisdictional section of Anibowei's first amended complaint, but not otherwise discussed in that pleading, and the defendants did not understand Anibowei to be attempting to assert a separate APA claim.  However, the defendants do believe that any separate APA claim would be subject to dismissal for the reason given in the Recommendation and for the reasons laid out in the defendants' motion to dismiss concerning the two claims asserted by Anibowei (causes of action one and two).

Recommendation fails to address the defendants' principal arguments for a dismissal under Rule 12(b)(6).  Instead, as noted above, the Recommendation states in a footnote that the recommended dismissal of any assumed *Bivens* claims against the defendants in their individual capacities makes it unnecessary to address the defendants' Rule 12(b)(6) arguments.  But this is incorrect.  Anibowei asserts that he is suing the defendants in their official capacities only, and he seeks declaratory and injunctive relief against them under a theory that the cell-phone search was unconstitutional.  And the defendants moved to dismiss these claims.  Therefore, regardless of what was said in the Recommendation about any assumed *Bivens* claims against the defendants in their individual capacities, it was still necessary to address the defendants' argument that Anibowei failed to allege any Fourth or First Amendment violation, in order to determine whether Anibowei has stated any claim against the defendants in their official capacities.  As discussed in the defendants' motion and also herein, Anibowei has not stated any Fourth or First Amendment claim, and therefore dismissal on this ground is appropriate.

In addition, even if the case is not dismissed as to all defendants, the five defendants whose agencies are not alleged to have had any involvement in the search should be dismissed from the case with respect to all claims.

For these reasons, and as discussed in more detail below, the defendants respectfully request that the Court decline to adopt the Recommendation's conclusion that Anibowei has standing and instead dismiss for lack of standing.  Alternately, the Court should dismiss all claims against all defendants under Rule 12(b)(6) on the basis of the failure-to-state-a-claim arguments that the Recommendation did not address, or, in

the further alternative, the Court should dismiss all claims against the five defendants

whose agencies are not alleged to have had any involvement in the search.

## II.     Background[3]

### A.     The government's longstanding authority to conduct border searches.

The Government's plenary authority to conduct searches and inspections of

persons and things crossing our nation's borders is well-established and extensive;

control of the border is a fundamental attribute of sovereignty.  Accordingly, the Supreme

Court has made clear that searches of persons or property at the border are not subject to

any requirement of reasonable suspicion, subject only to very narrow exceptions for

highly intrusive searches of a person's body or destructive searches of property, neither

of which is at issue here.  "[T]he United States, as sovereign, has the inherent authority to

protect, and a paramount interest in protecting, its territorial integrity." *United States v.*

*Flores-Montano*, 541 U.S. 149, 153 (2004).  "Time and again, we have stated that

'searches made at the border, pursuant to the longstanding right of the sovereign to

protect itself by stopping and examining persons and property crossing into this country,

are reasonable simply by virtue of the fact that they occur at the border.'"  *Id.* at 152–53

(quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)).

### B.     Anibowei's allegations and request for declaratory and injunctive relief.

Anibowei is a U.S. citizen who lives in the Dallas area.  (Doc. 8, ¶¶ 6, 25.)  On

October 10, 2016, Anibowei returned from a trip to Canada on a flight that landed at

---

[3] Facts from Anibowei's pleadings are assumed true for purposes of the motion to dismiss only.

Dallas/Fort Worth International Airport.  (Doc. 8, ¶ 31.)  Upon exiting the plane, Anibowei was met by Department of Homeland Security (DHS) officers and questioned about various matters, including the purpose of his trip to Canada.  (Doc. 8, ¶¶ 34–35.) At this time, Anibowei's cell phone was briefly "detained for 'examination and copying'" and then returned to him.  (Doc. 8, ¶ 35.)

Anibowei states that his cell phone contained "private and sensitive materials" that he did not intend for others to view without his consent, and that the government did not have "reasonable suspicion to believe that [Anibowei's] device[] contained any material constituting a violation [of] any law respecting customs, immigration, or terrorism." (Doc. 8, ¶¶ 44, 46.)  He also alleges on information and belief that electronic information from his cell phone may have been disclosed to other government agencies after the search.  (Doc. 8, ¶ 43.)  In addition to the October 10, 2016 inspection, Anibowei states that he has been selected for "secondary inspection" on various instances during the course of international travel, and that on one other occasion a customs officer scrolled through messages on Anibowei's cell phone, but apparently without copying anything from the phone.  (Doc. 8, ¶¶ 25, 38.)

Based on the foregoing, the first amended complaint asserts that the government's actions in inspecting Anibowei's cell phone violated the Fourth Amendment (first cause of action) and the First Amendment (second cause of action).  (Doc. 8, ¶¶ 47–48.)  In terms of substantive relief, the first amended complaint's prayer requests:  (1) a declaration that the detention and seizure of Anibowei's cell phone and the review, copying, retention, and dissemination of its contents without reasonable suspicion

violates the Fourth and First Amendments, and (2) injunctions requiring the government to return any information retained from Anibowei's cell phone and to give details about whether or how any information was disseminated to other agencies.[4]  (Doc. 8, prayer.)

## C.    The defendants' motion to dismiss the first amended complaint.

Anibowei's first amended complaint names as defendants eight government officials, each in his or her official capacity as the head of a federal department or agency.  These are the DHS Secretary and the heads of U.S. Customs and Border Protection (CBP), U.S. Immigration and Customs Enforcement (ICE), and the Transportation Security Administration (TSA) (which are DHS components); the Attorney General and the heads of the Federal Bureau of Investigation (FBI) and Terrorist Screening Center (which is an FBI component); and the head of the National Counterterrorism Center (which is a component of the Office of the Director of National Intelligence).  (*See* Doc. 8, ¶¶ 7–14.)

All defendants moved to dismiss the first amended complaint on two grounds (each applicable to all eight defendants):

> First, for lack of standing, because the fact that Anibowei was
> exposed to allegedly illegal conduct in the past is not

---

[4] The first amended complaint's "jurisdiction and venue" section also makes cursory references to *Bivens* and 28 U.S.C. §§ 1343(a)(4) and 1357, (*see* Doc. 8, ¶¶ 1–3), but the defendants have never understood these references to be attempting to state any additional claims against the defendants, apart from the two claims that are enumerated in paragraphs 47 and 48 as causes of action one and two.  A *Bivens* claim is only available against a government official in a individual capacity, but Anibowei makes clear that he is suing the defendants in their official capacities only and he does not request damages in the prayer, so the defendants have never understood him to be asserting any *Bivens* claims.  (*See* Doc. 8, Caption, ¶¶ 8–14, & prayer.)  Section 1343(a)(4) creates jurisdiction for suits brought under any "Act of Congress providing for the protection of civil rights, including the right to vote," but Anibowei does not identify any such Act of Congress he is attempting to sue under.  And section 1357 concerns jurisdiction for suits arising from actions to collect government revenues or enforce voting rights, neither of which applies here.

sufficient to entitle him to seek declaratory or injunctive relief
in federal court absent some showing that the allegedly illegal
act will be repeated against him in the future; and

Second, for failure to state a claim upon which relief can be
granted, because the Fourth Amendment does not require any
showing of reasonable suspicion before an electronic device
can be searched at the border, nor is any First Amendment
violation otherwise shown by the facts alleged by Anibowei.

(Doc. 13 at 7–18.)  In addition, five of the defendants requested dismissal on the alternate

ground that no claim had been stated against them, specifically, because Anibowei had

not pleaded any facts showing involvement by these defendants' agencies in the matters

at issue in the first amended complaint.[5]  These defendants are the Attorney General and

the heads of the TSA, FBI, FBI Terrorist Screening Center, and National

Counterterrorism Center.  (Doc. 13 at 19.)

On referral from the District Judge, (*see* Doc. 14 (Order of Reference)), the

Magistrate Judge issued the Recommendation on December 15, 2017, (Doc. 19).  The

Recommendation first addressed the defendants' request that the case be dismissed for

lack of standing (both constitutional and prudential standing), and reasoned that standing

was no obstacle to Anibowei's suit because, in the Recommendation's view, a decision in

his favor could compel the government to return or destroy any remaining copies of the

data from his cell phone.  (Doc. 19 at 7–9, 11–12.)

---

[5] Suits against government officers in their official capacities (which is how Anibowei purported to sue all
eight defendants) are considered suits against the government itself.  *See Mauro v. Freeland*, 735 F. Supp.
2d 607, 616 (S.D. Tex. 2009) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)).  Accordingly, the five
defendants argued that Anibowei's allegations showed no involvement by *any* officers from their
agencies, not just any involvement by the agency heads themselves.  (*See* Doc. 13 at 19–20.)

Next, the Recommendation explained that "Defendants also assert that all of Plaintiff's claims against them are subject to dismissal because he 'has failed to plead any specific facts showing involvement by any government officers from these agencies in any of the alleged wrongdoing made the basis of the suit.'" (Doc. 19 at 12 (quoting Doc. 13 at 24 (referring to the CM/ECF system page number at the top of the page)).) The portion of the motion to dismiss cited by the Recommendation for this statement was the portion in which five defendants (the Attorney General and the heads of the FBI, FBI Terrorist Screening Center, TSA, and National Counterterrorism Center) had moved to dismiss the claims against them on the ground that Anibowei had not pleaded any facts showing involvement by these defendants' agencies. (*See* Doc. 13 at 19–21.) However, instead of analyzing this argument with respect to the five defendants who made it, the Recommendation instead proceeded as if it had been made by all eight defendants, but only with respect to any assumed *Bivens* claims (i.e., "[t]o the extent that Plaintiff's pro se complaint may be liberally construed as asserting claims against Defendants (or their predecessors) in their individual capacities"). (Doc. 19 at 13.) Having thus reframed the issue, the Recommendation concluded that Anibowei had failed to state any claim for *Bivens* relief against all eight named defendants, and therefore recommended partially granting the defendants' Rule 12(b)(6) motion so as to dismiss any *Bivens* claims, i.e., any claims against the defendants in their individual capacities. (Doc. 19 at 13, 15.)

Critically, though, the Recommendation appears not to have addressed whether Anibowei's allegations suffice to state any claim for relief under the Fourth or First Amendment against the defendants in their official capacities (i.e., for equitable relief).

Instead, at the conclusion of its discussion of any assumed *Bivens* claims, the Recommendation stated in a footnote that "[b]ecause Plaintiff has failed to state a claim against Defendants under *Bivens* based on a lack of personal involvement, the Court need not reach Defendants' arguments that Plaintiff has failed to state a claim that the border search of his cell phone violated his First and Fourth Amendment rights." (Doc. 19 at 13 n.9.) On the basis of this footnote, the Recommendation appears to have left unaddressed the defendants' principal Rule 12(b)(6) arguments, i.e., the arguments that the Fourth Amendment does not require reasonable suspicion for the search alleged by Anibowei and that no First Amendment violation was shown under the facts alleged, either. The Recommendation thus seems not to have made any findings or recommendation about whether the "claims for equitable relief" for which the Recommendation conducted a standing analysis (Doc. 19 at 12) should survive the defendants' Rule 12(b)(6) argument that no Fourth and First Amendment claims were stated.

### III.  Legal Standards

Under Fed. R. Civ. P. 72(b)(3), this Court reviews de novo any objections to the Magistrate Judge's recommendation on a dispositive motion. (*See also* Doc. 13 at 6–7 (discussing the relevant standards under Rule 12(b)(1) and (6)).)

### IV.  Argument and Authorities

For the reasons discussed below, the Court should decline to adopt the Recommendation's standing analysis and should instead dismiss the first amended complaint for lack of standing, or, alternately, for failure to state a claim under Rule 12(b)(6) based upon the defendants' arguments that the Recommendation did not

consider; or in the further alternative, at least the five defendants whose agencies are not

alleged to have had any involvement in the search should be dismissed from the case.

**A.     The Court should decline to adopt the Recommendation's standing analysis, and instead should rule that Anibowei has not established standing to obtain the purely equitable relief he seeks.**

The "irreducible constitutional minimum" of standing requires a plaintiff to show

(1) a concrete and particularized injury in fact that is actual or imminent, not conjectural

or hypothetical; (2) a causal connection between the injury and the defendant's conduct;

and (3) that the injury will likely be redressed by a favorable decision.  *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  And "[b]eyond the constitutional

requirements, the federal judiciary has also adhered to a set of prudential principles that

bear on the question of standing."  *Valley Forge Christian College v. Americans United*

*for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982).  The standing inquiry

is "especially rigorous when reaching the merits of the dispute would force [a court] to

decide whether an action taken by one of the other two branches of the Federal

Government was unconstitutional."  *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997).

**1.     Anibowei's vague averments of possible future injury do not establish any real and immediate threat of repeated injury in the future.**

Here, Anibowei seeks equitable relief—a declaratory judgment and preliminary

and permanent injunctions—under a premise that the government violated the Fourth and

First Amendments by searching and copying information from his cell phone at the

border.  (*See* Doc. 8, ¶¶ 47–48 & prayer.)  However, even assuming some constitutional

violation did occur, "[p]ast exposure to illegal conduct does not in itself show a present

case or controversy." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (internal

quotation marks and citation omitted).  Instead, to obtain declaratory or injunctive relief

based on an alleged past wrong, "a plaintiff must demonstrate either continuing harm or a

real and immediate threat of repeated injury in the future."  *Id.* (citation omitted).

For example, in *City of Los Angeles v. Lyons*, 461 U.S. 95, 98 (1983), the Supreme

Court considered whether a plaintiff who had been subjected to a chokehold by police

had standing to seek equitable relief in the form of (i) a declaration that the use of such

chokeholds violated the Constitution and (ii) an injunction against their future use.  The

Court explained that the plaintiff would have standing only if he could show that he

"would again be stopped for a traffic or other violation in the reasonably near future" and

"that strangleholds are applied by the Los Angeles police to every citizen who is stopped

or arrested regardless of the conduct of the person stopped."  *Id.* at 108.  Noting that the

plaintiff did not claim to have been subjected to a chokehold on any other occasion, the

Court found that the "odds" of a repeat occurrence of the allegedly illegal conduct were

not "sufficient to make out a federal case for equitable relief."  *Id.*

The same is true with respect to Anibowei's suit challenging the allegedly

unconstitutional actions of the government in inspecting his cell phone.  Anibowei's first

amended complaint details that he has traveled internationally on numerous occasions

and has had many encounters with government officers when being processed through

customs.  (*See* Doc. 8, ¶¶ 22–25.)  Nonetheless, Anibowei alleges that his cell phone was

"detained for 'examination and copying'" on only a single occasion, and that on only one

other occasion did a government officer even make any examination of the phone.  (*See*

Doc. 8, ¶¶ 31–40.)  Accordingly, Anibowei's allegations are not "sufficient to make out a federal case for equitable relief" because they do not establish a likelihood that Anibowei's cell phone will be similarly searched again in the future.  *Lyons*, 461 U.S. at 108; *see also Bauer*, 341 F.3d at 358.

Indeed, a similarly situated plaintiff—whose electronic devices were actually subject to a much more intrusive seizure and detention for inspection—was found to lack standing to challenge the government's border-search authority in civil litigation in *Abidor v. Napolitano*, 990 F. Supp. 2d 260 (E.D.N.Y. 2013).  In that case, the plaintiff Abidor had his cell phones and other electronic devices seized when returning to the United States from abroad, with some devices kept for eleven days and only later returned to him by mail.  *Id.* at 267–68.  Abidor sued various government officials seeking purely equitable relief, including a declaration that his rights had been violated and an injunction against copying the information from his devices and for the expungement of the information from the government's possession.  *Id.* at 264, 275.

In dismissing Abidor's claims for lack of standing, the court employed reasoning that is equally applicable to Anibowei's claims.  The court took judicial notice of the fact that "there is less than a one in a million chance that a computer carried by an inbound international traveler will be detained" at customs when a traveler is entering the United States.  *Id.* at 271; *see also United States v. Ickes*, 393 F.3d 501, 506–07 (4th Cir. 2005) (rejecting as "far-fetched" the suggestion that "any person carrying a laptop computer . . . on an international flight would be subject to a search of the files on the computer hard drive[,]" because "[c]ustoms agents have neither the time nor the resources to search the

contents of every computer"). Given these low odds of a future search occurring, there was at most only an "alleged injury based on speculation as to conduct which may or may not occur at some unspecified future date," which was insufficient to support an action in federal court. *Abidor*, 990 F. Supp. 2d at 272. For all the same reasons that the similarly situated plaintiff lacked standing in the *Abidor* case, Anibowei lacks standing in this case in which he seeks essentially the same type of equitable relief.

### 2. A claimed injury from the retention of information does not provide standing.

The Recommendation suggests that Anibowei has incurred an injury based on the copying and retaining of information from his cell phone, but any such alleged injury still fails to establish standing in the context of this civil suit. The redressability component of standing mandates that the plaintiff must show that a favorable resolution of his claim would likely redress the professed injury. *Defenders of Wildlife*, 504 U.S. at 560–61. Here, though, it cannot be shown that a resolution in Anibowei's favor would result in the government's being required to return or "expunge" all information gathered from his cell phone. This is because, even assuming that copying information from a cell phone at the border did violate the Fourth Amendment, the government's use of "evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution." *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 362 (1998). While there is an exclusionary rule (derived from prudential principles) that sometimes may preclude the government from using seized evidence in a particular proceeding, there is no such rule that applies to all such proceedings or persons. *See id.* For example, even if a court finds

that evidence was seized in violation of the Fourth Amendment and thus suppresses the

evidence in a criminal prosecution, that does not mean the government cannot use the

evidence in other proceedings where the exclusionary rule does not apply, such as in

certain civil or grand-jury proceedings. *See id.* at 363–64. It necessarily follows that

even showing a constitutional violation in connection with the search or seizure of some

material would not entitle a plaintiff like Anibowei to have all records of the seized

evidence obliterated or expunged from the government's possession, and Anibowei has

not alleged that retaining information from his cell phone would constitute a

constitutional violation.[6] *See also Herring v. United States*, 555 U.S. 135, 141–42 (2009)

("We have repeatedly rejected the argument that exclusion is a necessary consequence of

a Fourth Amendment violation."). Thus, no standing can be established on this basis.

### 3.    Prudential reasons also support a dismissal for lack of standing.

Moreover, even if it were assumed that Anibowei could establish Article III

standing, dismissal would still be warranted for closely related prudential reasons. "A

declaratory judgment, like other forms of equitable relief, should be granted only as a

matter of judicial discretion, exercised in the public interest. It is always the duty of a

court of equity to strike a proper balance between the needs of the plaintiff and the

consequences of giving the desired relief." *Eccles v. Peoples Bank of Lakewood Vill.*,

333 U.S. 426, 431 (1948) (citations omitted). Thus, "[e]specially where governmental

---

[6] Anibowei's standing argument in his response to the defendants' motion focused on likely future border searches, and not on establishing standing on the basis of any alleged entitlement to having information from a past search destroyed or returned. (*See* Doc. 17 at 7–9.)

**Defendants' Objections to the Magistrate Judge's Findings, Conclusions, and Recommendation on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint – Page 14**

action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative." *Id.*; *see also Abidor*, 990 F. Supp. 2d at 274 ("'The Supreme Court has frequently, although not invariably, indicated a marked reluctance to have important issues of public law resolved by declaratory judgments.'" (quoting 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2762 (3d ed. 1998))).

Anibowei essentially seeks a judgment from this Court that the Constitution requires the government to have reasonable suspicion before undertaking the search of an electronic device at the border. (*See* Doc. 8, ¶¶ 47–48 & prayer.) However, as discussed in more detail below, neither the Supreme Court nor the Fifth Circuit has ever recognized such a requirement. Anibowei therefore cannot show a "clear" need for the relief he seeks, *Eccles*, 333 U.S. at 431, and indeed the type of judgment he seeks would represent a marked departure from the longstanding principles that the government's border-search authority is broad and that border searches are reasonable simply by virtue of the fact that they occur at the border. Furthermore, while it is conceivable that in some instances it might become absolutely necessary and unavoidable for a court to address the legality of an electronic border search (such as in a criminal prosecution where the defendant's freedom may hinge on whether evidence from a border search of an electronic device is admitted into evidence or instead suppressed), Anibowei's civil suit does not present such a case. *See Abidor*, 990 F. Supp. 2d at 272 (contrasting civil and criminal cases).

In addition, declining to exercise discretionary equitable jurisdiction over a suit like Anibowei's has the added benefit of affording Congress and the relevant Executive

Branch agencies the first opportunity to "respond to any abuses that should develop as a consequence" of government policies providing for border searches of electronic devices.[7]  *Id.* at 274.  As the CBP and ICE border-search policies cited in the first amended complaint make clear, the government is "sensitive to the privacy and confidentiality issues posed by border searches of electronic devices," and has made "efforts to cabin the nature and extent of such searches" while also putting in place "significant precautionary measures" to protect sensitive information.  *Id.*  Congress is likewise aware that electronic devices are subject to being searched at the border, but has not seen fit to withdraw or modify the broad search authority that it has consistently granted to government officers at the border for well over 200 years (including at the time the Fourth Amendment was adopted).  *See id.*  As the *Abidor* court noted, these factors counsel against entertaining this kind of civil suit.  *Id.*

### 4.    The Recommendation's reliance on *Janfeshan* is misplaced.

Finally, the *Janfeshan* case cited in the Recommendation does not establish that Anibowei has standing here.  *See Janfeshan v. U.S. Customs & Border Protection*, No. 16-CV-6915, 2017 WL 3972461 (E.D.N.Y. Aug. 21, 2017).  *Janfeshan* distinguished the *Abidor* decision by relying on a separate case, *American Civil Liberties Union v. Clapper*, 785 F.3d 787 (2d Cir. 2015).  *See Janfeshan*, 2017 WL 3972461, at *6–7.  But *Clapper*

---

[7] The August 2009 CBP and ICE guidance and standard operating procedures for searching, reviewing, retaining, and sharing information contained in electronic devices subject to border search authority are comprehensive and have been publicly available since August 2009.  They can be accessed at https://www.dhs.gov/xlibrary/assets/ice_border_search_electronic_devices.pdf and https://www.dhs.gov/xlibrary/assets/cbp_directive_3340-049.pdf

did not say anything about what a plaintiff must do to establish standing to contest a border search in a civil suit; instead, the case involved a challenge to domestic searches (the collection of telephone metadata for phone calls with at least one caller in the United States). *See Clapper*, 785 F.3d at 795–96.  In addition, the rationale of *Janfeshan*, to the effect that a request to have information expunged from the government's possession suffices to establish standing, is not consistent with the principle, discussed above (*see* pp. 13–14, *supra*), that the exclusionary rule does not apply in all settings.

The defendants respectfully submit that the standing analysis in *Abidor*, not *Janfeshan*, is the correct one and should be followed in this case.  Indeed, *Abidor* involved a plaintiff who (like Anibowei) was seeking expungement of materials collected at a border search, but was nonetheless was found to lack standing.  *See Abidor*, 990 F. Supp. 2d at 275.  The same result should obtain here.

**B.      If the case is not dismissed for lack of standing, it is necessary to reach the Rule 12(b)(6) arguments that the Recommendation identified in footnote 9 but did not address, and the Court should dismiss the first amended complaint as to all defendants on the basis of these arguments.**

As discussed above (*see* pp. 7–9, *supra*), the Recommendation did not address the portion of the defendants' Rule 12(b)(6) motion that argued that Anibowei failed to state any claim of a Fourth or First Amendment violation.  These arguments were raised in the defendants' motion and are applicable to Anibowei's claims against the defendants in their official capacities.  (*See* Doc. 13 at 13–19.)  Accordingly, these arguments should have been addressed and, as discussed below, their consideration should result in a dismissal of all claims asserted by Anibowei, under Rule 12(b)(6).

1. **Anibowei fails to state any claim for relief under the Fourth Amendment (first cause of action) because reasonable suspicion was not required in order to inspect Anibowei's cell phone at the border.**

With respect to Anibowei's first cause of action, the first amended complaint's allegations that the government's search and seizure of information from his cell phone at the border violated the Fourth Amendment fail to state any claim for relief. The Fourth Amendment requires only "that searches and seizures be reasonable." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985). According to Anibowei, the government's actions were unreasonable because the government allegedly lacked reasonable suspicion to believe that his cell phone contained evidence of any crime respecting customs, immigration, or terrorism. (*See* Doc. 8, ¶¶ 46–47.)

But "the Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior." *Montoya de Hernandez*, 473 U.S. at 538. "[T]he United States, as sovereign, has the inherent authority to protect, and a paramount interest in protecting, its territorial integrity." *Flores-Montano*, 541 U.S. at 153. Indeed, the Supreme Court has stressed that "[t]he Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border." *Id.* at 152. For this reason, it has long been acknowledged that "'searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border.'" *Id.* at 152–53 (quoting *Ramsey*, 431 U.S. at 616). Indeed, the border-search doctrine, which permits suspicionless searches of those persons and things crossing the border, has a history as old as the Fourth

Amendment itself, *see id.* at 153 (citing a statute authorizing border searches passed by the First Congress, and explaining that the government's authority to conduct warrantless searches at the border has an "impressive historical pedigree"), and its broad nature is also enshrined in numerous statutes, *see, e.g.*, 6 U.S.C. § 211; 8 U.S.C. §§ 1225, 1357; 19 U.S.C. §§ 482, 507, 1461, 1496, 1581, 1582, 1589a, 1595a; *see also* 19 C.F.R. § 162.6 (allowing for the inspection and search of "[a]ll persons, baggage, and merchandise arriving in the Customs territory of the United States from places outside thereof").

As the Supreme Court has held, "[r]outine searches of the persons and effects of entrants [into the United States] are not subject to any requirement of reasonable suspicion, probable cause, or warrant." *Montoya de Hernandez*, 473 U.S. at 538.  The only exception the Court has suggested exists is for a narrow category of *personal* searches—"such as strip, body-cavity, or involuntary x-ray searches"—for which reasonable suspicion may be required.  *Flores-Montano*, 541 U.S. at 152 (quoting *Montoya de Hernandez*, 473 U.S. at 541 n.4); *see also United States v. Sandler*, 644 F.2d 1163, 1167–68 (5th Cir. 1981) (explaining that while reasonable suspicion may be required for strip searches or body-cavity searches at the border, it is not required for less intrusive personal searches such as patdowns or frisks).

Anibowei has not alleged that he was subjected to any such search, and, notably, the Supreme Court has rejected the attempt to extend the reasonable-suspicion requirement beyond the category of "highly intrusive searches of the person."  *Flores-Montano*, 541 U.S. at 152.  In *Flores-Montano*, customs officers removed and dismantled the gas tank of a car entering the country, leading to the discovery of narcotics inside.  *Id.*

at 150–51.  Reversing a decision of the Ninth Circuit, which had held that such a search

required reasonable suspicion under a theory that it went beyond a "routine" search, the

Supreme Court explained that "[c]omplex balancing tests to determine what is a 'routine'

search of a vehicle, as opposed to a more 'intrusive' search of a person, have no place in

border searches of vehicles."  *Id.* at 152.

Accordingly, when the thing searched at the border is property (rather than a

person), no balancing must be done to determine whether the search was "routine" or

instead required reasonable suspicion, as would be the case with a strip search or body-

cavity search.  *See United States v. McCauley*, 563 F. Supp. 2d 672, 677 (W.D. Tex.

2008) ("Relying on the Supreme Court's reasoning in *Flores-Montano*, this Court cannot

equate the search of a computer with the search of a person.  The Court finds that the

search of a computer is more analogous to the search of a vehicle and/or its contents."),

*aff'd*, 420 F. App'x 400 (5th Cir. 2011)[8]; *United States v. Thompson*, 53 F. Supp. 3d 919,

920–21, 923 (W.D. La. 2014) (holding that no reasonable suspicion was required when

DHS agents "performed data extractions on both a Nokia cell phone and an iPhone seized

from [the defendant], completely downloading and copying their contents, including all

personal information," because the search had occurred at an international border).

In both *McCauley* and *Thompson*, district courts within the Fifth Circuit rejected

---

[8] In the appeal in the *McCauley* case, the Fifth Circuit suggested that it agreed with the district court that reasonable suspicion is not required for searches of electronic devices at the border, but ultimately determined that it "need not decide whether the search was constitutionally permissible as a routine search under the border-search doctrine," because it could affirm the district court's decision (denying a motion to suppress) on the alternate ground that the defendant had given consent for the search.  *See McCauley*, 420 F. App'x at 401.

the argument that the Fourth Amendment requires reasonable suspicion before an electronic device may be searched (or detained, or copied) at the border. *See McCauley*, 563 F. Supp. 2d at 676–79; *Thompson*, 53 F. Supp. 3d at 920–23. And the Fifth Circuit has approved generally of the warrantless search of electronic devices at the border. *See United States v. Pickett*, 598 F.3d 231, 233–35 (5th Cir. 2010) (rejecting the argument that a warrant was required for ICE agents to search a person's thumb drives, portable hard drive, and laptop memory card at the border). The same reasoning employed in *McCauley*, *Thompson*, and *Pickett* dictates that Anibowei has failed to allege a viable Fourth Amendment claim in this case. Under the border-search doctrine, the search of an electronic device at the border is reasonable—and therefore does not offend the Constitution—by virtue of the fact that it occurs at the border.

Indeed, as noted above, both the Supreme Court and the Fifth Circuit have consistently refused to expand any requirement of reasonable suspicion for border searches beyond the most intrusive searches of a person's body. *See Flores-Montano*, 541 U.S. at 152–53 (holding that reasonable suspicion was not required to remove and dismantle a gas tank at the border); *United States v. Kelly*, 302 F.3d 291, 294 (5th Cir. 2002) (explaining that non-routine searches requiring reasonable suspicion "include body cavity searches, strip searches, and x-rays," but that a "canine sniff" that made contact with the person's "groin area" did not require reasonable suspicion); *Sandler*, 644 F.2d at 1167–69 (declining to require reasonable suspicion for patdowns or frisks that fall short of a strip search). Because Anibowei does not allege that he was subjected to any such highly intrusive search of his person, there is no basis for his claim that the Fourth

Amendment was violated due to an alleged lack of reasonable suspicion to support any search (or copying, or dissemination) of information from his phone.

**2.      Anibowei fails to state any claim for relief under the First Amendment (second cause of action) because there is no First Amendment exception to the border-search doctrine.**

Anibowei fares no better with his second cause of action, because his allegations fail to show any violation of the First Amendment.  The basis for Anibowei's First Amendment claim is a contention that his cell phone contained private, sensitive, or confidential materials.  (Doc. 8, ¶¶ 44–45.)  However, the Supreme Court has never recognized an exception to the border-search doctrine based on the First Amendment status of the material being searched, and in *New York v. P.J. Video, Inc.*, 475 U.S. 868, 874 (1986), it rejected an analogous argument that would have required a higher standard of probable cause for warrant applications when expressive material is involved.  The Court instead explained that the seizure of such materials "should be evaluated under the same standard of probable cause used to review warrant applications generally."  *Id.* at 875.  Since under *P.J. Video* it is clear that the First Amendment does not justify any exception to the usual standards of reasonableness for a non-border search, it likewise would follow that the First Amendment does not change the rules for a border search.

Indeed, in *United States v. Ickes*, 393 F.3d 501, 506 (4th Cir. 2005), the Fourth Circuit squarely rejected an attempt to "carve out a First Amendment exception to the border search doctrine" for searches of electronic devices at the border.  In addition to noting that Supreme Court precedent did not support an exception, the court explained that adopting such a rule would create "significant headaches" as government officers

would be faced with making difficult on-the-spot determinations about the First

Amendment value of materials crossing the border.  *Id.* at 506.  Because "[t]hese sorts of

legal wrangles at the border are exactly what the Supreme Court wished to avoid by

sanctioning expansive border searches," the claim of First Amendment protection was

rejected.  *Id.*  For the same reasons, Anibowei's allegations of a First Amendment

violation fail to state any claim for relief.

**C.    The five defendants whose agencies are not alleged to have had any involvement in the search of Anibowei's cell phone should be dismissed from the case in its entirety (including with respect to official-capacity claims).**

The Recommendation did not squarely address the argument made by the

Attorney General and the heads of the TSA, FBI, FBI Terrorist Screening Center, and

National Counterterrorism Center that all claims against these defendants should be

dismissed due to Anibowei's failure to plead any specific facts showing involvement by

any government officers from these defendants' agencies in the alleged wrongdoing.  As

discussed above, the Recommendation instead considered only whether any assumed

*Bivens* claims against all defendants should be dismissed due to a lack of personal

involvement by the named defendants.  This would appear to still leave pending any

claims against the Attorney General and the heads of the TSA, FBI, FBI Terrorist

Screening Center, and National Counterterrorism Center in their official capacities,

despite the lack of any allegation showing involvement by these agencies in the matters at

issue in Anibowei's suit.  Because the first amended complaint sets forth no non-

speculative facts showing any wrongdoing by these defendants or their agencies, all

claims (of whatever nature) against these defendants should be dismissed.

Anibowei first attempts to link some of these defendants to the case by stating that the National Counterterrorism Center and the FBI are "the two government entities that are primarily responsible for 'nominating' individuals for inclusion in the terrorist watch list," and that "certain passenger complaints [about border screening procedures] . . . actually have some connection to the Terrorist Watch list." (Doc. 8, ¶ 30.) The factual support offered for this latter statement is a June 30, 2016 letter Anibowei received after he made an inquiry to the DHS Traveler Redress Inquiry Program (TRIP). (*See* Doc. 8, ¶ 30; *see also* Doc. 8-4 (copy of the June 30, 2016 letter).) But the only reference to any connection to the terrorist watchlist in the June 30, 2016 letter is the statement that "less than 1% of the DHS TRIP complainants actually have some connection to the Terrorist Watchlist." (Doc. 8-4.) Accordingly, by stating that the vast majority of traveler redress requests received by DHS have no connection to the terrorist watchlist, the June 30, 2016 letter does not establish any link between the FBI, National Counterterrorism Center, and any terrorist watchlist, on the one hand, and the events at issue in this case, on the other.

Additionally, Anibowei's suggestion that he may have been subjected to heightened searching or inspection at the border (i.e., by CBP/ICE) because of information provided by other defendants who do not have a border-search function, but who instead administer or have responsibility for terrorist screening or watchlists, is no more than speculation. (*See* Doc. 8, ¶ 30.) And the same is true of Anibowei's assertion that these other defendants may have received information developed during some border search or inspection that Anibowei previously underwent—again, this is merely speculation. (Doc. 8, ¶ 30.) Indeed, Anibowei provides no basis whatsoever for these

assertions beyond stating the responsibilities and missions of the government agencies themselves, which is not sufficient to raise a plausible claim for relief against these defendants. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

In sum, even assuming Anibowei has standing with respect to his border-search claims, he does not have standing to pursue claims against the Attorney General and the heads of the TSA, FBI, FBI Terrorist Screening Center, and National Counterterrorism Center because he has not identified any injury allegedly caused by those agencies. *See Defenders of Wildlife,* 504 U.S. at 560. He also fails to state a claim against these five defendants because he has not pleaded facts showing that they had any involvement in the alleged Fourth and First Amendment violations so as to give rise to any plausible claim for relief against them. *See Escamilla v. City of Dallas*, No. 3:03-CV-848-K, 2004 WL 1932867, at *5 (N.D. Tex. Aug. 30, 2004) (in a multi-defendant suit, dismissing claims against the City of Dallas under Rule 12(b)(6) because the plaintiff had "not pleaded any involvement of the City" in the alleged wrongdoing).

## V.     Conclusion

The Court should decline to accept the Recommendation's standing analysis and instead dismiss for lack of standing. Alternately, the Court should reach the Rule 12(b)(6) arguments not addressed in the Recommendation and dismiss the first amended complaint in its entirety as to all defendants, or in the further alternative, dismiss the five defendants whose agencies are not alleged to have had any involvement in the search.

Respectfully submitted,

ERIN NEALY COX
United States Attorney

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:   214-659-8626
Facsimile:    214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

## Certificate of Service

On December 29, 2017, I electronically submitted the foregoing document with

the clerk of court for the U.S. District Court, Northern District of Texas, using the

electronic case filing system of the court.  I hereby certify that I have served all parties

electronically or by another manner authorized by Federal Rule of Civil Procedure

5(b)(2).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney