## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **GEORGE ANIBOWEI** | § |
| | § |
| **Plaintiff** | § Civ. Act. No.: 3:16-CV-3495-D |
| | § |
| **v.** | § |
| | § **PLAINTIFF'S RESPONSE TO** |
| | § **DEFENDANTS' OBJECTIONS** |
| | § **TO THE MAGISTRATE JUDGE'S** |
| **JEFFERSON B. SESSIONS, et al.,** | § **FINDINGS, CONCLUSIONS, AND** |
| | § **RECOMMENDATION** |
| **Defendants** | § |
| | § |

---

### PLAINTIFF'S RESPONSE TO
### DEFENDANTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS,
### CONCLUSIONS AND RECOMMENDATIONS

George Anibowei
Texas Bar No. 24036142
The Law Office of George Anibowei, P.C.
6060 N. Central Expressway, Ste. 560
Dallas, Texas 75206
Telephone No: (214) 800-3463
Facsimile No: (214) 800-3464
Email: ganibowe@yahoo.com
**ATTORNEY FOR PLAINTIFF,**
**GEORGE ANIBOWEI**

**Table of Contents**

1. Introduction…………………………………………………………………….……1

2. Background…………………………………………………………………….…….2

3. Factual Allegations……………………………………………………………….…3

4. Argument and Authorities……………....………………………………………......…..5

   I. Legal Standard……………………………………………….……………….....5

   II. Plaintiff's legal standing………………………….………………………….…..7

      A. The Court should adopt the Recommendation's standing analysis, and rule that Plaintiff has established standing to obtain the relief he seeks...………...…….…7

      B. The Honorable Judge's reliance on *Janfeshan* is very apposite in this case and must be adopted……………………. ………………………………………...12

   III. Plaintiff stated a claim upon which relief can be granted.………………….……..…14

      A. The Court should accept and adopt the Recommendation's Prudential standing analysis because Plaintiff has clearly asserted his need for relief and a decision in his favor would grant him the relief he seeks ...……………………….……...............15

   IV. Dismissal as to the Non-DHS Defendants is Premature…………………………......17

5. Conclusion……………………………………………………………………..…...18

# Table of Authorities

## Cases

*Abidor v. Napolitano*
     990 F. Supp. 2d 260 (E.D.N.Y. 2013)..........................................................8, 9, 10, 12, 13

*Allen v. Wright,*
     468 U.S. 737, 751 (1984)......................................................................................................7

*Ashcroft v. Iqbal*
     129 S. Ct. 1937 (2009)…………………………………………….......................14, 15

*Baker v. Putnal*
     75 F.3d 190, 196 (5th Cir. 1996).......................................................................................14

*Bauer v. Texas*
     341 F.3d 352, 357 (5th Cir. 2003)..................................................................8, 11, 14, 15

*Bell Atl. Corp. v. Twombly*
     550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)…………………….........14, 15

*Bridgewater v. Double Diamond–Delaware, Inc.*
     3:09–CV–1758–B, 2010 WL 1875617, at *5 (N.D. Tex. May 10, 2010)..........................6

*City of Los Angeles v. Lyons*
     461 U.S. 95, 102 (1983)).....................................................................................................8

*Cobb v. Cent. States*
     461 F.3d 632, 635 (5th Cir. 2006)......................................................................................7

*Club Retro, L.L.C. v. Hilton*
     568 F.3d 181, 211 (5th Cir. 2009)................................................................................... 16

*Elk Grove Unified Sch. Dist. v. Newdow*
     542 U.S. 1, 11 (2004).........................................................................................................16

*Henschen v. City of Houston*
     959 F.2d 584, 588 (5th Cir. 1992).......................................................................................8

*Howery v. Allstate Ins. Co.*
     243 F.3d 912, 916 (5th Cir. 2001)..................................................................................... 6

*Hunter v. Branch Banking & Trust Co.*
     2013 WL 607151, at *1 (N.D. Tex. Feb. 19, 2013)...........................................................7

*Janfeshan v. United States*
    No. 16-CV-6915 (ARR) (LB), 2017 WL 3972461, *2 (E.D.N.Y. Aug. 21,
2017).................................................................................................. 9, 10, 11,12, 13, 16

*Kokkonen v. Guardian Life Ins. Co. of Am.*
    511 U.S. 375, 377 (1994)...................................................................6

*Lee v. Verizon Commc'ns Inc.*
    954 F. Supp. 2d 486, 496 (N.D. Tex. 2013)....................................7

*Lester v. Lester*
    No. 3:06-CV-1357-BH, 2009 WL 3573530, at *4 (N.D. Tex. Oct. 29, 2009)..................6

*Lewis v. Casey*
    518 U.S. 343, 349 n.1 (1996)...........................................................7

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992)………………………………………….….......................7

*Machete Prods., L.L.C. v. Page*
    809 F.3d 281, 288 (5th Cir. 2015)........................................................8,11,13

*McClure v. Ashcroft,*
    335 F.3d 404, 410 (5th Cir. 2003)....................................................16

*O'Shea v. Littleton*
    414 U.S. 488, 495–96 (1974)...........................................................8

*Paterson v. Weinberger*
    644 F.2d 521, 523 (5th Cir. 1998)....................................................6

*Peoples Rights Org. v. City of Columbus*
    152 F.3d 522, 527 (6th Cir. 1998).....................................................8

*Raines v. Byrd*
    521 U.S. 811, 818 (1997)..................................................................7

*Reitz v. City of Abilene*
    No. 1:16-CV-0181-BL, 2017 WL 3046881, at *9 (N.D. Tex. May 25, 2017).............2, 14

*St. Paul Fire & Marine Ins. Co. v. Labuzan*
    579 F.3d 533, 539 (5th Cir. 2009)...................................................16

*Spivey v. Robertson*
    197 F.3d 772, 774 (5th Cir. 1999), cert. denied, 530 U.S. 1229 (2000).........................14

*U.S. Parole Comm'n v. Geraghty*
     445 U.S. 388, 395 (1980)..................................................................................................7

*Williamson v. Tucker*
     645 F.2d 404, 413 (5th Cir. 1981)..................................................................................... 6

## Statutes and Rules

Fed. R. Civ. P. Rule 12(b)(6)……………………………………………………................14

Fed. R. Civ. P. Rule 12(b)(1)...............................................................................................6,7,14

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **GEORGE ANIBOWEI** | § |
| | § |
| **Plaintiff** | § **Civ. Act. No.: 3:16-CV-3495-D** |
| | § |
| **v.** | § |
| | § **PLAINTIFF'S RESPONSE TO** |
| | § **DEFENDANTS' OBJECTIONS** |
| | § **TO THE MAGISTRATE JUDGE'S** |
| **JEFFERSON B. SESSIONS, et al.,**[1] | § **FINDINGS, CONCLUSIONS, AND** |
| | § **RECOMMENDATION** |
| **Defendants** | § |
| | § |

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS,
CONCLUSIONS, AND RECOMMENDATION**

---

## 1.   INTRODUCTION

COMES NOW Plaintiff, George Anibowei and hereby files this Response to Defendants' Objections to the Magistrate Judge's Findings, Conclusions and Recommendation. Plaintiff respectfully prays that this Honorable Court accepts and adopts the findings, conclusions and recommendation of the Honorable Magistrate Judge.

The question in this case is whether the government can, without any suspicion, take an American's electronic devices from him at the border in order to make copies, retain the

---

[1] Jefferson B. Sessions succeeded Loretta Lynch, Christopher Wray succeeded James Comey, Elaine Duke succeeded Jeh Johnson, Kevin K. McAleenan succeeded Gil Kerlikowske, David P. Pekoske succeeded Peter Neffenger, and Thomas D. Homan succeeded Sarah Saldana. Under Rule 25(d) of the Federal Rules of Civil Procedure, each successor "is automatically substituted as a party."

copied information indefinitely, examine and analyze the information, and share that information with other parts of the federal government and potentially with foreign governments as well.

Significantly, the government does not contest that this is what happened to Plaintiff George Anibowei when he crossed the border on his way home from vacation on October 10, 2016. The government asks this Court to dismiss this case, arguing that neither the Fourth Amendment's prohibition on unreasonable searches and seizures nor the First Amendment's protections for expressive records and association pose a bar to these actions because its power to search electronic devices is without limit and effectively beyond judicial review. The government sees no difference between going through someone's most private papers and examining their shoes and contact lens solution, and asserts it is free to take people's property from them at the border and hold onto it for weeks, months, or even years, if that is how long, in its view, it would take to conduct a search.

This Court should hold that Plaintiff has standing to bring the instant action. Additionally, the Court should also hold that Plaintiff stated a claim upon which relief can be granted because the government violated his Fourth and First Amendment rights by seizing, copying, retention and dissemination of the information on his electronic device.

## 2.    BACKGROUND

On December 23, 2016, George Anibowei (Plaintiff) filed the instant action against the Defendants' for violations of his First and Fourth Amendment rights during a border search on October 10, 2016. (doc. 1 at 1-2.)[2] He names the U.S. Attorney General, Director of the

---

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Federal Bureau of Investigation, Director of the Terrorist Screening Center, Director of the National Counterterrorism Center, Secretary of the Department of Homeland Security, Commissioner of the United States Customs and Border Protection Agency, Administrator of the United States Transportation Security Administration, and the Director of the United States Immigration and Customs Enforcement Agency (Defendants) in their official capacities only. (doc. 8 at 1-3.).

On April 10, 2017, Defendants' filed a Motion to Dismiss Plaintiff's First Amended Complaint on grounds that Plaintiff lacked standing, and alternatively, for failure to state a claim upon which relief could be granted. (doc. 13). On May 1, 2017, Plaintiff filed an Opposition to the Motion to Dismiss. (doc. 17).

By *Order of Reference* dated April 11, 2017 (doc. 14), this Honorable Court referred the Defendants' Motion to Dismiss Plaintiff's First Amended Complaint to the Honorable United States Magistrate Judge for recommendations. Based on the relevant filings and applicable law, the Honorable Magistrate Judge has concluded and recommended that the defendants' motion to dismiss should be DENIED in part, and GRANTED in part.

Defendants' have filed Objections to the Magistrate Judge Findings, conclusions and recommendation. By this response, Plaintiff respectfully requests that this Honorable Court accepts and adopts the findings, conclusions and recommendation of the Honorable Magistrate Judge.

### 3. FACTUAL ALLEGATIONS

The complaint makes the following allegations.

Plaintiff is a licensed Texas attorney who frequently flies internationally. (doc. 17 at 8.) He was an approved member of the Global Entry Trusted Traveler Program administered

by the United States Customs and Border Protection Agency (CBP).  (doc. 8 at 5, 21.)  After approximately two and a half years of active membership, his membership was revoked for not meeting the "program eligibility requirements." (*Id*. at 6, 22.) Plaintiff asserts that "even before and subsequent to the revocation" of his membership, he was referred for secondary inspection, detained, and questioned by CBP officers on many occasions. (*Id*. at 7-8.)

On one occasion, he and his teenage son were prevented from boarding and detained for approximately two hours before being allowed to board their flight, which was delayed while they were detained. (*Id*.)

On another occasion, he was detained and questioned for almost five hours by the Canada Border Services at the insistence of CBP, which caused him to miss his flight.  (*Id*.)

On October 10, 2016, Plaintiff arrived at the Toronto International airport to board his flight to the United States. (Id. at 12.) Plaintiff contends that, upon his arrival at the Dallas/Fort Worth International Airport (DFW), CBP agents escorted him to an interrogation room. (Id. at 2; doc. 17 at 9.) There, they "seized and detained" his cell phone without consent or a search warrant for "examination and copying," but they did not tell him why. (doc. 8 at 2, 14.) CBP agents detained and questioned Plaintiff for approximately two hours, during which time they copied the contents of his cell phone for examination. (Id. at 14.) CBP agents then returned Plaintiff's cell phone and released him without indicating "what information had been copied from his cell phone, what agencies or individuals would have access to any copies made, and whether any such copies would ultimately be destroyed or stored." (*Id*.)

Plaintiff asserts on information and belief that agents of Defendants, acting pursuant to established CBP and ICE policies, reviewed and copied the contents of his electronic devices, that this information has been retained by Defendants, and that it has been disclosed to and

4

retained by other government agencies. (*Id*. at 43.)

After filing this lawsuit, on February 27, 2017, Plaintiff returned to the United States from Nigeria and landed at DFW, where he was again referred for secondary inspection. (*Id*. at 15.) During this subsequent inspection, he was detained and questioned by CBP agents while his cell phone, luggage, and carry-on bag were searched. (*Id*.) Plaintiff asserts that a CBP agent went through his text messages and emails on his cell phone without his consent or a search warrant. (*Id*. at 15-16.) CBP agents detained him for approximately three hours during this inspection. (*Id*. at 16.)

Plaintiff seeks a declaratory judgment that the detention of his cell phone for copying and examination and the retention and dissemination of its contents without reasonable suspicion violates the First and Fourth Amendments. (*Id*. at 19.) He also seeks "injunctive relief" in the form of an order requiring Defendants to (1) return all information retrieved from his cell phone or, if the information cannot be returned, to expunge or destroy that information; and (2) disclose whether the information obtained from his cell phone was disclosed to other agencies and, if so, what information was disclosed and in what form. (*Id*. at 2-3, 19-20.) Finally, he seeks attorneys' fees and costs. (*Id*. at 20.)

As an initial matter, this Honorable Court must accept as true the complaint's factual allegations in considering the Defendants' motion to dismiss.

### 4.    ARGUMENT AND AUTHORITIES

Defendants move to dismiss Plaintiff's claims for declaratory and injunctive relief under Rule 12(b)(1) for lack of subject-matter jurisdiction, alleging that he lacks standing to sue. (doc. 13 at 10.)

### I.    Legal Standard

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by the Constitution and statute, they lack the power to adjudicate claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). When a court dismisses for lack of subject matter jurisdiction, that dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*.

The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id*.

Here, because the Rule 12(b)(1) motion to dismiss relies on Plaintiff's amended complaint, it presents a facial attack that does not require resolution of matters outside the pleadings. *See Bridgewater v. Double Diamond–Delaware, Inc.*, 3:09–CV–1758–B, 2010 WL 1875617, at *5 (N.D. Tex. May 10, 2010); *Lester v. Lester*, No. 3:06-CV-1357-BH, 2009 WL 3573530, at *4 (N.D. Tex. Oct. 29, 2009).

## II.     Plaintiff's Legal Standing

### A.     The Court should adopt the Recommendation's standing analysis, and rule that Plaintiff has established standing to obtain the relief he seeks

Defendants' assert that Plaintiff's claims for equitable relief should be dismissed for lack of Article III standing because he has not demonstrated that he has suffered the requisite harm, since his allegations "do not establish a likelihood that [his] cell phone will be similarly searched again in the future." (doc. 13 at 14.)

"Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "Standing is an issue of subject matter jurisdiction, and thus can be contested by a Rule 12(b)(1) motion to dismiss." *Lee v. Verizon Commc'ns Inc.*, 954 F. Supp. 2d 486, 496 (N.D. Tex. 2013) (citing *Hunter v. Branch Banking & Trust Co.*, 2013 WL 607151, at *1 (N.D. Tex. Feb. 19, 2013); *see Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006) (noting "the issue of standing is one of subject matter jurisdiction"). This requirement, like other jurisdictional requirements, is not subject to waiver. *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996).

To meet the Article III constitutional standing requirement, plaintiffs "must *allege personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines*, 521 U.S. at 818 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)); *accord Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A plaintiff seeking equitable relief can establish standing by showing "actual present harm or a

7

significant possibility of future harm." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (quoting *Peoples Rights Org. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998). "Past exposure to illegal conduct" does not in itself establish standing for equitable relief "if unaccompanied by continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); *see Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015); *Bauer*, 341 F.3d at 358 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). "To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." *Bauer*, 341 F.3d at 358. When a plaintiff seeks relief from governmental action, as here, the court "should not intervene unless the need for equitable relief is clear, not remote or speculative." *Id.* (quoting *Henschen v. City of Houston*, 959 F.2d 584, 588 (5th Cir. 1992)).

Neither the Supreme Court nor the Fifth Circuit has specifically addressed the issue of Article III standing to sue for equitable relief in the context of a border search.[3] As rightly noted by the Honorable Magistrate, the seminal case, upon which Defendants relies heavily, appears to be *Abidor v. Napolitano*, 990 F. Supp. 2d 260 (E.D.N.Y. 2013). In that case, CBP agents searched an individual's laptop computer and hard drive upon his return to the United States from Canada. *Id.* at 268. They found pictures depicting terrorist organizations and retained the laptop for further inspection, but returned it along with the external hard drive eleven days later by mail. *Id.* The individual and two associations filed suit seeking a declaratory judgment that the CBP and Immigration and Customs Enforcement (ICE) policies violated the First and Fourth Amendments and that the border search of the individual's laptop violated his rights, and an injunction to prevent the defendants from "enforcing their policies of searching, copying, and

---

[3] No other circuit court appears to have specifically addressed this issue either.

detaining electronic devices at the international border without reasonable suspicion." 990 F.
Supp. 2d at 264.[4] The defendants' motion to dismiss argued that the plaintiffs lacked standing
to challenge the directives, and alternatively, that they failed to state a claim upon which relief
could be granted. *Id*. The court determined that all of the plaintiffs lacked standing because it
was "unlikely" that the individual plaintiff or any member of the association would "have his
electronic device searched at the border. . . ." *Abidor*, 990 F. Supp. 2d at 274–75.

Significantly and as correctly pointed out by the Honorable Magistrate, more recently,
the same court again considered the standing issue in *Janfeshan v. United States*, No. 16-CV-
6915 (ARR) (LB), 2017 WL 3972461, *2 (E.D.N.Y. Aug. 21, 2017), which involved the
questioning of the plaintiff upon his reentry into the United States and a forensic search of his
phone. The plaintiff sued for declaratory and injunctive relief, alleging that the defendants had
violated his rights under the Fourth and Fifth Amendments when they "reviewed and copied
the contents of [his] smartphone, retained this information, and  possibly disclosed it to other
U.S. government or foreign agencies that in turn, may have retained that information as well."
*Id*. at *2, 4. He sought (1) "a declaration that defendants violated the Fourth and Fifth
Amendments . . . ."; (2) "that defendants return to him, or destroy, all the information they
seized from his phone . . . ."; and (3) "that defendants disclose what information from his
phone was shared with other agencies." *Id*. at *4. Relying on *Abidor*, the defendants argued
that the plaintiff lacked standing because he "failed to establish a threatened future injury that
was certainly impending." *Id*. at *6–7. The court found *Abidor* distinguishable, stating:

> I need not conclude that Janfeshan has established that a future search of his
> phone is certainly impending.  Rather, Janfeshan has adequately alleged an

---

[4] CBP and ICE directives authorize agents to inspect a traveler's electronic devices without reasonable suspicion
upon reentry into the United States. *See Abidor*, 990 F. Supp. 2d at 264–67 (describing the challenged
directives).

> injury in fact based on the ongoing effects of the previous search. And here, unlike in *Abidor*, Janfeshan has alleged that, under CBP Directive ¶ 5.4.1.2, CBP "retain[ed] . . . information relating to immigration, customs, and other enforcement matters"- the destruction of which the Directive does not provide for.

*Id*. at *7. It held that the plaintiff had standing because he had "alleged a concrete, particularized injury stemming from the copying and retention of the digital contents of his phone." *Id*. at *7.[5]

Here, as in *Janfeshan*, Plaintiff asserts that officers violated his constitutional rights when they reviewed and copied the contents of his cell phone and retained and disseminated the information. (*See* doc. 8 at 3, 13-16, 18-19.) He likewise claims that his alleged injury - the retention of his cell phone for copying and the dissemination of its contents - is actual and ongoing. (*Id*. at 12-16; doc. 17 at 14-15.) Finally, he is also requesting a declaration that his constitutional rights were violated, an order that Defendants return or destroy any of the data seized from his phone, and information regarding whether the cell phone data has been disclosed to other agencies. (*Id*. at 2-3, 19-20.)

Based on the similarity of the allegations in this case to those in *Janfeshan*, its reasoning is clearly more persuasive than that in *Abidor*. Accordingly, this Honorable should accept and adopt the Honorable Magistrate's findings, conclusions and recommendation in this regard. As correctly found by the Honorable Magistrate, Plaintiff has alleged more than a past injury because he claims that he continues to experience ongoing adverse effects from the allegedly unlawful copying, retention and dissemination of the contents of his phone. *See*

---

[5] The court also noted that its decision was consistent with the Second Circuit's decision in Am. Civ. Liberties Union v. Clapper, 785 F.3d 787, 801 (2d Cir. 2015), which found that plaintiffs challenging a government telephone metadata collection program had "standing to allege injury from the collection, and maintenance in a government database, of records relating to them." 2017 WL 3972461 at *7.

*Janfeshan*, 2017 WL 3972461, at *7.[6] Additionally, because he alleges that CBP and ICE policies permit the retention of "information relating to immigration, customs, and other enforcement matters," and he seeks to have this information either returned or destroyed, his injury is redressable. *See Janfeshan*, 2017 WL 3972461, at *7 (finding that the plaintiff's injury was redressable where the CBP directive authorized the retention of information and the plaintiff requested destruction of his information).[7] Because Plaintiff has demonstrated an ongoing injury from the retention and copying of his cell phone and that injury is redressable by a ruling in his favor, a finding of standing is consistent with Fifth Circuit precedent. *See Machete Prods., L.L.C.*, 809 F.3d at 288 (holding that the plaintiff lacked standing because there was no ongoing injury and its claims of future injury were too speculative); *Bauer*, 341 F.3d at 358 (finding that the plaintiff did not have standing where "there [was] no ongoing injury . . . and any threat of future injury [was] neither imminent or likely").

Because Plaintiff has met the Article III constitutional requirements to establish that he has standing to seek the equitable relief he requests, this Honorable must accept the Honorable Magistrate's recommendation that Defendants' motion to dismiss should be denied "to the

---

[6] *See also O'Shea*, 414 U.S. at 495–96 (recognizing that "continuing present adverse effects" in addition to "past exposure to illegal conduct" can establish standing); *Am. Civ. Liberties Union*, 785 F.3d at 801 (finding that if the challenged action is unlawful, "appellants have suffered a concrete and particularized injury fairly traceable to the challenged [conduct] and redressable by a favorable ruling").

[7] At least one other district court has followed this reasoning in determining that a plaintiff has standing to seek the return or expungement of information gathered from him during a border search. *See Tabaa v. Chertoff*, No. 05-CV- 582S, 2005 WL 3531828, at *7–9 (W.D.N.Y. 2005) (citing *Hedgepeth v. Wash. Metro. Area Transit Auth.*, 386 F.3d 1148, 1152 (D.C. Cir. 2004)) ("the government's continued possession of information that the Plaintiffs allege was obtained from them through unlawful means constitutes a sufficient harm for purposes of establishing standing to pursue expungement of the information."). Although not in the context of a border search, other courts have similarly determined that plaintiffs have standing to challenge the government's maintenance of information relating to them in a government database. *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 209–10 (4th Cir. 2017) (finding that the organization had standing to challenge the government's action of intercepting and copying its communications); *Shuchardt v. President of the United States*, 839 F.3d 336, 352–53 (3d Cir. 2016) (determining that the plaintiff had standing to challenge the government's storage of his confidential communications in a government database).

extent they seek dismissal pursuant to [Rule] 12(b)(1)." See Reitz v. City of Abilene, No. 1:16-CV-0181-BL, 2017 WL 3046881, at *9 (N.D. Tex. May 25, 2017).

**B.      The Honorable Magistrate's Reliance on *Janfeshan* is very apposite in this case and must be adopted**

As indicated above and as rightly noted by the Honorable Magistrate, neither the Supreme Court nor the Fifth Circuit has specifically addressed the issue of Article III standing to sue for equitable relief in the context of a border search.  In seeking to dismiss the instant case, the Defendants' placed heavy reliance on the seminal case of *Abidor,* 990 F. Supp. 2d 260. However, Defendant's reliance on *Abidor* is clearly misplaced. This is more so especially considering that more recently, the same court in the *Abidor* case again considered the standing issue in *Janfeshan*, 2017 WL 3972461, at *2, which as indicated above, involved the questioning of the plaintiff upon his reentry into the United States and a forensic search of his phone. As outlined above, the plaintiff sued for declaratory and injunctive relief, alleging that the defendants had violated his rights under the Fourth and Fifth Amendments when they "reviewed and copied the contents of [his] smartphone, retained this information, and [] possibly disclosed it to other U.S. government or foreign agencies that in turn, may have retained that information as well." *Id.* at *2, 4.  He sought (1) "a declaration that defendants violated the Fourth and Fifth Amendments . . . ."; (2) "that defendants return to him, or destroy, all the information they seized from his phone . . . ."; and (3) "that defendants disclose what information from his phone was shared with other agencies." *Id*. at *4.  Relying on *Abidor*, the defendants argued that the plaintiff lacked standing because he "failed to establish a threatened future injury that was certainly impending." *Id*. at *6–7. As noted above, the Court found *Abidor* distinguishable. Instead, it held that the plaintiff had standing because he had "alleged a concrete, particularized injury stemming from the copying and retention of the digital

12

contents of his phone." *Id*. at *7.

As rightly noted by the Honorable Magistrate Judge, here, as in *Janfeshan*, Plaintiff asserts that officers violated his constitutional rights when they reviewed and copied the contents of his cell phone and retained and disseminated the information. (*See* doc. 8 at 3, 13-16, 18-19.) He also claims that his alleged injury - the retention of his cell phone for copying and the dissemination of its contents - is actual and ongoing. (*Id.* at 12-16; doc. 17 at 14-15.) Finally, he is also requesting a declaration that his constitutional rights were violated, an order that Defendants return or destroy any of the data seized from his phone, and information regarding whether the cell phone data has been disclosed to other agencies. (*Id*. at 2-3, 19-20.)

Clearly and as correctly found by the Honorable Magistrate, based on the similarity of the allegations in this case to those in *Janfeshan,* its reasoning is more persuasive than that in *Abidor*, and this Honorable should adopt it. As indicated above and as aptly noted by the Honorable Magistrate, Plaintiff has asserted more than a past injury because he claims that he continues to experience ongoing adverse effects from the allegedly unlawful copying, retention and dissemination of the contents of his phone. *See Janfeshan*, 2017 WL 3972461, at *7. Further, because he alleges that CBP and ICE policies permit the retention of "information relating to immigration, customs, and other enforcement matters," and he seeks to have this information either returned or destroyed, his injury is redressable. *See Janfeshan*, 2017 WL 3972461, at *7 (finding that the plaintiff's injury was redressable where the CBP directive authorized the retention of information and the plaintiff requested destruction of his information). Because Plaintiff has demonstrated an ongoing injury from the retention and copying of his cell phone and that injury is redressable by a ruling in his favor, a finding of standing is consistent with Fifth Circuit precedent. *See Machete Prods., L.L.C.*, 809 F.3d at

13

288 (holding that the plaintiff lacked standing because there was no ongoing injury and its claims of future injury were too speculative); *Bauer*, 341 F.3d at 358 (finding that the plaintiff did not have standing where "there [was] no ongoing injury . . . and any threat of future injury [was] neither imminent or likely").

In light of the above and as recommended by the Honorable Magistrate Judge, because Plaintiff has met the Article III constitutional requirements to establish that he has standing to seek the equitable relief he requests, Defendants' motion to dismiss should be denied "to the extent they seek dismissal pursuant to [Rule] 12(b)(1)." See Reitz v. City of Abilene, No. 1:16-CV-0181-BL, 2017 WL 3046881, at *9 (N.D. Tex. May 25, 2017).

### III.    PLAINTIFF STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Defendants also move to dismiss Plaintiff's constitutional claims under Rule 12(b)(6) for failure to state a claim. (doc. 13 at 2, 18.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. Baker, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept

as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The

alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at

555. In short, a complaint fails to state a claim upon which relief may be granted when it fails

to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that
> allows the court to draw the reasonable inference that the defendant is liable
> for the misconduct alleged. The plausibility standard is not akin to a
> "probability requirement," but it asks for more than a sheer possibility that a
> defendant has acted unlawfully. Where a complaint pleads facts that are
> "merely consistent with" a defendant's liability, it "stops short of the line
> between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims

across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*,

550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

Under the above standard, this Honorable Court must accept as true all of the

allegations contained in Plaintiff's complaint and view them in the light most favorable to the

Plaintiff.

**A.   The Court should accept and adopt the Recommendation's Prudential standing
analysis because Plaintiff has clearly asserted his need for relief and a decision in
his favor would grant him the relief he seeks.**

Defendants' contend that even if Article III constitutional standing requirements are

met, "dismissal would still be warranted for closely related prudential reasons." (doc. 13 at 16,

18.) As the Honorable Magistrate Judge opined, this argument implicates prudential standing.

Defendants contend that this court should decline to exercise jurisdiction over Plaintiff's claims

because he "cannot show a clear need for the relief he seeks," and declining jurisdiction would

afford Congress the first opportunity to address government policies. (doc. 13 at 17.)

"Beyond the constitutional requirements, the federal judiciary has also adhered to a set

of prudential principles that bear on the question of standing." *Bauer*, 341 F.3d at 357 (citing

*McClure v. Ashcroft*, 335 F.3d 404, 410 (5th Cir. 2003)). Prudential standing limitations help courts identify proper questions of judicial adjudication, and further define the judiciary's role in the separation of powers. *Id.* Prudential standing relates to whether: (1) a plaintiff's grievance falls within the zone of interests protected by the statute or constitutional provision invoked, (2) the complaint raises a generalized grievance more properly addressed by the legislature, and (3) the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties. *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009); *see also Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004).

Here, Plaintiff has clearly asserted his need for relief and, as stated previously and correctly noted by the Honorable Magistrate Judge, a decision in his favor would grant him the relief he seeks. "If the seizure of [his] phone and the search of its contents were to be declared unlawful, CBP could be compelled to destroy any remaining copies of [his] data." *Janfeshan*, 2017 WL 3972461, at *7. Moreover, Plaintiff's claims are not generalized grievances more properly addressed by the legislature. *See St. Paul Fire & Marine Ins. Co.*, 579 F.3d at 539. His claims are specific to the search of his cell phone that occurred on October 10, 2016, and the rights he is seeking to protect - his right against unlawful search and seizure and his expressive and associational interests - are protected by the First and Fourth Amendments of the Constitution. (doc. 8 at 12, 18-19; doc. 17 at 30.) *See id*. at 543–44; *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 211 (5th Cir. 2009) (recognizing the First Amendment rights to freedom of expression and association as well as the "Fourth Amendment's prohibition on unreasonable searches and seizures"). Plaintiff has alleged prudential standing, and as recommended by the Honorable Magistrate, Defendants' motion to dismiss his claims for equitable relief on this basis

16

should be denied.

### IV.     DISMISSAL AS TO NON-DHS DEFENDANTS' IS CLEARLY PREMATURE

As Plaintiff 's First Amended Complaint clearly shows, the Plaintiff has pleaded facts pertaining to the "non-DHS" Defendants including but not limited to the fact that the Plaintiff's First Amended Complaint alleges and Defendants' have not disputed that Plaintiff has every reason to believe that the information obtained from his cell phone has been disclosed or disseminated to other agencies, organizations, individuals, or foreign governments, including but not limited to the non-DHS Defendants, namely, the Attorney General and the heads of the TSA, FBI, FBI Terrorist Screening Center, and National Counterterrorism Center. (doc. 8 at 41-43)

The Defendants have not denied this claim or disputed Plaintiff's allegations. Instead, the Defendants' have only claimed that the claims against the other non-DHS Defendants be dismissed because they are not involved in the wrongdoing against the Plaintiff. Considering that the DHS has not denied that the information obtained from Plaintiff's cell phone has been disclosed or disseminated to other agencies, organizations, individuals, or foreign governments, including but not limited to the other non-DHS Defendants, dismissal of Plaintiff's claims against the non-DHS Defendants is clearly premature at this juncture and on the record currently before the Court. Basically, dismissal of Plaintiff's claims against the non-DHS Defendants would be premature at this juncture considering that the parties have yet to engage in discovery and the factual record is clearly incomplete. Accordingly, the Defendants' Motion to dismiss Plaintiff's claims against the non-DHS Defendants namely, the Attorney General and the heads of the TSA, FBI, FBI Terrorist Screening Center, and National Counterterrorism Center should be denied.

17

## 5.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully prays that this Honorable Court accepts and adopts the findings, conclusions and recommendation of the Honorable Magistrate Judge.

Respectfully submitted by:


By: */S/George Anibowei*
George Anibowei
Texas Bar No. 24036142
The Law Office of George Anibowei, P.C.
6060 N. Central Expressway, Ste. 560
Dallas, Texas 75206
Telephone No: (214) 800-3463
Facsimile No: (214) 800-3464
Email: ganibowe@yahoo.com
**ATTORNEY FOR PLAINTIFF,
GEORGE ANIBOWEI**


Dated this 10th day of January, 2018

**CERTIFICATE OF SERVICE (CM/ECF)**

The undersigned hereby certifies that on January 10, 2018, I electronically filed the

foregoing document with the clerk of the court for the U.S. District Court, Northern District of

Texas, using the electronic case filing system of the court. I also certify that a copy of this

document was served on all parties via the Court's electronic filing system.

Respectfully submitted,

By: ***/S/George Anibowei***
George Anibowei
Texas Bar No. 24036142
The Law Office of George Anibowei, P.C.
6060 N. Central Expressway, Ste. 560
Dallas, Texas 75206
Telephone No: (214) 800-3463
Facsimile No: (214) 800-3464
Email: ganibowe@yahoo.com
**ATTORNEY FOR PLAINTIFF,
GEORGE ANIBOWEI**