IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION
_____

GEORGE ANIBOWEI,

     Plaintiff,

v.

JEFFERSON B. SESSIONS*, *et al.*,

     Defendants.

Civil Action No. 3:16-CV-3495-D

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS
TO THE MAGISTRATE JUDGE'S SUPPLEMENTAL FINDINGS,
CONCLUSIONS, AND RECOMMENDATION**

ERIN NEALY COX
United States Attorney

Sarah E. Delaney
Assistant United States Attorney
Arizona Bar No. 031722
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8730
Facsimile:   214-659-8807
sarah.delaney@usdoj.gov

Attorneys for Defendants

* The defendants are federal officials sued in their official capacities.  Some no longer hold government office, and hence their successors should be "automatically substituted" as defendants pursuant to Fed. R. Civ. P. 25(d).  These successors are: Matthew Whitaker (Acting Attorney General, for Jefferson B. Sessions), Christopher A. Wray (Director of the Federal Bureau of Investigation, for James B. Comey), Charles H. Kable, IV (Director of the Terrorist Screening Center, for Christopher M. Piehota), Russell "Russ" Travers (Acting Director of the National Counterterrorism Center, for Nicholas Rasmussen), Kirstjen M. Nielsen (Secretary of Homeland Security, for John F. Kelly), David P. Pekoske (Administrator of the U.S. Transportation Security Administration, for Huban Gowadia), and Ronald D. Vitiello (Deputy Director and Senior Official Performing the Duties of Director of U.S. Immigration and Customs Enforcement, for Thomas D. Homan).

# Table of Contents

I.    Background...............................................................................................2

    A.    The Government has broad authority to conduct a border search. ..............2

    B.    One of the limited exceptions to sovereign immunity is the direct
         officer exception. ........................................................................................3

    C.    Anibowei's allegations and requests for declaratory and injunctive
         relief............................................................................................................5

    D.    The Defendants moved to dismiss the first amended complaint for
         lack of standing and failure to state a claim. .................................................7

II.   Legal Standard ......................................................................................11

III.  Argument and Authorities ....................................................................12

    A.    The Supplemental Recommendation correctly determined Anibowei
         has not demonstrated the direct officer exception to sovereign
         immunity is applicable in this case. ...........................................................12

    B.    As Anibowei's requested injunctive relief would require the United
         States, rather than the Defendants, to take affirmative action, the
         Supplemental Recommendation correctly concluded that the Court
         lacks subject-matter jurisdiction over these claims....................................14

    C.    Even if Anibowei has demonstrated there is an applicable waiver of
         sovereign immunity as to his claims, he has still failed to state any
         claim for relief under either the Fourth or First Amendments. ...................16

         1.    Anibowei fails to state any claim for relief under the Fourth
              Amendment because reasonable suspicion is not required for
              the Government to inspect Anibowei's cell phone at the
              border. (First Cause of Action) ........................................................16

         2.    Anibowei fails to state any claim for relief under the First
              Amendment because there is no First Amendment exception
              to the border-search doctrine.  (Second Cause of Action) ...............21

         3.    The subject matter of these claims is more appropriate for
              either Congressional or Executive Branch action. ...........................22

D.      Anibowei has also failed to plead any non-speculative facts showing any involvement by five Defendants or their agencies, and these government officials should be dismissed from the case. .......................... 23

IV.     Conclusion ........................................................................................................... 25

## Table of Authorities

**CASES**

*Abidor v. Napolitano*,
   990 F. Supp. 2d 260 (E.D.N.Y. 2013) .................................................................. 22, 23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................. 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................... 12, 25

*Bell v. Hood*,
   327 U.S. 678 (1946) ................................................................................................... 4

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
   403 U.S. 388 (1971) ........................................................................................... 1, 8, 9

*Campbell v. City of San Antonio*,
   43 F.3d 973 (5th Cir. 1995) ............................................................................... 11, 12

*Danos v. Jones*,
   652 F.3d 577 (5th Cir. 2011) ..................................................................... 3, 4, 14, 15

*Dugan v. Rank*,
   372 U.S. 609 (1963) ................................................................................................. 15

*Escamilla v. City of Dallas*,
   No. 3:03-CV-848-K, 2004 WL 1932867 (N.D. Tex. Aug. 30, 2004) .......................... 25

*FDIC v. Meyer*,
   510 U.S. 471 (1994) ................................................................................................... 3

*Geyen v. Marsh*,
   775 F.2d 1303 (5th Cir. 1985) ................................................................................... 4

*Gomez-Perez v. Potter*,
   553 U.S. 474 (2008) ................................................................................................... 3

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*,
   143 F.3d 1006 (5th Cir. 1998) ................................................................................. 11

*Larson v. Domestic & Foreign Comm. Corp.*,
  337 U.S. 682 (1949) ................................................................................ passim

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ........................................................................................ 5

*New York v. P.J. Video, Inc.*,
  475 U.S. 868 (1986) ...................................................................................... 21

*Nowak v. Ironworkers Local 6 Pension Fund*,
  81 F.3d 1182 (2d Cir.1996) .......................................................................... 11

*Porter v. Califano*,
  592 F.2d 770 (5th Cir. 1979) .......................................................................... 4

*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001) ........................................................................ 11

*Robertson v. Johnson*,
  No. H-05-2190, 2006 WL 1118151 (S.D. Tex. Apr. 25, 2006) .................... 15

*St. Tammany Parish ex rel. Davis v. FEMA*,
  556 F.3d 307 (5th Cir. 2009) .......................................................................... 3

*Unimex, Inc. v. U.S. Dept. of Hous. & Urban Dev.*,
  594 F.2d 1060 (5th Cir. 1979) ...................................................................... 14

*United States v. Arnold*,
  533 F.3d 1003 (9th Cir. 2008) ...................................................................... 22

*United States v. Cotterman*,
  709 F.3d 952 (9th Cir. 2013) ........................................................................ 20

*United States v. Flores-Montano*,
  541 U.S. 149 (2004) ....................................................................... 2, 17, 18, 20

*United States v. Ickes*,
  393 F.3d 501 (4th Cir. 2005) .................................................................. 21, 22

*United States v. Kelly*,
  302 F.3d 291 (5th Cir. 2002) ........................................................................ 20

*United States v. McAuley*,
    420 F. App'x 400 (5th Cir. 2011) ..................................................... 18, 19, 20

*United States v. Mitchell*,
    463 U.S. 206 (1983) ................................................................................... 3

*United States v. Molina-Isidoro*,
    884 F.3d 287 (5th Cir. 2018) ....................................................... 3, 19, 20

*United States v. Montoya de Hernandez*,
    473 U.S. 531 (1985) ....................................................... 3, 16, 17, 18

*United States v. Pickett*,
    598 F.3d 231 (5th Cir. 2010) ................................................................. 19, 20

*United States v. Ramsey*,
    431 U.S. 606 (1977) ............................................................................ 2, 17

*United States v. Saboonchi*,
    990 F. Supp. 2d 536 (D. Md. 2014) ....................................................... 20

*United States v. Sandler*,
    644 F.2d 1163 (5th Cir. 1981) .............................................................. 18, 20

*United States v. Sherwood*,
    312 U.S. 584 (1941) ................................................................................ 3

*United States v. Thompson*,
    53 F. Supp. 3d 919 (W.D. La. 2014) ................................................... 19, 20

*Veldhoen v. U.S. Coast Guard*,
    35 F.3d 222 (5th Cir. 1994) ................................................................. 11

## STATUTES AND REGULATIONS

5 U.S.C. § 702 ......................................................................................... 5

6 U.S.C. § 202 ....................................................................................... 17

6 U.S.C. § 211 ....................................................................................... 17

8 U.S.C. § 1225 .................................................................................... 17

8 U.S.C. § 1357 ................................................................................................. 17

19 C.F.R. § 162.6 ............................................................................................... 17

19 U.S.C. § 482 ................................................................................................. 17

19 U.S.C. § 507 ................................................................................................. 17

19 U.S.C. § 1461 ............................................................................................... 17

19 U.S.C. § 1496 ............................................................................................... 17

19 U.S.C. § 1581 ............................................................................................... 17

19 U.S.C. § 1582 ............................................................................................... 17

19 U.S.C. § 1589a ............................................................................................. 17

19 U.S.C. § 1595a ............................................................................................. 17

## RULES

Fed. R. Civ. P. 8 ................................................................................................ 12

Fed. R. Civ. P. 12(b)(1) .................................................................................... 11

Fed. R. Civ. P. 12(b)(6) ............................................................................. passim

Fed. R. Civ. P. 72(b)(3) .................................................................................... 11

As recommended by the Magistrate Judge in her Supplemental Findings, Conclusions, and Recommendation ("Supplemental Recommendation") (Doc. 29), the Court should dismiss Plaintiff George Anibowei's claims for injunctive relief, as he fails to allege facts to demonstrate his claims fall under the direct officer exception to sovereign immunity.

Anibowei objects to the Supplemental Recommendation, arguing that case law generally authorizes direct officer suits for injunctive relief, that the officers who took his phone were acting unconstitutionally, and that courts frequently issue injunctions against the Government to return seized items or reveal what has happened to them.  (Doc. 32.) Yet he fails to address the Magistrate Judge's crucial findings—first, that he has not alleged any facts involving unconstitutional actions by the named Defendants and second, that his requested injunctive relief is barred because it would force the United States, rather than the named Defendants, to take affirmative action without the necessary waiver of sovereign immunity.  (*See* Docs. 29, 32.)

Further, this dismissal of Anibowei's claims for injunctive relief necessitates the dismissal of <u>all</u> claims against all the Defendants.[1]  While the Supplemental Recommendation principally analyzed Anibowei's claims for injunctive relief, it also

---

[1] In her original Findings, Conclusions, and Recommendation ("Recommendation") (Doc. 19), the Magistrate Judge determined Anibowei's other potential bases for his claims for injunctive relief were insufficient, as Anibowei fails to state a viable *Bivens* claims against any of the Defendants and fails to allege any agency action to provide subject-matter jurisdiction over his claims under the APA.  (Doc. 19 at 12-15.)  Although Anibowei addressed the Recommendation in his response to Defendants' Objections to the Recommendation, he failed to either object to the Magistrate Judge's Recommendation regarding *Bivens* and the APA or address the Defendants' arguments that his amended complaint fails to state any Fourth or First Amendment claim.  (*See* Doc. 21.)

indicated it was unnecessary to address Anibowei's claim for declaratory relief because the lack of an exception to sovereign immunity meant it was "unnecessary to reach the issue of whether the conduct of which [Anibowei] complains violated the Constitution." (Doc. 29 at 9 n. 5.)  Therefore, Anibowei's claim for declaratory relief should also be dismissed.  Even if Anibowei had pleaded facts to demonstrate there was an applicable exception to the sovereign immunity bar, he has failed to allege any Fourth or First Amendment violation, because reasonable suspicion is not required to inspect personal items at the border and there is no First Amendment exception to the border-search doctrine.  Therefore, he has failed to state a claim for which relief can be granted.

Therefore, this Court should adopt the remainder of the Recommendation[2] and adopt the Supplemental Recommendation, dismissing all claims against the Defendants.

## I.      Background[3]

### A.      The Government has broad authority to conduct a border search.

The Supreme Court has repeatedly held that "searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border."  *United States v. Flores-Montano*, 541 U.S. 149, 152-53 (2004) (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)).

This results from the Fourth Amendment's balance of reasonableness at the

---

[2] This Court previously adopted a portion of the Recommendation as to the standing arguments.  (*See* Doc. 26 at 1-2.)

[3] Facts from Anibowei's pleadings are assumed true for purposes of the motion to dismiss only.

border—the Government's interest is at its "zenith" at the border, while an individual's privacy expectations are lessened given the long tradition of border inspections. *United States v. Molina-Isidoro*, 884 F.3d 287, 291 (5th Cir. 2018). In fact, "[r]outine searches of the persons and effects of entrants [into the United States] are not subject to any requirement of reasonable suspicion, probable cause, or warrant." *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985).

## B.   One of the limited exceptions to sovereign immunity is the direct officer exception.

The United States may not be sued without its consent, and the existence of such consent is a prerequisite for the applicable court to have jurisdiction over the suit. *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *see also United States v. Sherwood*, 312 U.S. 584, 586 (1941) ("[T]he terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit."). Thus, absent a waiver, "sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Any such waiver "must be unequivocally expressed in statutory text" and is strictly construed in favor of the United States. *Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008). Thus, the plaintiff bears the burden to demonstrate Congress has unequivocally waived sovereign immunity. *St. Tammany Parish ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009).

Generally, as claims against federal officers in their official capacity are actually claims against the United States, sovereign immunity precludes claims against these officers as well. *Danos v. Jones*, 652 F.3d 577, 581 (5th Cir. 2011). There are, however,

limited exceptions from sovereign immunity for suits directly under the Constitution to enjoin federal officials from violating an individual's constitutional rights. *Porter v. Califano*, 592 F.2d 770, 781 (5th Cir. 1979); *see also Bell v. Hood*, 327 U.S. 678, 684 (1946) (stating that the Supreme Court's established practice is "to sustain the jurisdiction of federal courts to issue injunctions" to protect constitutional rights). An individual can bring suit for specific relief against government officers in their official capacity in two specific circumstances: (1) when an officer acts outside his delegated statutory authority, or (2) when the statute conferring power upon the officer is itself unconstitutional. *Larson v. Domestic & Foreign Comm. Corp.*, 337 U.S. 682, 689-90 (1949).

Relief can be granted in these two specific situations because "where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions," and when the statute itself is unconstitutional, a grant of power to act in accordance with that law "is lacking in substance because of its constitutional invalidity." *Id.* at 689-90. However, suits for injunctive relief brought *outside* of these two circumstances must fail, because "the sovereign can act only through agents and, when the agent's actions are restrained, the sovereign itself may, through him, be restrained." *Id.* at 688.[4] As sovereign immunity has not been waived for any of

---

[4] As this Court noted in its March 27, 2018 Order re-referring the matter to the Magistrate Judge (Doc. 26 at 5 n. 3), after the 1976 amendments to the Administrative Procedure Act (APA) waiving sovereign immunity for actions seeking nonmonetary relief for claims that an agency or agency employee acted or failed to act in an official capacity, there is some debate whether the *Larson* exceptions to sovereign immunity still apply for suits for injunctive relief against federal agency officials. *See, e.g., Danos*, 652 F.3d at 582; *Geyen v. Marsh*, 775 F.2d 1303, 1307 (5th Cir. 1985). However, even if the APA's waiver of sovereign immunity were applicable here, the Magistrate Judge has already determined that the Court has no jurisdiction over an APA claim because Anibowei failed to allege any agency action, one of the two required findings to demonstrate the United States has waived its sovereign immunity under the

these other situations, the court cannot grant the individual's requested equitable relief because the suit is essentially against the Government itself, rather than a specific federal official.  *Id.*

### C.  Anibowei's allegations and requests for declaratory and injunctive relief.

Anibowei is a U.S. citizen and licensed attorney who lives in the Dallas area. (Doc. 8, ¶ 6.)  On October 10, 2016, Anibowei arrived at the Dallas/Fort Worth International Airport after returning from a trip to Canada.  (Doc. 8, ¶ 31.)  Upon exiting the plane, Anibowei was stopped by Department of Homeland Security (DHS) officers, and questioned about his background, personal life, and recent Canadian trip.  (Doc. 8, ¶¶ 34-36.)  During this questioning, the DHS officers briefly detained Anibowei's cell phone, informing him that it would be examined and copied.  (Doc. 8, ¶¶ 35-37.)  The officers also provided Anibowei with a copy of a U.S. Customs and Border Protection (CBP) document, entitled "Inspection of Electronic Devices," describing the Government's authority to conduct border searches and providing additional information regarding the inspection to be performed on the electronic devices and how to later retrieve the item(s).  (Doc. 8, ¶ 35; Doc. 8-5.)  After approximately two hours, Anibowei was allowed to leave and his cell phone was returned.  (Doc. 8, ¶¶ 36-37.)  Anibowei was similarly stopped at the airport on February 12, 2017, when he returned from travel to

---

APA.  (Doc. 19 at 14-15); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882-83 (1990) (holding that to claim a right to judicial review under the APA, the plaintiff "must identify some 'agency action' that affects him in the specified fashion" and "must show that he has 'suffer[ed] legal wrong because of the challenged agency action, or is 'adversely affected or aggrieved' by that action 'within the meaning of a relevant statute'") (quoting 5 U.S.C. § 702).

Nigeria.  (Doc. 8, ¶ 38.)  During this inspection, an officer reviewed messages on his cell phone but apparently did not copy any information, and the phone was returned when Anibowei left several hours later.  (Doc. 8, ¶¶ 38-39.)  Anibowei argues that the searches of his phone were performed in accordance with CBP and U.S. Immigration and Customs Enforcement (ICE) policies authorizing the search, review, and detention of electronic devices at the U.S. border, and dissemination of information collected from these electronic devices to other federal, state, local, and foreign law enforcement agencies when relevant to law enforcement matters.  (Doc. 8, ¶¶ 40-42.)  Anibowei also states that in addition to these two incidents, he has been selected for "secondary inspection" on several other occasions during the course of international travel.  (Doc. 8, ¶ 25.)

Anibowei states his phone contained "private and sensitive materials," including confidential and privileged information regarding his legal work, which he "did not intend to expose to view by others without his consent."  (Doc. 8, ¶¶ 38, 44-45.)  He alleges upon information and belief that electronic information from his cell phone may have been disclosed to other government agencies after the October 10, 2016 search.  (Doc. 8, ¶ 43.)  Anibowei further argues that the government did not have reasonable suspicion during either the initial inspections of his phone or the alleged dissemination of the information from the phone to believe his device "contained any material constituting a violation [of] any law respecting customs, immigration, or terrorism."  (Doc. 8, ¶ 46.)

Based on the foregoing, the first amended complaint asserts that the government's actions in inspecting Anibowei's cell phone violated the Fourth Amendment (first cause of action) and the First Amendment (second cause of action).  (Doc. 8, ¶¶ 47-48.)  The

amended complaint asks for both injunctive and declaratory relief, requesting (1) a declaration that the detention and seizure of Anibowei's cell phone and subsequent review, copying, retention, and dissemination of its contents without reasonable suspicion violates the Fourth and First Amendments to the U.S. Constitution and (2) injunctions for the return or expungement/destruction of any information obtained from Anibowei's cell phone and disclosure to Anibowei as to what information was disclosed, if any, to other U.S. government agencies or foreign governments.  (Doc. 8 at prayer.)

### D. The Defendants moved to dismiss the first amended complaint for lack of standing and failure to state a claim.

Anibowei's first amended complaint names eight government officials as defendants, each in his or her official capacity as the head of a federal department or agency: the DHS Secretary; the heads of three DHS components (CBP, ICE, and the Transportation Security Administration (TSA)); the Attorney General; the heads of the Federal Bureau of Investigation (FBI) and the Terrorist Screening Center (an FBI component); and the head of the National Counterterrorism Center (a component of the Office of the Director of National Intelligence).  (*See* Doc. 8, ¶¶ 7-14.)

All Defendants moved to dismiss the first amended complaint on two grounds:

> First, for lack of standing, because the fact that Anibowei was exposed to allegedly illegal conduct in the past is not sufficient to entitle him to seek declaratory or injunctive relief in federal court absent some showing that the allegedly illegal act will be repeated against him in the future; and

> Second, for failure to state a claim upon which relief can be granted, because the Fourth Amendment does not require any showing of reasonable suspicion before an electronic device can be searched at the border, nor is any First Amendment violation

otherwise shown by the facts alleged by Anibowei.

(Doc. 13 at 7-18.)  Additionally, five of the Defendants—the Attorney General, the head of the TSA, the head of the FBI, the head of the FBI Terrorist Screening Center, and the head of the National Counterterrorism Center—requested dismissal on the alternative ground that no claim had been stated against them, as Anibowei had not pleaded any facts showing involvement by these defendants, their agencies, or even officers of these agencies in the matters at issue in the first amended complaint.  (Doc. 13 at 19.)

On referral from the District Judge (*see* Doc. 14 (Order of Reference)), the Magistrate Judge issued the Recommendation on December 15, 2017, which addressed the first and alternate grounds for dismissal raised in the Defendants' motion to dismiss. (Doc. 19.)  The Recommendation first determined that the Defendants' motion should not be granted as to standing, as Anibowei had demonstrated an ongoing injury from the retention of his phone's data and his injury could be resolved through a decision in Anibowei's favor.  (Doc. 19 at 7-9, 10-12.)

As to the alternative grounds for dismissal raised by five of the Defendants (failure to state a claim where no facts were pleaded as to their or their agencies' involvement), the Recommendation actually applied this argument to all eight Defendants.  (Doc. 19 at 12-13.)  The Recommendation concluded that Anibowei had failed to state any claims for *Bivens* relief against the named Defendants, and therefore recommended partially granting the Defendants' Rule 12(b)(6) motion so as to dismiss any claims against the Defendants in their individual capacities.  (Doc. 19 at 13, 15.)  The Recommendation also *sua sponte* analyzed the first amended complaint's Administrative Procedure Act

("APA") claims, determining the claims should be dismissed as well because Anibowei did not allege that he was challenging either an "agency action made reviewable by statute" or a "final agency action for which there is no adequate remedy in a court." (Doc. 19 at 14-15.)  Thus, the Recommendation concluded there was no subject-matter jurisdiction over the APA claims.  (Doc. 19 at 15.)

As for the second grounds for dismissal raised in the Defendants' Motion to Dismiss (failure to state a Fourth or First Amendment claim), the Recommendation determined that "the Court need not reach Defendants' arguments that Plaintiff has failed to state a claim that the border search of his cell phone violated his First and Fourth Amendment rights" because he had not stated a viable *Bivens* claim. (Doc. 19 at 13 n. 9.) The Recommendation therefore did not address Defendants' Rule 12(b)(6) argument— that the Fourth Amendment does not require reasonable suspicion for the search alleged by Anibowei and that no First Amendment violation was shown under the facts alleged. As Defendants disagreed with the Recommendation's decision on the standing analysis and desired a recommendation on their argument that no Fourth or First Amendment claims were stated, the Defendants filed an objection to the Recommendation.  (*See generally* Doc. 20.)

After reviewing the briefing by both parties[5], this Court adopted the Recommendation as to the standing analysis, but also re-referred the matter to the

---

[5] *See, e.g.,* Doc. 21, Plaintiff's Response to Defendants' Objections to the Magistrate Judge's Findings, Conclusions, and Recommendations; Doc. 22, Reply in Support of Defendants' Objections to the Magistrate Judge's Findings, Conclusions, and Recommendations.

Magistrate Judge to evaluate the outstanding question of "whether plaintiff has alleged claims against defendants under the direct officer exception to sovereign immunity, and, if so, whether he has stated a claim for relief against the officers in their official capacities for the alleged constitutional violations."  (Doc. 26 at 4-5.)

On October 18, 2018, the Magistrate Judge issued her Supplemental Recommendation (Doc. 29), concluding that dismissal of Anibowei's claims for injunctive relief was appropriate for lack of subject-matter jurisdiction.  (Doc. 29 at 9.) The Supplemental Recommendation explained that the first amended complaint did not allege any facts involving the named Defendants to demonstrate that either prong of the direct officer exception to sovereign immunity, i.e., by showing that the defendants "committed any acts under an unconstitutional statute or order, or that they engaged in any conduct that was beyond their statutory authority."  (Doc. 29 at 7.)

The Supplemental Recommendation further determined that even if such facts were sufficiently alleged, the request for injunctive relief would require affirmative action by the United States because the Government—not the named Defendants—would be required to comply with the injunctions.  (Doc. 29 at 8.)  Thus, while the suit was directed at specific federal officials, the relief requested meant it was effectively a suit against the Government, and the Court had no jurisdiction as there was no Government consent to such a suit.  (Doc. 29 at 8-9.)  As with the original Recommendation, the Supplemental Recommendation did not address the Defendants' Rule 12(b)(6) motion to dismiss for failure to state a Fourth or First Amendment claim, instead stating that "[b]ecause the exception to sovereign immunity does not apply to permit Plaintiff to seek

injunctive relief against Defendants in their official capacities, it is unnecessary to reach the issue of whether the conduct of which he complains violated the Constitution." (Doc. 29 at 9 n. 5.)

As described in greater detail below, Anibowei then filed an objection to the Supplemental Recommendation on November 5, 2018. (Doc. 32.)

## II.      Legal Standard

This Court reviews de novo any objections to the Magistrate Judge's recommendation on a dispositive motion. Fed. R. Civ. P. 72(b)(3).

"Federal courts are courts of limited jurisdiction. Absent jurisdiction conferred by statute, district courts lack power to consider claims." *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994). Dismissal for lack of subject matter jurisdiction is proper when the court does not have either statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of the plaintiff's complaint by accepting "all well-pleaded facts as true and viewing those facts in the light most favorable to [the plaintiff]." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). To survive a Rule 12(b)(6) motion, the plaintiff must

plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  However, it is insufficient for the complaint's factual allegations to "merely create[] a suspicion that the pleader might have a right of action." *Campbell*, 43 F.3d at 975; *see also Twombly*, 550 U.S. at 555 (holding that the Rule 8 pleading standard demands more than a formulaic the-defendant-unlawfully-harmed-me accusation).  Instead, to survive a motion to dismiss, a complaint requires more than a "sheer possibility that a defendant has acted unlawfully," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

### III.    Argument and Authorities

For the reasons discussed below, the Court should adopt both the remainder of the Recommendation and the entirety of the Supplemental Recommendation, and dismiss all claims against the Defendants for lack of subject matter jurisdiction and for failure to state a claim under Rule 12(b)(6).

**A.    The Supplemental Recommendation correctly determined Anibowei has not demonstrated the direct officer exception to sovereign immunity is applicable in this case.**

The Supplemental Recommendation concluded that sovereign immunity bars Anibowei's suit against all the defendants, as he has not demonstrated that the United States has consented to suit in this matter.  Anibowei objects to this reasoning, claiming that he has pleaded facts to demonstrate the direct officer exception to sovereign immunity applies, apparently under the second *Larson* circumstance, as he alleged in the first amended complaint that the DHS officers were acting in accordance with CBP and

ICE policies which he now asserts are unconstitutional.  (Doc. 32 at 11-13.)

However, the Supplemental Recommendation correctly explains that Anibowei failed to bring suit under either circumstance of the direct officer exception to sovereign immunity.  (Doc. 29 at 4-8.)  As to the first *Larson* exception (which can apply when agents act beyond their statutory authority), the Supplemental Recommendation explained that Anibowei failed to allege any facts involving the named Defendants. (Doc. 29 at 7.)  The first amended complaint does indicate that certain DHS officers at the airport seized and reviewed Anibowei's phone, but Anibowei never claims these officers were any of the named Defendants.  (Doc. 8, ¶¶ 34-39.)  He does make vague assertions that some of the agencies managed by some of the named Defendants play a role in terrorism prevention and/or border screening, but he never claims these named Defendants actually engaged in any activity related to his cell phone.  (Doc. 8, ¶ 30.) Instead, Anibowei simply alleges that unknown "agents of Defendants"—not the named Defendants themselves—used CBP and ICE policies regarding the searching of electronic devices at the border as a means to review and copy information from his phone, and disseminate it to other unnamed government agencies.  (Doc. 8, ¶¶ 40-43.) Anibowei <u>never</u> states that the named Defendants acted outside their authority, and thus the first *Larson* exception is inapplicable.

The Supplemental Recommendation also explained that Anibowei could not meet the second *Larson* exception either (which can apply when agents act pursuant to an unconstitutional statute or order), as he never asserted in the first amended complaint that the CBP or ICE policies under which he claims all the Defendants allegedly operated are

unconstitutional (Doc. 29 at 7.)  In the amended complaint, Anibowei indicates these

policies are broad in scope and allow for a review of information that may be personal,

confidential, or privileged.  (Doc. 8, ¶ 40.)  But he never explains that the policies

themselves violate the Constitution or authorize unconstitutional behavior.

Anibowei never alleges that the named Defendants acted in violation of the

Constitution, either by acting outside their authority or by acting in accordance with an

unconstitutional act or order.  (*See* Doc. 29 at 7.)  Therefore, as the Supplemental

Recommendation found, the possible exceptions to sovereign immunity identified in this

Court's order which re-referred the matter to the Magistrate Judge do not apply.  (Doc. 29

at 4-8); *see also Larson*, 337 U.S. at 689–91; *Danos*, 652 F.3d at 581; *Unimex, Inc. v.*

*U.S. Dept. of Hous. & Urban Dev.*, 594 F.2d 1060, 1062 (5th Cir. 1979).

**B.     As Anibowei's requested injunctive relief would require the United States,
rather than the Defendants, to take affirmative action, the Supplemental
Recommendation correctly concluded that the Court lacks subject-matter
jurisdiction over these claims.**

The Supplemental Recommendation further noted that, not only does the direct

officer exception to sovereign immunity not apply, Anibowei's claims must also be

dismissed for lack of subject-matter jurisdiction based on his requested relief.  (Doc. 29 at

8-9.)  Anibowei objects on the general grounds that federal courts can issue injunctions

against the federal government to protect constitutional rights, but as evidence, cites

repeatedly to cases that do not involve injunctive relief.  (*See* Doc. 32 at 14-15.)

As the Supplemental Recommendation explained, if the injunctive relief requested

would necessitate action by the sovereign, rather than by the officials named in the suit,

the suit is actually against the sovereign itself.  (Doc. 29 at 8); *Dugan v. Rank*, 372 U.S.

609, 620 (1963) ("The general rule is that a suit is against the sovereign . . . if the effect

of the judgement would be 'to restrain the Government from acting, or to compel it to

act.'" (quoting *Larson*, 337 U.S. at 704)).  In such situations, the suit is barred "because it

is, in substance, a suit against the Government over which the [C]ourt, in the absence of

consent, has no jurisdiction."  *Larson*, 337 U.S. at 688; *Danos*, 652 F.3d at 581;

*Robertson v. Johnson*, No. H-05-2190, 2006 WL 1118151, at *3 (S.D. Tex. Apr. 25,

2006) (explaining that because the United States would have to take action if the

plaintiff's claims were granted, the suit was against the federal officer in her official

capacity and therefore barred by sovereign immunity).

The Supplemental Recommendation accurately explained that this same situation

applies to Anibowei's requested relief.  (Doc. 29 at 8-9.)  Anibowei is seeking injunctions

to require the Defendants to return or destroy the information obtained from his cell

phone, and disclose what information, if any, was disseminated to any other government

agency or foreign government.  (Doc. 8 at prayer.)  These affirmative actions would not

be undertaken by the named Defendants, but rather by the United States.  *See Larson*, 337

U.S. at 686, 689 (affirming the district court ruling that a request for injunctive relief

against the head of a government agency and "his agents, assistants, deputies and

employees and all persons acting or assuming to act under their direction" not to sell an

item or deliver it to anyone other than the plaintiff was "relief against the sovereign").

Therefore, the claims for injunctive relief are barred by sovereign immunity, and the

Court does not have subject matter jurisdiction over them.  (Doc. 29 at 9.)

**C.      Even if Anibowei has demonstrated there is an applicable waiver of sovereign immunity as to his claims, he has still failed to state any claim for relief under either the Fourth or First Amendments.**

As discussed above, neither the Recommendation nor the Supplemental Recommendation addressed the Defendants' Rule 12(b)(6) argument that Anibowei failed to state any claim of a Fourth or First Amendment violation.  These arguments were properly raised in the Defendants' motion to dismiss, and thus, if this Court determines that it has subject-matter jurisdiction over the claims, it should also evaluate the Defendants' failure-to-state-a-claim arguments.  As discussed below, their consideration should result in the dismissal of all claims asserted by Anibowei under Rule 12(b)(6).

**1.      Anibowei fails to state any claim for relief under the Fourth Amendment because reasonable suspicion is not required for the Government to inspect Anibowei's cell phone at the border. (First Cause of Action)**

With respect to Anibowei's first cause of action, the first amended complaint's allegations that the government's search and seizure of information from his cell phone at the border violated the Fourth Amendment fail to state any claim for relief.  The Fourth Amendment requires only "that searches and seizures be reasonable."  *Montoya de Hernandez*, 473 U.S. at 537.  According to Anibowei, the government's actions were unreasonable because the government allegedly lacked reasonable suspicion to believe that his cell phone contained evidence of any crime respecting customs, immigration, or terrorism.  (See Doc. 8, ¶¶ 46–47.)

But "the Fourth Amendment's balance of reasonableness is qualitatively different

at the international border than in the interior." *Montoya de Hernandez*, 473 U.S. at 538.

"[T]he United States, as sovereign, has the inherent authority to protect, and a paramount

interest in protecting, its territorial integrity." *Flores-Montano*, 541 U.S. at 153.  For this

reason, it has long been acknowledged that "'searches made at the border, pursuant to the

longstanding right of the sovereign to protect itself by stopping and examining persons

and property crossing into this country, are reasonable simply by virtue of the fact that

they occur at the border.'" *Id*. at 152–53 (quoting *Ramsey*, 431 U.S. at 616). In fact, the

border-search doctrine, which permits suspicionless searches of those persons and things

crossing the border, has a history as old as the Fourth Amendment itself, see *id*. at 153

(citing a statute authorizing border searches passed by the First Congress, and explaining

that the government's authority to conduct warrantless searches at the border has an

"impressive historical pedigree"), and the doctrine's broad nature is enshrined in

numerous statutes, *see, e.g.,* 6 U.S.C. §§ 202, 211; 8 U.S.C. §§ 1225, 1357; 19 U.S.C. §§

482, 507, 1461, 1496, 1581, 1582, 1589a, 1595a; see also 19 C.F.R. § 162.6 (allowing for

the inspection and search of "[a]ll persons, baggage, and merchandise arriving in the

Customs territory of the United States from places outside thereof").

As the Supreme Court has held, "[r]outine searches of the persons and effects of

entrants [into the United States] are not subject to any requirement of reasonable

suspicion, probable cause, or warrant." *Montoya de Hernandez*, 473 U.S. at 538.  The

only exception the Court has suggested exists is for a narrow category of personal

searches—"such as strip, body-cavity, or involuntary x-ray searches"—for which

reasonable suspicion may be required.  *Flores-Montano*, 541 U.S. at 152 (quoting

*Montoya de Hernandez*, 473 U.S. at 541 n. 4); see also *United States v. Sandler*, 644 F.2d 1163, 1167–68 (5th Cir. 1981) (explaining that while reasonable suspicion may be required for strip searches or body-cavity searches at the border, it is not required for less intrusive personal searches such as patdowns or frisks).

Anibowei has not alleged that he was subjected to any such physical search, and, notably, the Supreme Court has rejected the attempt to extend the reasonable-suspicion requirement beyond the category of "highly intrusive searches of the person." *Flores-Montano*, 541 U.S. at 152.  In *Flores-Montano*, customs officers removed and dismantled the gas tank of a car entering the country, leading to the discovery of narcotics inside.  *Id.* at 150–51.  Reversing a decision of the Ninth Circuit, which had held that such a search required reasonable suspicion under a theory that it went beyond a "routine" search, the Supreme Court explained that "[c]omplex balancing tests to determine what is a 'routine' search of a vehicle, as opposed to a more 'intrusive' search of a person, have no place in border searches of vehicles."  *Id.* at 152.

Accordingly, when the thing searched at the border is property (rather than a person), no balancing must be done to determine whether the search was "routine" or instead required reasonable suspicion, as would be the case with a strip search or body cavity search.  *See United States v. McAuley*, 563 F. Supp. 2d 672, 677 (W.D. Tex. 2008) ("Relying on the Supreme Court's reasoning in *Flores-Montano*, this Court cannot equate the search of a computer with the search of a person. The Court finds that the search of a computer is more analogous to the search of a vehicle and/or its contents."), *aff'd*, 420 F.

App'x 400 (5th Cir. 2011)[6]; *United States v. Thompson*, 53 F. Supp. 3d 919, 920–21, 923 (W.D. La. 2014) (holding that no reasonable suspicion was required when DHS agents "performed data extractions on both a Nokia cell phone and an iPhone seized from [the defendant], completely downloading and copying their contents, including all personal information," because the search had occurred at an international border).

In both *McAuley* and *Thompson*, district courts within the Fifth Circuit rejected the argument that the Fourth Amendment requires reasonable suspicion before an electronic device may be searched (or detained, or copied) at the border.  *See McAuley*, 563 F. Supp. 2d at 676–79; *Thompson*, 53 F. Supp. 3d at 920–23.  And the Fifth Circuit has approved generally of the warrantless search of electronic devices at the border.  *See United States v. Pickett*, 598 F.3d 231, 233–35 (5th Cir. 2010) (rejecting the argument that a warrant was required for ICE agents to search a person's thumb drives, portable hard drive, and laptop memory card at the border).

The Fifth Circuit again applied this same standard in the recent *Molina-Isidoro* case, where a warrantless border search of Molina-Isidoro's cell phone and other personal belongings found several incriminating electronic messages that the government then used to obtain a grand jury conviction for importing drugs and drug possession with intent to distribute.  884 F.3d at 289-90.  The Fifth Circuit upheld the denial of Molina-

---

[6] In the appeal in the *McAuley* case, the Fifth Circuit suggested that it agreed with the district court that reasonable suspicion is not required for searches of electronic devices at the border, but ultimately determined that it "need not decide whether the search was constitutionally permissible as a routine search under the border-search doctrine," because it could affirm the district court's decision (denying a motion to suppress) on the alternate ground that the defendant had given consent for the search.  *See McAuley*, 420 F. App'x at 401.

Isidoro's motion to suppress the evidence from her cell phone, determining that the Department of Homeland Security agents "reasonably relied on the longstanding and expansive authority of the government to search persons and their effects at the border." *Id.* at 290-91.  The Court also noted that the vast majority of federal cases nationwide addressing border searches of electronic devices did not require <u>any</u> level of suspicion for the search, and the only two outliers (*United States v. Cotterman*, 709 F.3d 952 (9th Cir. 2013); *United States v. Saboonchi*, 990 F. Supp. 2d 536 (D. Md. 2014)) simply required reasonable suspicion, and even then only for an intrusive forensic search.  *Id.* at 293.

The same reasoning employed in *McAuley*, *Thompson*, *Pickett*, and *Molina-Isidoro* dictates that Anibowei has failed to allege a viable Fourth Amendment claim in this case.  Under the border-search doctrine, the search of an electronic device at the border is reasonable—and therefore does not offend the Constitution—by virtue of the fact that it occurs at the border.  Indeed, as noted above, both the Supreme Court and the Fifth Circuit have consistently refused to expand any requirement of reasonable suspicion for border searches beyond the most intrusive searches of a person's body.  *See Flores-Montano*, 541 U.S. at 152–53 (holding that reasonable suspicion was not required to remove and dismantle a gas tank at the border); *United States v. Kelly*, 302 F.3d 291, 294 (5th Cir. 2002) (explaining that non-routine searches requiring reasonable suspicion "include body cavity searches, strip searches, and x-rays," but that a "canine sniff" that made contact with the person's "groin area" did not require reasonable suspicion); *Sandler*, 644 F.2d at 1167–69 (declining to require reasonable suspicion for patdowns or frisks that fall short of a strip search).

Because Anibowei does not allege that he was subjected to any such highly intrusive search of his person, there is no basis for his claim that the Fourth Amendment was violated due to an alleged lack of reasonable suspicion to support any search (or copying, or dissemination) of information from his phone.

### 2. Anibowei fails to state any claim for relief under the First Amendment because there is no First Amendment exception to the border-search doctrine.  (Second Cause of Action)

Anibowei fares no better with his second cause of action, because his allegations fail to show any violation of the First Amendment.  The basis for Anibowei's First Amendment claim is a contention that his cell phone contained private, sensitive, or confidential materials.  (Doc. 8, ¶¶ 44–45.)  However, the Supreme Court has never recognized an exception to the border-search doctrine based on the First Amendment status of the material being searched, and in *New York v. P.J. Video, Inc*., 475 U.S. 868, 874 (1986), it rejected an analogous argument that would have required a higher standard of probable cause for warrant applications when expressive material is involved.  The Court instead explained that the seizure of such materials "should be evaluated under the same standard of probable cause used to review warrant applications generally."  *Id.* at 875.  Since under *P.J. Video* it is clear that the First Amendment does not justify any exception to the usual standards of reasonableness for a non-border search, it likewise would follow that the First Amendment does not change the rules for a border search.

Indeed, in *United States v. Ickes*, 393 F.3d 501, 506 (4th Cir. 2005), the Fourth Circuit squarely rejected an attempt to "carve out a First Amendment exception to the border search doctrine" for searches of electronic devices at the border.  *See also United*

*States v. Arnold*, 533 F.3d 1003, 1010 (9th Cir. 2008) (adopting the *Ickes* rationale to refuse to carve out a First Amendment exception in a border search case); *Abidor v. Napolitano*, 990 F. Supp. 2d 260, 278 (E.D.N.Y. 2013) (adopting the same). In addition to noting that Supreme Court precedent did not support an exception, the *Ickes* court explained that adopting such a rule would create "significant headaches" as government officers would be faced with making difficult on-the-spot determinations about the First Amendment value of materials crossing the border. *Id.* at 506. Because "[t]hese sorts of legal wrangles at the border are exactly what the Supreme Court wished to avoid by sanctioning expansive border searches," the claim of First Amendment protection was rejected. *Id.* For the same reasons, Anibowei's allegations of a First Amendment violation fail to state any claim for relief.

      **3.     The subject matter of these claims is more appropriate for either Congressional or Executive Branch action.**

Not only has Anibowei failed to demonstrate that a violation of either the Fourth or First Amendment occurred, this case is not appropriate for judicial action—instead, the other federal branches should be allowed to address the issue of border searches of electronic devices.

Anibowei is essentially seeking a judgement from this Court that the Constitution requires the government to have reasonable suspicion before undertaking the search of an electronic device at the border. (*See* Doc. 8, ¶¶ 47–48 & prayer.) However, while it is conceivable that in some instances it might become absolutely necessary and unavoidable for a court to address the legality of an electronic border search (such as in a criminal

prosecution where the defendant's freedom may hinge on whether evidence from a border search of an electronic device is admitted into evidence or instead suppressed), Anibowei's civil suit does not present such a case.

Congress and the relevant Executive Branch agencies should also be afforded the first opportunity to "respond to any abuses that should develop as a consequence" of government policies providing for border searches of electronic devices. *Abidor*, 990 F. Supp. 2d at 274. As the CBP and ICE border-search policies cited in the first amended complaint make clear, the government is "sensitive to the privacy and confidentiality issues posed by border searches of electronic devices," and has made "efforts to cabin the nature and extent of such searches" while also putting in place "significant precautionary measures" to protect sensitive information. *Id*. Congress is likewise aware that electronic devices are subject to being searched at the border, but has not seen fit to withdraw or modify the broad search authority that it has consistently granted to government officers at the border for well over 200 years (including at the time the Fourth Amendment was adopted), indicating there are no true Fourth or First Amendment concerns with these inspections. *See id.*

**D.      Anibowei has also failed to plead any non-speculative facts showing any involvement by five Defendants or their agencies, and these government officials should be dismissed from the case.**

Finally, all claims against the Attorney General and the heads of the TSA, FBI, FBI Terrorist Screening Center, and National Counterterrorism Center are subject to dismissal for the additional reason that Anibowei has failed to plead any specific facts showing involvement by any government officers from these agencies in any of the

alleged wrongdoing made the basis of the suit.  (*See* Doc. 8.)  Other than identifying the heads of these agencies as defendants, the first amended complaint sets forth no non-speculative facts showing any wrongdoing by them or their agencies.

Anibowei first attempts to link some of these defendants to the case by stating that the National Counterterrorism Center and the FBI are "the two government entities that are primarily responsible for 'nominating' individuals for inclusion in the terrorist watch list," and that "certain passenger complaints [about border screening procedures] . . . actually have some connection to the Terrorist Watch list."  (Doc. 8, ¶ 30.)  The factual support offered for this latter statement is a June 30, 2016 letter Anibowei received after he made an inquiry to the DHS Traveler Redress Inquiry Program (TRIP).  (*See* Doc. 8, ¶ 30; *see also* Doc. 8-4 (copy of the June 30, 2016 letter).)  But the only reference to any connection to the terrorist watchlist in the June 30, 2016 letter is the statement that "less than 1% of the DHS TRIP complainants actually have some connection to the Terrorist Watchlist."  (Doc. 8-4.)  Accordingly, by stating that Anibowei's traveler redress request likely had no connection to the terrorist watchlist, the June 30, 2016 letter does not establish any link between the FBI, National Counterterrorism Center, and any terrorist watchlist, on the one hand, and the events at issue in this case, on the other.

Additionally, Anibowei's suggestion that he may have been subjected to heightened searching or inspection at the border (i.e., by CBP/ICE) because of information provided by other defendants who do not have a border-search function, but who instead administer or have responsibility for terrorist screening or watchlists, is no more than speculation.  (*See* Doc. 8, ¶ 30.)  And the same is true of Anibowei's

unsubstantiated assertion that these other defendants may have received information developed during some border search or inspection that Anibowei previously underwent. (Doc. 8, ¶ 30.)  Indeed, Anibowei provides no basis whatsoever for these assertions beyond stating the responsibilities and missions of the government agencies themselves, which is not sufficient to raise a plausible claim for relief against these defendants.  *See Twombly*, 550 U.S. at 557 (finding that "a naked assertion . . . without some further factual enhancement [] stops short of the line between possibility and plausibility of entitlement to relief") (internal brackets, quotation marks, and citation omitted)).

In sum, Anibowei fails to state a claim against the Attorney General and the heads of the TSA, FBI, FBI Terrorist Screening Center, and National Counterterrorism Center because he has not pleaded facts showing that they had any involvement in the alleged Fourth and First Amendment violations so as to give rise to any plausible claim for relief against them. *See Escamilla v. City of Dallas*, No. 3:03-CV-848-K, 2004 WL 1932867, at *5 (N.D. Tex. Aug. 30, 2004) (in a multi-defendant suit, dismissing claims against the City of Dallas under Rule 12(b)(6) because the plaintiff had "not pleaded any involvement of the City" in the alleged wrongdoing).

## IV.    Conclusion

The Magistrate Judge has now analyzed Anibowei's claims under multiple potential theories, and consistently determined Anibowei either cannot pursue his claims on jurisdictional grounds or has failed to sufficiently state claims for which relief can be granted.  The Court should therefore accept the Recommendation's and Supplemental Recommendation's conclusions, and dismiss the first amended complaint in its entirety.

Respectfully submitted,

ERIN NEALY COX
United States Attorney

*/s/ Sarah E. Delaney*
Sarah E. Delaney
Assistant United States Attorney
Arizona Bar No. 031722
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:   214-659-8730
Facsimile:    214-659-8807
sarah.delaney@usdoj.gov

Attorneys for Defendants

Certificate of Service

On November 19, 2018, I electronically submitted the foregoing document with

the clerk of court for the U.S. District Court, Northern District of Texas, using the

electronic case filing system of the court.  I hereby certify that I have served all parties

electronically or by another manner authorized by Federal Rule of Civil Procedure

5(b)(2).

*/s/ Sarah E. Delaney*
Sarah E. Delaney
Assistant United States Attorney