IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GEORGE ANIBOWEI, §
§
Plaintiff, §
§ Civil Action No. 3:16-CV-3495-D
VS. §
§
WILLIAM P. BARR, et al., §
§
Defendants. §

MEMORANDUM OPINION
AND ORDER

In this civil rights action arising from alleged violations of the First and Fourth Amendments, the court referred to the United States Magistrate Judge the question whether plaintiff George Anibowei's ("Anibowei's") claims for prospective injunctive relief fall within the direct officer exception to the doctrine of sovereign immunity. The magistrate judge answered that they do not, and she recommended that the claims be dismissed with prejudice for lack of subject matter jurisdiction. After making an independent review of the record, the court agrees that the claims should be dismissed—but on a different rationale and with leave to replead.

I

A

Anibowei is a U.S. citizen and licensed attorney who maintains an office in Dallas.[1]

---

[1]The court takes the following facts from Anibowei's first amended complaint. Anibowei is proceeding *pro se* in this matter. Although the court's usual practice is to construe *pro se* pleadings liberally, "*pro se* litigants who are attorneys are not entitled to the

Before immigrating to the United States, Anibowei was licensed to practice law in Nigeria. He was admitted to the Texas Bar in 2002.

From 2012 until 2015, Anibowei was a member of the Global Entry Trusted Traveler Program ("Global Entry") administered by U.S. Customs and Border Protection ("CBP"). In 2015 CBP revoked Anibowei's membership in the program for the stated reason that he "does not meet the program eligibility requirements." 1st Am. Compl. ¶ 18. Anibowei alleges that he does not know why he is now ineligible for Global Entry; he has not been convicted of any crime, he has no criminal charges pending against him, and he did not provide false or incomplete information on his application to the program. Both before and after Anibowei's Global Entry membership was revoked, CBP agents would routinely refer Anibowei for secondary inspection when he passed through customs at U.S. airports. On numerous occasions, CBP agents have detained Anibowei, questioned him, and searched his personal belongings. Anibowei suspects that the unusual rigor with which CBP screens him may indicate his inclusion on a "watch list" maintained by the Terrorist Screening Center ("TSC"), a component of the Federal Bureau of Investigation ("FBI").

The present lawsuit arises from two screening incidents in particular, both of which took place at the Dallas/Fort Worth International Airport ("DFW Airport"). The first occurred in October 2016, when Anibowei was returning from a short vacation to Canada. He had already been subjected to secondary inspection by Canadian border authorities when

---

flexible treatment granted other *pro se* litigants." *Cole v. Comm'r*, 637 F.3d 767, 773 (7th Cir. 2011).

entering and exiting Canada, purportedly at the request of CBP. After Anibowei's return flight arrived at DFW Airport—while passengers were preparing to disembark—the flight crew told the passengers to return to their assigned seats, because officers from the Department of Homeland Security ("DHS") were there to remove a passenger. Anibowei was the passenger whom the officers removed. The officers, who were CBP agents,[2] led Anibowei to an interrogation room and instructed him to place the contents of his pockets, including his cell phone, on a table. One of the agents then took Anibowei's cell phone out of the room. When Anibowei asked why, the agents told him that they had detained his cell phone for "examination and copying." *Id.* ¶ 35. The agents questioned Anibowei for roughly two hours about his background, his personal life, and the purpose of his trip to Canada. At no point did the agents suggest that Anibowei had broken the law or that he had any illegal material on his cell phone. After questioning him, the agents returned his cell phone and again told him that it had been copied for examination.

In February 2017, after Anibowei filed the instant lawsuit, CBP agents again detained him for questioning as he passed through customs at DFW Airport. This time, Anibowei was returning from a trip to Nigeria. Although the agents did not copy his cell phone, they performed a manual search of his emails and text messages. They also questioned Anibowei for nearly three hours. Once again, they never suggested that Anibowei had committed a crime or that his cell phone contained any illegal content. Anibowei alleges that his cell

---

[2]The court takes judicial notice that CBP is a component of DHS. *See* 6 U.S.C. § 211(a).

phone contains personal and private information as well as confidential and privileged materials relating to his work on behalf of clients.

Anibowei asserts that the two searches of his cell phone were conducted in accordance with CBP and Immigration and Customs Enforcement ("ICE") policies. *See* U.S. Customs and Border Protection, CBP Directive No. 3340-049, Border Search of Electronic Devices Containing Information (2009); U.S. Immigration and Customs Enforcement, ICE Directive No. 7-6.1, Border Searches of Electronic Devices (2009). These policies permit government agents to search individuals' electronic devices at the border with or without individualized suspicion. *See* CBP Directive No. 3340-049 § 5.1.2; ICE Directive No. 7-6.1 § 6.1. Anibowei contends that the policies also permit CBP and ICE to retain any information relevant to immigration, customs, or other law enforcement matters, and to share that information with other agencies. He alleges on information and belief that the named defendants have retained and shared data copied from his cell phone.

B

Anibowei's first amended complaint asserts that the detention and search of his cell phone—and defendants' continued retention and sharing of his electronic data—violate the First and Fourth Amendments to the U.S. Constitution. He seeks relief in the form of a declaratory judgment that the relevant acts were unconstitutional; an injunction ordering defendants to return or destroy all information they copied from his cell phone; and an injunction directing defendants to disclose whether Anibowei's data were shared with any other entities or individuals, and, if so, in what form and with whom. He sues a number of

high-ranking executive officers in their official capacities only. Four of the named defendants are part of DHS: Secretary of Homeland Security Kristjen Nielsen; CBP Commissioner Kevin McAleenan; Transportation Security Administration Administrator David Pekoske; and ICE Acting Director Ronald Vitiello. The remaining four defendants are not associated with DHS, but instead are included in the lawsuit because of their connection with the TSC watch list: Attorney General William P. Barr; FBI Director Christopher Wray; TSC Director Charles Kable, IV; and National Counterterrorism Center Director Joseph Maguire.[3]

The government filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). It contended that Anibowei lacked constitutional and prudential standing to sue for past violations of his rights; that the searches of Anibowei's cell phone did not violate the Constitution; and that there was no connection between five of the named defendants and the allegedly unconstitutional search. The court referred the motion to the United States Magistrate Judge for a report and recommendation. The magistrate judge concluded that Anibowei was experiencing an ongoing injury due to defendants' continued retention of his electronic data, and therefore had standing. She also recommended that defendants' Rule 12(b)(6) motion be granted in part because Anibowei failed to state a claim under *Bivens v.*

---

[3]The individual defendants named in this paragraph—including Attorney General William P. Barr, whose nomination was just confirmed today—automatically succeeded the defendants originally named in Anibowei's first amended complaint. *See* Fed. R. Civ. P. 25(d). The court will refer to all eight named defendants collectively as "defendants" or "the government."

*Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Finally, the magistrate judge recommended *sua sponte* that Anibowei's Administrative Procedure Act ("APA") claim, to the extent he attempted to plead such a claim, be dismissed because the first amended complaint did not allege any final agency action. Following *de novo* review, the court adopted the magistrate judge's conclusion as to standing, but re-referred the motion to the magistrate judge so that she could consider an additional question: whether Anibowei can maintain his claims for injunctive relief under the direct officer exception to the doctrine of sovereign immunity. *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-91 (1949).

Following the re-referral, the magistrate judge issued the supplemental findings, conclusions, and recommendation that are now before the court. She concludes that the first amended complaint does not fall within the direct officer exception for two reasons. First, Anibowei does not specifically allege that the named defendants themselves took any action pursuant to an unconstitutional policy, or that they acted beyond their statutory powers. This finding can be understood as having two components: that Anibowei does not allege what, if any, actions the named defendants undertook themselves; and that Anibowei fails to allege that any particular policy or law is unconstitutional. Second, the magistrate judge noted that, to grant Anibowei the relief he requests, the court would have to issue an affirmative injunction. Such relief is supposedly precluded by footnote 11 of the *Larson* opinion. *See*

*Larson*, 337 U.S. at 691 n.11.[4]  Therefore, the magistrate judge recommends that the court dismiss Anibowei's injunctive-relief claims with prejudice for lack of subject matter jurisdiction.  Anibowei objects to the magistrate judge's supplemental recommendation, and the government responds in support of it.  The court now considers the magistrate judge's supplemental recommendation and her findings as to Anibowei's *Bivens* and APA claims, which the court has not yet adopted.

II

The court first considers whether sovereign immunity deprives it of subject matter jurisdiction.

---

[4]In addition to citing footnote 11, the magistrate judge suggests that "if the effect of the judgment would be to *restrain the government from acting*, or to compel it to act," then sovereign immunity bars the suit regardless whether Anibowei has sufficiently alleged that his case falls within one of the *Larson* exceptions.  Supp. Rec. 8 (emphasis added) (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)) (internal quotation marks omitted).  But this reasoning is the reverse of the correct analysis—and is, moreover, inconsistent with *Larson* itself.  *See Larson*, 337 U.S. at 690 (observing that "[a]ctions for . . . injunctions against the threatened enforcement of unconstitutional statutes are familiar examples of" permissible lawsuits against government officials).  When a federal official is sued, the court must first examine whether the lawsuit is actually against the United States, and the "general rule" of sovereign immunity applies.  *See Ala. Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221, 1225-26 (5th Cir. 1976).  A lawsuit is against the United States if, *inter alia*, the relief sought would constrain or compel the sovereign.  *See id.*  The court may then consider whether the suit falls within one of the *Larson* exceptions to the general rule of sovereign immunity.  *See, e.g., id.* at 1226.  Footnote 11, in turn, provides a further "exception to the exception" that applies if a judgment would require the government to undertake certain kinds of affirmative action.  *Saine v. Hosp. Auth.*, 502 F.2d 1033, 1035 (5th Cir. 1974) (quoting *Zapata v. Smith*, 437 F.2d 1024, 1025 (5th Cir. 1971)).  Because Anibowei is suing all defendants in their official capacities only, it is already established that the general rule of sovereign immunity applies, so the court will begin at the second step of the analysis: the applicability of the *Larson* exceptions.  *See Danos v. Jones*, 652 F.3d 577, 581 (5th Cir. 2011).

A

"A federal court has no subject matter jurisdiction over claims against the United States unless the government waives its sovereign immunity and consents to suit." *Danos v. Jones*, 652 F.3d 577, 581 (5th Cir. 2011) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). Generally, "claims against officers of the United States in their official capacities are actually claims against the sovereign," and are therefore barred by sovereign immunity. *Id.* (citing *S. Sog, Inc. v. Roland*, 644 F.2d 376, 380 (5th Cir. Unit A May 1981)).

As the magistrate judge correctly observed, because sovereign immunity is a jurisdictional issue, it is properly addressed under the Rule 12(b)(1) standard. "Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See, e.g., Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id.* The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id.* (citation omitted) (citing *Paterson*, 644 F.2d at 523). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact

exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

## B

### 1

Direct officer suits seeking prospective injunctive relief are an exception to sovereign immunity. An individual can bring such a suit directly against a federal officer in two circumstances: (1) when the officer acts outside of the officer's delegated statutory power; and (2) if the officer's conduct, while statutorily authorized, offends a provision of the Constitution. *Larson*, 337 U.S. at 689-91 (citing *Phila. Co. v. Stimson*, 223 U.S. 605, 620 (1912) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123, 159-60 (1908))); *see also Bell v. Hood*, 327 U.S. 678, 684 (1946) ("[I]t is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution[.]"). The latter is a "constitutional exception to the doctrine of sovereign immunity." *Larson*, 337 U.S. at 696; *accord* Richard H. Fallon, Jr. et al., Hart and Wechsler's The Federal Courts and the Federal System 895 (7th ed. 2015) ("Hart and Wechsler") ("[I]f the officer acted within the conferred statutory limits of the office, but his or her conduct allegedly offended a provision of the Constitution, then sovereign immunity will be lifted.") (internal quotation marks and citation omitted). Through this line of cases, individuals have "a right to sue directly under the [C]onstitution to enjoin . . . federal officials from violating [their] constitutional rights." *Porter v. Califano*, 592 F.2d 770, 781 (5th Cir. 1979); *see also Unimex, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 594 F.2d 1060, 1061-62

(5th Cir. 1979) (per curiam) (examining whether official capacity suit against federal officers may survive under constitutional exception to sovereign immunity); *R.I. Dep't of Envtl. Mgmt. v. United States*, 304 F.3d 31, 41 (1st Cir. 2002) ("[O]ur courts have long recognized that federal officers may be sued in their official capacity for prospective injunctive relief to prevent ongoing or future infringements of federal rights."); Erwin Chemerinski, Federal Jurisdiction § 9.2.2, at 676 (7th ed. 2016) ("[U]nconstitutional government actions can be halted by seeking an injunction against the individual officer responsible for executing the government's policy."); Hart and Wechsler, *supra* at 892 ("The principle that the Constitution creates a cause of action against governmental officials for injunctive relief . . . and that sovereign immunity erects no general bar to such relief . . . has also come to apply in suits challenging *federal* official action.").

The court acknowledges that there is some debate over whether, in suits against federal agency officials, the constitutional exception to sovereign immunity still survives after the 1976 amendments to the APA. *See, e.g., E.V. v. Robinson*, 906 F.3d 1082, 1092-93 (9th Cir. 2018); *Danos*, 652 F.3d at 582; *Geyen v. Marsh*, 775 F.2d 1303, 1307 (5th Cir. 1985). The 1976 amendments "waived sovereign immunity for suits seeking nonmonetary relief through nonstatutory judicial review of agency action," and were intended to "do away with the *ultra vires* doctrine and other fictions surrounding sovereign immunity." *Geyen*, 775 F.2d at 1307 (citing Act of Oct. 21, 1976, Pub. L. No 94–574, § 1, 90 Stat. 2721, 2721 (codified at 5 U.S.C. § 702 (1982))). Most challenges to federal agency action are now brought via the APA, so the question whether *Larson* still applies to suits against federal

agency officials "possesses limited current practical significance." Hart and Wechsler, *supra* at 892. But because doing so does not affect the outcome of the present motion, the court will assume *arguendo* that the *Larson* exceptions have continuing vitality in suits challenging federal agency action. *Cf. Danos*, 652 F.3d at 582 ("Like the district court, we assume for the sake of analysis that the *Larson* exception to sovereign immunity may still apply in certain cases after the 1976 amendments to the Administrative Procedure Act[.]").[5]

2

As explained above, the magistrate judge offered two reasons for why Anibowei cannot maintain his claims under the direct officer exception to sovereign immunity. The court does not adopt these reasons; instead, it dismisses Anibowei's injunctive relief claims on an alternative basis.

The magistrate judge concluded that Anibowei's claims for injunctive relief must be dismissed because he does not allege what, if any, actions the named defendants themselves undertook, and because he fails to allege that any particular policy or law is unconstitutional. Anibowei objects that he does, in effect, allege that certain CBP and ICE policies are unconstitutional: he challenges the search of his cell phone and the subsequent retention and sharing of his data as unconstitutional, and he alleges that the CBP agents who searched his

---

[5]The court expresses no opinion on whether Anibowei's claims fall within § 702's waiver of sovereign immunity. The court *does* conclude that, to the extent Anibowei seeks review pursuant to the general provisions of the APA, his claim is barred by sovereign immunity, *see infra* § II(C), but this does not necessarily end the analysis under § 702, *see, e.g., Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 488-89 (5th Cir. 2014).

cell phone did so pursuant to the policies in question. The court agrees with this objection.

The Federal Rules of Civil Procedure were meant to do away with excessively-technical pleading requirements. *See Theriault v. Silber*, 579 F.2d 302, 303 (5th Cir. 1978) (per curiam) ("The modern view is that courts decide cases based on the merits of the issues and not from the pages of a writ book. This change is nowhere more evident than in the Rules of Civil Procedure[.]"). And although a plaintiff must allege enough facts "to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), the plaintiff is not required to specifically cite the statutory basis for the claim, so as long as he sufficiently establishes the factual predicate for claim, *Johnson v. City of Shelby*, ___ U.S. ___, 135 S. Ct. 346, 347 (2014) (per curiam) (concluding, under Rule 12(b)(6) standard, that civil rights plaintiff need not specifically cite 42 U.S.C. § 1983 in complaint as long as he sufficiently establishes factual predicate for claim). It is not difficult to draw the reasonable inference from Anibowei's first amended complaint that he maintains that the CBP and ICE policies in question violate the First and Fourth Amendments.

Although Anibowei does not effectively address the magistrate judge's conclusion that he failed to specify any particular actions undertaken by the named defendants, the court nonetheless declines to adopt this conclusion. In the context of a *Bivens* claim, it is in fact necessary for Anibowei to allege that the named defendants themselves, through their individual actions, violated his constitutional rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). But to overcome sovereign immunity in a suit for prospective injunctive relief, the plaintiff need only allege either "'some connection' or a 'special relationship'" between the

named defendant and enforcement of the challenged policy. *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (quoting *Ex parte Young*, 209 U.S. at 157); *see also Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 159 (5th Cir. 2007) ("[*Ex parte*] *Young* requires that '[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, . . . such officer must have some connection with the enforcement of the act, or else it is merely making . . . the state a party.'" (alterations in original) (emphasis removed) (quoting *Ex parte Young*, 209 U.S. at 157)); *Shah v. Univ. of Tex. Sw. Med. Sch.*, 129 F.Supp.3d 480, 497 n.11 (N.D. Tex. 2015) (Fitzwater, J.) (stating the same).[6]

Anibowei has not met this burden here. It is immaterial whether the correct standard is "some connection" or a "special relationship," because Anibowei has alleged no facts explaining what role the named defendants played, if any, in enforcing the ICE and CBP policies in question.[7] *Cf. Alexander v. Trump*, ___ Fed. Appx. ___, 2018 WL 4945300, at

---

[6]The requisite degree of connection between the named defendant and the challenged policy is unclear. In *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc), a plurality of the Fifth Circuit stated that the named defendant must have the "particular duty" to enforce the law in question and "a demonstrated willingness to exercise that duty." *Id.* at 416. But, as a panel of the Fifth Circuit later pointed out, the portion of the *Okpalobi* opinion that commanded only a plurality is not binding precedent. *See K.P.*, 627 F.3d at 124. It thus remains an open question whether the named defendant need only have "some connection" with enforcement of the challenged law, or whether some higher standard applies. *See id.*

[7]While *K.P.*, *Allstate*, and *Okpalobi* involved challenges to state statutes, the present case involves a challenge to a federal agency policy. Nonetheless, these cases are applicable to the present circumstances. On at least one occasion the Fifth Circuit has held that a challenge to a state administrative *policy*—rather than a statute—could be brought on the basis of the direct officer exception against the officials responsible for promulgating and implementing the policy. *See Dunham v. Wainwright*, 713 Fed. Appx. 334, 335 (5th Cir. 2018) (per curiam). As to the state/federal distinction, the legal fiction underlying the direct

*5 (5th Cir. Oct. 11, 2018) (per curiam) ("Alexander's complaint fails to allege a connection between the Louisiana Governor and the local sheriff and police officers he accuses of having violated his rights."). The closest Anibowei comes to doing so is when explaining that he included the four non-DHS defendants in this suit because of their connection to the TSC watch list. But he does not appear to be challenging the constitutionality of terrorist watch lists. His injunctive relief claims against all defendants are therefore barred by sovereign immunity.

At this juncture, the court need not decide whether footnote 11 of *Larson* bars Anibowei's claims. The court will nonetheless outline the analysis to be conducted in applying footnote 11, which states:

> [o]f course, a suit may fail, as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested cannot be granted by merely ordering the cessation of

---

officer exception functions the same way as applied to both state and federal defendants. In both instances, the assumption is that when an official acts in violation of the Constitution, he is acting *ultra vires* and can be enjoined as if he were acting as an individual. *Compare Larson*, 337 U.S. at 690, *with Ex parte Young*, 209 U.S. at 159-60. As the *Larson* Court observed, the direct officer exception to sovereign immunity "has frequently been applied with respect to state officers seeking to enforce unconstitutional enactments . . . [a]nd it is equally applicable to a Federal officer acting in excess of his authority or under an authority not validly conferred." *Larson*, 337 U.S. at 690-91(quoting *Stimson*, 223 U.S. at 620 (citing, *inter alia*, *Ex parte Young*, 209 U.S. at 159-60)); *see also* Hart & Wechsler, *supra* at 892 ("The principle . . . that sovereign immunity erects no general bar to [injunctive] relief . . . has also come to apply in suits challenging *federal* official action." (citing *Shields v. Utah Idaho Cent. R.R.*, 305 U.S. 177, 183-84 (1938))). Because the direct officer exception is conceptually identical in both the state and federal contexts, there is no reason to conclude that a different standard of connection between the named defendant and the challenged policy applies when the defendant is employed by the federal government.

>  the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property.

*Larson*, 337 U.S. at 691 n.11 (citation omitted). The Fifth Circuit has interpreted this footnote narrowly.[8] In *Saine v. Hospital Authority*, 502 F.2d 1033 (5th Cir. 1974), the court concluded that "footnote 11 of Larson does not bar all actions seeking affirmative action by governmental officials." *Id.* at 1036. Rather, the footnote applies to two types of claims. First, it bars plaintiffs from seeking injunctions that would require the government to pay retrospective monetary relief. *See id.* (citing *Zapata v. Smith*, 437 F.2d 1024, 1025 (5th Cir. 1971)); *cf. Edelman v. Jordan*, 415 U.S. 651, 678 (1974) (stating the same principle). Second, the footnote prohibits claims for affirmative injunctive relief where "the relief sought would work an intolerable burden on governmental functions, outweighing any consideration of private harm." *Saine*, 502 F.2d at 1037 (quoting *Washington v. Udall*, 417 F.2d 1310, 1318 (9th Cir. 1969)). This test requires the court to engage in a "balancing analysis," weighing, on the one hand, the burden the relief would impose on the government, and, on the other hand, the harm that denying relief would inflict on the plaintiff. *See Doe v. Wooten*,

---

[8]At least one circuit has questioned whether footnote 11 remains good law. In *Vann v. Kempthorne*, 534 F.3d 741 (D.C. Cir. 2008), Judge Griffith, writing for the panel, observed that the Supreme Court has failed to mention footnote 11 in recent sovereign immunity cases and in its various opinions authorizing affirmative injunctive relief against state officials. *Id.* at 752 (citing, *inter alia*, *Milliken v. Bradley*, 433 U.S. 267 (1977)). Judge Griffith noted that "any court that would rely on footnote 11 to bar an *Ex parte Young* suit would have to grapple with the issue of its possible obsolescence." *Id.* But this court will assume that footnote 11, as interpreted by the Fifth Circuit, remains good law—until either the Supreme Court or the Fifth Circuit holds otherwise.

376 Fed. Appx. 883, 885 (11th Cir. 2010) (per curiam) (citing *Saine*, 502 F.2d at 1037); *see also, e.g., Doe v. Wooten*, 2010 WL 2821795, at *3-5 (N.D. Ga. July 16, 2010) (applying balancing test).

The magistrate judge did not engage in this balancing analysis. Therefore, the court does not adopt her conclusion that footnote 11 bars Anibowei's claims for injunctive relief.

C

The magistrate judge *sua sponte* considered whether Anibowei has stated a claim under the APA, which effects a waiver of sovereign immunity. *See MacKenzie v. Castro*, 2017 WL 1021299, at *4 (N.D. Tex. Mar. 16, 2017) (Fitzwater, J.). She concluded that this court lacks subject matter jurisdiction over any APA claim because Anibowei fails to allege a final agency action. To the extent Anibowei attempts to state a claim for relief under the general provisions of the APA, the court agrees with and adopts the magistrate judge's conclusion.[9]

---

[9]If Anibowei is eventually able to overcome sovereign immunity, he must still reckon with the question whether his constitutional claims are authorized by an affirmative cause of action. *See Alexander*, ___ Fed. Appx. at ___, 2018 WL 4945300, at *4 ("Although there have been a few notable exceptions, the federal courts, and this Circuit in particular, have been hesitant to find causes of action arising directly from the Constitution." (quoting *Hearth, Inc. v. Dep't of Pub. Welfare*, 617 F.2d 381, 382 (5th Cir. 1980))). It is possible that such authorization may be found in the inherent equitable powers of the federal courts. *See Armstrong v. Exceptional Child Ctr., Inc.*, ___ U.S. ___, 135 S. Ct. 1378, 1384 (2015) ("[W]e have long held that federal courts may in some circumstances grant injunctive relief . . . with respect to violations of federal law by federal officials."); *see also Porter*, 592 F.2d at 781 ("Porter would of course have a right to sue directly under the [C]onstitution to enjoin her supervisors and other federal officials from violating her constitutional rights.").

III

Finally, the court considers the magistrate judge's findings as to Anibowei's *Bivens* claims. It notes that Anibowei did not object to this portion of the magistrate judge's original recommendation. After an independent review, the court agrees with the magistrate judge's conclusion and adopts it. To the extent Anibowei attempts to state a claim under *Bivens*, this claim is dismissed because Anibowei has not sued the named defendants in their individual capacity, and he does not allege that they personally violated his constitutional rights.

IV

Although the court is dismissing Anibowei's claims, it will also grant him leave to replead. It is the practice of this court to afford litigants "at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)). There is no indication that the defects in Anibowei's first amended complaint are incurable; it is conceivable that he could identify a specific agency action for the purposes of § 702's waiver of sovereign immunity, or could allege a connection between the named defendants and the enforcement of the policies Anibowei seeks to challenge under *Larson*. The court therefore grants Anibowei a period of 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.

In granting leave to replead, the court observes that the merits issue in this

case—whether the Constitution prohibits the government from conducting suspicionless searches of individuals' electronic devices at the border—is an important one. And there is currently a circuit split. *Compare, e.g., United States v. Touset*, 890 F.3d 1227, 1231 (11th Cir. 2018) (holding that no individualized suspicion is required), *with United States v. Kolsuz*, 890 F.3d 133, 137 (4th Cir. 2018) (concluding that agents must have at least reasonable suspicion), *and United States v. Cotterman*, 709 F.3d 952, 962 (9th Cir. 2013) (same). The Fifth Circuit has not yet chosen a side. *See United States v. Molina-Isidoro*, 884 F.3d 287, 289 (5th Cir. 2018) ("[Defendant] invites the court to announce general rules concerning the application of the government's historically broad border-search authority to modern technology for which the Supreme Court has recognized increased privacy interests. We decline the invitation to do so[.]" (citation omitted)). Before deciding this weighty question, the court seeks certainty concerning its own jurisdiction. *Cf. Peltier v. Assumption Par. Police Jury*, 638 F.2d 21, 22 (5th Cir. 1981) (recognizing that courts should "resolve federal constitutional claims only when a case cannot be decided on any other basis" (quoting *Finch v. Miss. State Med. Ass'n, Inc.*, 585 F.2d 765, 776 (5th Cir. 1978))). Thus the court will rigorously analyze the sovereign immunity question again after Anibowei files his second amended complaint.

* * *

For the foregoing reasons, the court adopts in part the magistrate judge's October 18, 2018 supplemental findings, conclusions, and recommendation, and it dismisses Anibowei's claims, with leave to replead.

**SO ORDERED**.

February 14, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE