## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

GEORGE ANIBOWEI,

      *Plaintiff*,

      v.

KIRSTJEN M. NIELSEN, U.S. Secretary of Homeland
Security, in her official capacity; KEVIN K.
MCALEENAN, Commissioner of U.S. Customs and
Border Protection, in his official capacity; RONALD D.
VITIELLO, Acting Director of U.S. Immigration and
Customs Enforcement, in his official capacity; DAVID P.
PEKOSKE, Administrator of the Transportation Security
Administration, in his official capacity; WILLIAM P.
BARR, Attorney General of the United States, in his
official capacity; U.S. DEPARTMENT OF HOMELAND
SECURITY; U.S. CUSTOMS AND BORDER
PROTECTION; U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT; TRANSPORTATION SECURITY
ADMINISTRATION,

      *Defendants*.

Case No.  3:16-cv-03495-D

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT,
## OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... iv

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

    A. The Defendants' Policies ............................................................................................. 2

    B. Plaintiff George Anibowei ........................................................................................... 3

    C. Procedural History ....................................................................................................... 5

ARGUMENT ........................................................................................................................... 7

I.     ICE and CBP's Policies Are Unlawful. ......................................................................... 9

    A. By Authorizing Warrantless Cell Phone Searches, The Electronics
       Search Policies Violate the Fourth Amendment. .......................................................... 9

        1. *Riley* Held that Cell Phones Are So Different From Other "Effects"
           that Courts Must Consider Whether to "Extend" Existing
           Exceptions to the Warrant Requirement to Them. ................................................... 9

        2. There Is No Justification for Extending the Border Search Exception
           to the Warrant Requirement to Searches of Cell Phones .................................... 12

           a.   Warrantless Cell Phones Searches at the Border Are
               Unnecessary To Serve Any Legitimate Governmental Interest ...................... 12

               i.    Digital Data Does Not and Cannot Contain the
                   "Contraband" The Border Search Exception Exists to Find..................... 14

               ii.  Once a Cell Phone Is Seized, There Is No Need to Search It
                   Without a Warrant to Preserve Evidence ................................................. 16

           b.  The Degree of Intrusiveness of the Search of a Phone Renders
               Warrantless Searches Unreasonable ................................................................ 16

                i.    The Privacy Interests Implicated by Cell Phones Far
                   Exceed Those of Nearly Any Other Effect Carried on the
                   Person ....................................................................................................... 17

               ii.  Cell Phones Are Ubiquitous and Most People Cannot Go
                   Without Them ........................................................................................... 18

               iii. The Privacy Interests in the Digital Contents of a Cell
                   Phone Outweigh Any Diminished Expectations of Privacy
                   at the Border ............................................................................................. 18

               iv. Requiring Warrants Before Border Agents Search Cell
                   Phones Furthers the Core Purposes of the Warrant
                   Requirement ............................................................................................. 19

v.  Warrants Are Easier to Obtain Than Ever Before ................................... 20

3. Searching an Individual's Emails, Text Messages, and Photos
Independently Requires a Warrant ........................................................................ 20

B. By Authorizing Warrantless Cell Phone Searches, The Electronics
Search Policies Violate the First Amendment ............................................................ 21

II.    The Court Should Grant Partial Summary Judgment ...................................................... 23

A. Standard of Review for a Motion for Summary Judgment ........................................ 23

B. Partial Summary Judgment Is Warranted .................................................................. 23

III.   In the Alternative, the Court Should Grant a Preliminary Injunction ............................... 24

A. Standard of Review for a Motion for Preliminary Injunction ..................................... 24

B. A Preliminary Injunction Is Warranted ...................................................................... 25

CONCLUSION ............................................................................................................................ 25

CERTIFICATE OF SERVICE ..................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)............................................................................................................23

*Arizona v. Gant*,
556 U.S. 332 (2009)............................................................................................................12

*Baird v. State Bar of Ariz.*,
401 U.S. 1 (1971)...............................................................................................................22

*Boyd v. United States*,
116 U.S. 616 (1886)...........................................................................................................13

*Carroll v. United States*,
267 U.S. 132 (1925)...........................................................................................................13

*Chamber of Commerce v. U.S. Dep't of Labor*,
885 F.3d 360 (5th Cir. 2018) .............................................................................................24

*Citizens United v. FEC*,
558 U.S. 310 (2010)...........................................................................................................21

*City of Los Angeles v. Patel*,
135 S. Ct. 2443 (2015)........................................................................................................24

*City of Ontario, Cal. v. Quon*,
560 U.S. 746 (2010)...........................................................................................................18

*Crispin v. Christian Audigier, Inc.*,
717 F. Supp. 2d 965 (C.D. Cal. 2010) ...............................................................................21

*Gibson v. Fla. Legislative Investigation Comm'n*,
372 U.S. 539 (1963)...........................................................................................................22

*Heller v. New York*,
413 U.S. 483 (1973)...........................................................................................................23

*Illusions—Dallas Private Club, Inc. v. Steen*,
482 F.3d 299 (5th Cir. 2007) .............................................................................................23

*Katz v. United States*,
389 U.S. 347 (1967)......................................................................................................10, 12

iv

*Kyllo v. United States*,
533 U.S. 27 (2001).........................................................................................................10, 11

*Lamont v. Postmaster General*,
381 U.S. 301 (1965)...............................................................................................................22

*Maryland v. King*,
569 U.S. 435 (2013).........................................................................................................16, 17

*Massachusetts v. Oakes*,
491 U.S. 576 (1989)...............................................................................................................21

*Missouri v. McNeely*,
133 S. Ct. 1552 (2013)...........................................................................................................16

*Missouri v. McNeely*,
569 U.S. 141 (2013)...............................................................................................................20

*NAACP v. Alabama ex rel. Patterson*,
357 U.S. 449 (1958)...............................................................................................................22

*Nat'l Treasury Emps. Union v. Von Raab*,
489 U.S. 656 (1989)...............................................................................................................19

*New York v. P.J. Video, Inc.*,
475 U.S. 868 (1986)...............................................................................................................23

*R.J. Reynolds Tobacco Co. v. FDA*,
696 F.3d 1205 (D.C. Cir. 2012).............................................................................................24

*R.S. ex rel. S.S. v. Minnewaska Area Sch. Dist., No. 2149*,
894 F. Supp. 2d 1128 (D. Minn. 2012)..................................................................................21

*Riley v. California*,
573 U.S. 373 (2014).........................................................................................................passim

*Roaden v. Kentucky*,
413 U.S. 496 (1973)...............................................................................................................15

*Salge v. Edna Indep. Sch. Dist.*,
411 F.3d 178 (5th Cir. 2005) .................................................................................................23

*Sibron v. New York*,
392 U.S. 40 (1968).................................................................................................................15

*Smith v. Maryland*,
442 U.S. 735 (1979)...............................................................................................................10

*Stanford v. Texas*,
  379 U.S. 476 (1965)...........................................................................................................22

*Steagald v. U.S.*,
  451 U.S. 204 (1981)...........................................................................................................20

*Texans for Free Enterprise v. Tex. Ethics Comm'n*,
  732 F.3d 535 (5th Cir. 2013) ............................................................................................25

*United States v. Chadwick*,
  433 U.S. 1 (1977)...............................................................................................................16

*United States v. Cotterman*,
  709 F.3d 952 (9th Cir. 2013) (en banc) ......................................................................15, 19

*United States v. Edwards*,
  415 U.S. 800 (1974)...........................................................................................................16

*United States v. Flores–Montano*,
  541 U.S. 149 (2004)...........................................................................................................14

*United States v. LeIkowitz*,
  285 U.S. 452 (1932)...........................................................................................................19

*United States v. Miller*,
  425 U.S. 435 (1976)...........................................................................................................10

*United States v. Molina-Isidoro*,
  884 F.3d 287 (5th Cir. 2018) ......................................................................................14, 19

*United States v. Montoya de Hernandez*,
  473 U.S. 531 (1985)...............................................................................................12, 14, 18

*United States v. Ramsey*,
  431 U.S. 606 (1977)......................................................................................................13, 14

*United States v. Robinson*,
  414 U.S. 218 (1973)........................................................................................................9, 15

*United States v. Thirty-Seven (37) Photographs*,
  402 U.S. 363 (1971)...........................................................................................................13

*United States v. Vergara*,
  884 F.3d 1309 (11th Cir. 2018) ........................................................................................14

*Vernonia Sch. Dist. 47J v. Acton*,
  515 U.S. 646 (1995)......................................................................................................11, 12

*Weems v. United States*,
   217 U.S. 349 (1910)...............................................................................................................10

*Wong Sun v. United States*,
   371 U.S. 471 (1963)...............................................................................................................24

*Zurcher v. Stanford Daily*,
   436 U.S. 547 (1978)...............................................................................................................23

**Statutes and Court Rules**

5 U.S.C. § 706(2) ...........................................................................................................................23

19 U.S.C. § 482(a) .........................................................................................................................13

Act of July 31, 1789, 1 Stat. 29.....................................................................................................13

Act of July 31, 1789, 1 Stat. 43.....................................................................................................13

Fed. R. Civ. P. 56(c) .....................................................................................................................23

Fed. R. Crim. P. 4.1 ......................................................................................................................20

**Other Authorities**

Daniel J. Solove, *The First Amendment as Criminal Procedure*,
   82 N.Y.U. L. Rev. 112 (2007) ...............................................................................................22

Matthew B. Kugler, Comment, *The Perceived Intrusiveness of Searching
Electronic Devices at the Border: An Empirical Study*,
   81 U. Chi. L. Rev. 1165 (2014) .............................................................................................18

**INTRODUCTION**

Every day more than a million people cross America's borders.  Those borders include the land borders with Mexico and Canada and the functional borders at airports like Dallas-Fort Worth.  Almost all of those who cross the border carry cell phones—devices that contain private and sensitive information ranging from personal, financial, and medical data, to attorney-client-privileged documents.

According to the Department of Homeland Security (DHS), and its sub-agencies Customs and Border Protection (CBP) and Immigrations and Customs Enforcement (ICE), every time a traveler passes through customs, border agents may not only seize any cell phone the traveler is carrying, but also may rummage through its digital contents—all without a warrant or even individualized suspicion.  Furthermore, agents may undertake those warrantless, suspicionless examinations not only briefly at customs checkpoints, but may, without a warrant, hold and search a cell phone for an extended period, or even download and store all of the data on the phone for future inspection, or for sharing potentially with anyone.

This case concerns whether granting border agents such a new entitlement comports with the Fourth Amendment.  The stakes could not be higher:  Americans use cell phones to generate and store a vast array of their most sensitive thoughts, communications, and expressive material.  Because the core purpose of the Fourth Amendment has always been to safeguard such personal and professional information from exploratory searches, this Court should hold that even when travelers cross the border, government agents may not search their phones' digital contents without first obtaining a warrant or, at the very least, without individualized suspicion.

Because a warrant is required before a cell phone may be searched, the Court should vacate and set aside CBP and ICE's unlawful policies.  It should further order CBP and ICE to destroy any data that it has seized without a warrant or individualized suspicion from Plaintiff

1

George Anibowei and certify that it has done so.  At minimum, the Court should grant Mr.
Anibowei a preliminary injunction against future warrantless or suspicionless searches of his cell
phone at the border.

## BACKGROUND

### A.  The Defendants' Policies

Defendants are the heads of the Department of Homeland Security (DHS), Customs and
Border Protection (CBP), Immigration and Customs Enforcement (ICE), and the Transportation
Security Administration (TSA), and the agencies themselves.  Verified Second Amended
Complaint, ECF No. 59 ("SAC") ¶¶ 28-36.  Defendants are responsible for the challenged
searches, seizures, practices, and policies at issue in this case.  *Id.* ¶¶ 2-4, 125-26.  CBP and ICE
issued policies that expressly authorized the challenged seizures and searches.  *Id.* ¶¶ 47-
53.  Those policies do not require a warrant or probable cause to believe that a cell phone
contains contraband or evidence of a violation of immigration or customs laws before
authorizing agents to search it.  *Id.*  The policies do not even require reasonable suspicion.  *Id.*

Until 2018, ICE and CBP's policies authorized officers to "examine electronic devices"
and "review and analyze the information encountered at the border"—"with or without
individualized suspicion."  *Id.* ¶ 50.  The policies also authorized ICE and CBP to retain devices
and data indefinitely.  *Id.*

On January 4, 2018, more than a year after Mr. Anibowei filed this lawsuit, CBP issued a
new directive superseding its 2009 directive: CBP Directive No. 3340-049A (Jan. 4, 2018) (the
"2018 Policy").  *Id.* ¶ 53.  ICE has not issued a comparable new policy.  *Id.* ¶ 54.  The 2018 CBP
Policy still authorizes agents to perform what CBP calls "basic searches" of cell phones without
any individualized suspicion.  *Id.* ¶ 57.  A basic search is by no means "basic."  The policy
authorizes officers to command travelers to unlock their phones and present them for inspection,

2

and it authorizes officers to access all content and communications stored on the device. *Id.* ¶¶ 57. 61. And an agent conducting a basic search "may examine an electronic device and may review and analyze information" on it. *Id.* ¶ 57.

The 2018 Policy also authorizes agents to conduct "advanced searches" where there is reasonable suspicion or "a national security concern." *Id.* ¶ 58. An advanced search involves connecting "external equipment, through a wired or wireless connection, to an electronic device not merely to gain access to the device, but to review, copy, and/or analyze its contents." *Id.* Data seized during an advanced search is subject to an elaborate data-retention policy that uses both the passage of time and the content of the data to determine whether and how long government agents may retain the data and with whom they may share it. *See id.* ¶¶ 63-71.

No policy issued by DHS, ICE, CBP, or TSA requires agents to obtain a warrant before searching a cell phone in any manner, whether that involves hunting through its digital contents by hand (*i.e.*, a basic search) or using advanced forensic tools to copy and inspect its contents (*i.e.*, an advanced search).

### B. Plaintiff George Anibowei

Plaintiff George Anibowei is a naturalized U.S. citizen and an attorney in Texas. SAC ¶¶ 81-84. A significant number of his clients are immigrants in removal proceedings adverse to DHS, and Mr. Anibowei regularly uses his smartphone to engage in sensitive and confidential communications with his immigration clients. *Id.* ¶¶ 18, 83, 104. Both his work and personal cell phones contain confidential client communications. *Id.* ¶¶ 105-06.

Mr. Anibowei is a frequent traveler. *Id.* ¶¶ 85, 109. He typically travels to Nigeria several times a year to visit his brothers and sisters who still live there, as well as his extended family and friends. *Id.* ¶ 85. He also regularly travels elsewhere in Africa and is also a frequent

tourist in Europe and the Caribbean.  *Id*.  Starting in 2014, government agents began subjecting Mr. Anibowei to extensive secondary screening nearly every time he traveled.  *Id.* ¶¶ 87-90.

On October 10, 2016, border agents at Dallas-Fort Worth airport seized Mr. Anibowei's cell phone as he was returning to the Dallas area after a weekend visiting his best friend in Toronto.  *Id.* ¶ 98.  Acting without a warrant, the agents searched the cell phone and copied the data on it.  *Id.* ¶¶ 16, 20, 100-02.  To the best of Mr. Anibowei's knowledge, the agents are still in possession of the data.  *Id.* ¶ 105.  Because of that search, Mr. Anibowei stopped carrying his work phone with him on international trips.  *Id*.

In the years since the October 10, 2016 search, Mr. Anibowei's phone has been searched without a warrant at least four additional times by officers of DHS.  *Id.* ¶ 107.  A cell phone search on February 12, 2017, was typical.  *Id.* ¶ 108.  Mr. Anibowei was returning from a visit to his friends and relatives in Nigeria, and was put into secondary inspection upon returning to the Dallas-Fort Worth Airport.  *Id.*  In secondary inspection, TSA agents performed an extremely thorough search of all of Mr. Anibowei's luggage and asked to see his phone.  *Id.*  A TSA agent then performed an extensive warrantless search of Mr. Anibowei's phone in front of him.  *Id.* Mr. Anibowei believes that the officer viewed his text messages, as well as encrypted messages he sent and received through WhatsApp (a texting application very popular globally).  *Id.* Because Mr. Anibowei's email is not password protected on his phone, it is possible the officer viewed Mr. Anibowei's email, too.  *Id.*

All told, Mr. Anibowei has had his cell phone searched without a warrant at least five times by government agents, beginning with the first search and seizure in 2016.  *Id.* ¶ 17.  In four of these instances, Mr. Anibowei saw the agent search his text messages and other

communications.  *Id.*  Each of these searches was authorized by the 2009 ICE and CBP policies.
*Id.*  Each of these searches would similarly be authorized by the 2018 CBP policy.  *Id.*

Mr. Anibowei intends to continue traveling internationally to visit his family in Nigeria
and for pleasure, *id.* ¶ 112, and to visit his best friend in Toronto.  Further, even though Mr.
Anibowei has made the decision to stop carrying his work cell phone with him on international
trips out of fear it will be searched, *id.* ¶ 105, Mr. Anibowei has no choice but to continue
carrying his personal cell phone with him when he travels, *id.* ¶ 106.  To stop carrying his
personal phone would render Mr. Anibowei completely inaccessible in either a personal or work
emergency.  *Id.*  Based on his experiences recounted above, Mr. Anibowei reasonably believes
that government agents will search his cell phone again without a warrant whenever he travels
internationally.  *Id.* ¶ 113; *see id.* ¶¶ 105, 110-12.

### C.  Procedural History

On October 10, 2016, border agents seized and searched Mr. Anibowei's cell phone, and
copied its digital contents, all without a warrant.  SAC ¶ 16.  Two months later, on December 23,
2016, Mr. Anibowei, acting *pro se*, brought this lawsuit, alleging that the October 2016 search
and continued retention and dissemination of information taken from his phone violated the First
and Fourth Amendments.  *See* Complaint, ECF No. 1.  He sought a declaration and injunction to
halt future searches absent reasonable suspicion and return all data obtained from cell phone, and
an order directing the government to inform him whether the government disclosed his data to
other agencies or third parties.  *See id.* pp. 16-17.  Two months later, on February 12, 2017,
government agents searched Mr. Anibowei's cell phone *again* without a warrant as he returned
from a different international trip.  SAC ¶ 108.

On March 6, 2017, Defendants moved to dismiss the complaint, arguing that Mr.
Anibowei lacked Article III standing and that his claims failed on the merits.  *See* Motion to

Dismiss, ECF No. 5.  On March 25, 2017, Mr. Anibowei amended his complaint to add, among other things, factual allegations concerning the second warrantless search of his cell phone.  *See* Am. Compl., ECF No. 8, ¶¶ 38-40.  On April 4, 2017, Defendants moved to dismiss the amended complaint, again contending that Mr. Anibowei lacked Article III standing and that his claims failed on the merits.  *See* Mot. to Dismiss First Am. Compl., ECF No. 13.  The Court referred the motion to a magistrate judge the following week.  *See* ECF No. 14.  Over the ensuing months, the parties briefed the motion.  *See* Pl.'s Opp., ECF No. 17; Defs.' Reply, ECF No. 18.

On December 15, 2017, the magistrate judge recommended that the Court hold that Mr. Anibowei has Article III standing, but dismiss his case for failure to state a claim on non-merits grounds.  *See* Magistrate's Recommendation, ECF No. 19.  Defendants objected, arguing that if Mr. Anibowei has standing the court *must* reach the merits of his First and Fourth Amendment claims.  *See* Defs.' Objections to Magistrate's Recommendation, ECF No. 20.[1]  On March 27, 2018, the Court adopted the magistrate judge's determination that Mr. Anibowei has standing, but again referred the case to the magistrate judge to address the merits of Mr. Anibowei's claims for injunctive relief.  *See* Mem. Op. & Order, ECF No. 26.

On October 19, 2018, the magistrate judge issued a new recommendation, this time recommending dismissal on sovereign-immunity grounds.  *See* Magistrate's Supplemental Findings & Recommendation, ECF No. 29.  On February 14, 2019, the Court issued a Memorandum Opinion and Order based on the magistrate judge's recommendation. The Court invited Mr. Anibowei to re-plead if he believed that he had a basis for overcoming sovereign immunity.  Mem. Op. & Order, ECF No. 36.

---

[1] A few days later, CBP adopted the 2018 Policy.  *See* CBP Directive No. 3340-049A (Jan. 4, 2018).

Mr. Anibowei then retained counsel.  And a month after the District Court issued its

opinion and order, on March 14, 2019, Mr. Anibowei filed a Verified Second Amended

Complaint.  *See* Verified Second Am. Compl., ECF No. 59.

## ARGUMENT

The border search exception to the warrant requirement does not extend to the

warrantless search of the digital contents of a cell phone.  The Supreme Court held in *Riley v.

California*, 573 U.S. 373 (2014), that cell phones are so different from any other effects routinely

carried on the person that the traditional exceptions to the warrant requirement must be

considered anew to determine whether they "extend" to cell phones.  There is no justification for

extending the border search exception to searches of the digital contents of cell phones.

Searching the digital contents of a cell phone furthers none of the governmental interests that

justify the border search exception and such searches impinge on personal privacy to an

unprecedented and unconstitutional degree.

The purpose of the border search exception is to prevent the smuggling of physical

contraband into the United States.  Cell phone searches do not advance that interest.  Unlike

physical items inside of a container, the digital contents of a cell phone are categorically

incapable of being physical contraband.  And once border agents have seized and secured a cell

phone, there is no risk that the traveler might destroy or alter its digital contents.  In any event,

warrants are easier for border agents to obtain than ever before, and could be issued within only a

few minutes of a seizure, by email or over the phone.

Searching text, photo, and video files within cell phones—as border agents did here and

routinely do to thousands of travelers—severely impinges on personal privacy.  Such files hold

exponentially greater amounts and types of sensitive personal information than any physical item

7

an arrestee could carry on his person.  Moreover, much of that information implicates First Amendment concerns, such as free expression and associational interests.

Indeed, subjecting cell phones seized at the border to exploratory searches at the whim of border agents strikes at the heart of the Fourth Amendment's fundamental concerns. The Framers incorporated the prohibition against unreasonable searches into the Bill of Rights primarily in response to the odious colonial-era practice of executing general warrants—warrants that enabled officers to rummage through people's homes and offices for whatever incriminating items they might find.  Such searches were deemed particularly problematic when directed at people's "private papers" or other expressive documents.

Searching through a cell phone's texts, emails, photos, and videos is the modern equivalent of such a general search.  Before the development of cell phones, people kept the information stored on such devices—if it existed in tangible form at all—only in the most private recesses of their homes or offices, safely beyond the reach of any search that might occur incident to crossing the border.  The information on cell phones is also profoundly expressive.  It reveals the thoughts, wonders, and concerns of a phone's owner—as well as of those with whom the owner has interacted in various ways.  The protection the Fourth and First Amendments have always afforded to such writings and other expression should not evaporate—more than two hundred years after the Founding—simply because that information can now be reduced to electronic charges in a computer chip and carried in one's pocket.

Even if border agents could inspect the surface-level contents of a cell phone, opening the emails, text messages, and photo libraries contained in them without a warrant independently violates the First and Fourth Amendments.  Those areas of digital life are intensely private and

8

courts across the country have held that *information* must remain shielded from government agents' prying eyes absent a warrant authorizing the intrusion.

Because it is undisputed that ICE and CBP's policies permit warrantless cell phone searches, and that Mr. Anibowei's data was taken pursuant to such a warrantless search, the court should grant Mr. Anibowei summary judgment, vacate ICE and DHS's unlawful policies, and order his data destroyed.  At minimum, the court should grant Mr. Anibowei a preliminary injunction to protect him from future warrantless searches.

## I.     ICE and CBP's Policies Are Unlawful.

### A.  By Authorizing Warrantless Cell Phone Searches, The Electronics Search Policies Violate the Fourth Amendment.

### 1.  *Riley* Held that Cell Phones Are So Different From Other "Effects" that Courts Must Consider Whether to "Extend" Existing Exceptions to the Warrant Requirement to Them.

*Riley* held that cell phones may not be searched incident to arrest without a warrant.  573 U.S. at 386.  But the way it reached its holding is important.  The Court considered how the canonical case articulating the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement—*United States v. Robinson*, 414 U.S. 218 (1973)—applied to cell phones. The Court stated:  "We … <u>decline to extend</u> *Robinson* to searches of data on cell phones, and hold instead that officers must generally secure a warrant before conducting such a search." *Riley*, 573 U.S. at 386 (emphasis added).  That language is important.  It means the Court did not overrule any aspect of *Robinson*.  Rather, it held that *Robinson* should *not be extended* to apply to cell phones.

This language, crafted by the Chief Justice, is no anomaly.  The Court, again through the Chief Justice, used the same language recently in *Carpenter v. United States*, when it held that law enforcement must obtain a warrant to obtain historical cell site information.  138 S. Ct. 2206,

9

2217 (2018).  After discussing the two canonical third-party-doctrine cases—*Smith v. Maryland*, 442 U.S. 735 (1979) and *United States v. Miller*, 425 U.S. 435 (1976) —the Court stated:  "We decline to extend *Smith* and *Miller* to cover these novel circumstances."  *Carpenter*, 138 S. Ct. at 2217 (emphasis added).

*Riley* thus held that cell phones are unique.  *See* 573 U.S. at 393.  They were never subject to the search-incident-to-arrest exception in the first place.  *See id.* at 386.  *Riley* held that courts must assess whether traditional exceptions to the warrant requirement "extend" to cell phones.  *See id.*  One cannot read *Riley* without concluding that cell phones are fundamentally different than anything that has come before.  *See, e.g.*, *id.* at 385, 396-97.

*Riley* is of a piece with the Supreme Court's guidance concerning the Fourth Amendment and emerging technologies.  The Court has repeatedly advised that "it would be foolish" to contend that the Fourth Amendment cannot take account of "the advance of technology."  *Kyllo v. United States*, 533 U.S. 27, 33-34 (2001).  When a modern innovation gives law enforcement the ability to obtain personal information formerly beyond its reach, that "practical" reality requires courts to assess the legality of the search not only in light of prior case law but, more generally, in terms of the timeless concerns underlying the Fourth Amendment.  *See Carpenter*, 138 S. Ct. at 2214 (cell site location data); *Kyllo*, 533 U.S. at 33-34 (infrared imaging); *Katz v. United States*, 389 U.S. 347, 352-53 (1967) (listening in on telephone calls).  "Under any other [approach] a constitution would indeed be as easy of application as it would be deficient in efficacy and power.  Its general principles would have little value and be converted by precedent into impotent and lifeless formulas."  *Weems v. United States*, 217 U.S. 349, 373 (1910).

Thus, the courts must remain ever alert to "assure[] preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted."  *Carpenter*, 138 S.

Ct. at 2214 (quoting *Kyllo*, 533 U.S. at 34).  That obligation requires the courts to judge the legality of warrantless searches of a sort that the Framers could not have contemplated, and that the courts have never considered under the traditional Fourth Amendment inquiries of (1) whether the searches further any legitimate governmental interest; and (2) the degree to which such searches impinge upon personal privacy.  *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652-53 (1995).  Law developed with only physical objects in mind cannot be woodenly applied to digital files containing virtually limitless amounts of information—especially when most of that information would formerly have been stored in places, such as one's home, that were safe from government intrusion without a warrant.

Accordingly, the fact that the border search exception has been around for a long time is immaterial to whether it justifies the warrantless search of cell phones.  The search-incident-to-arrest exception was law for more than 40 years before *Riley* determined it did not extend to cell phones.  The third-party doctrine was also law for more than 40 years before *Carpenter* held that it did not extend to cell site location data.  Courts crafted the "border search exception" to the Fourth Amendment's warrant requirement more than 200 years ago, for a world without cell phones and in a world where cell phones could not even have been imagined, to allow border agents to engage in routine searches for contraband at the border.  A doctrine developed to allow customs agents to search the cargo holds of clipper ships is no support for searching private individuals' cell phones at international airports and reading the emails on them.

*Riley* also shows that it is a mistake to try directly to analogize cell phone searches to other kinds of border searches and to try to classify cell phone searches as more like searches of the body or searches of luggage or vehicles.  Cell phone searches are cell phone searches.  They defy easy analogy.  Warrantless body searches at the border, like the body cavity searches

11

authorized in *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985), are nothing like cell phone searches.  On the one hand, searching the data on a cell phone cannot turn up drugs, weapons, or other contraband, whereas searching luggage, or the human body, can.  On the other hand, searching a cell phone is often tantamount to "ransacking [a man's] house for everything which may incriminate him," *Riley*, 573 U.S. at 396, whereas no search of luggage or even of the body, no matter how intrusive, can reveal information at once so extensive and so intimate.

Thus, the burden here is on *the government* to establish that the border search exception extends to cell phones.  That it cannot do.  Given that (1) warrantless searches of cell phones do not advance the government's special interests at the border; (2) cell phone searches impinge upon personal privacy to an unprecedented degree; (3) cell phones are ubiquitous and many individuals cannot go without them; (4) once a cell phone is seized border agents have ample time to obtain a warrant; (5) applying warrants to cell phone searches at the border would advance the core purpose of the warrant requirement; and (6) warrants are easier to obtain than ever before, there is simply no good reason to extend the border search exception to cell phones. Consequently, the Fourth Amendment's border search exception doctrine should not be extended to warrantless cell phone searches.

### 2. There Is No Justification for Extending the Border Search Exception to the Warrant Requirement to Searches of Cell Phones

#### a. Warrantless Cell Phones Searches at the Border Are Unnecessary To Serve Any Legitimate Governmental Interest

"[E]very case addressing the reasonableness of a warrantless search [begins] with the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant,* 556 U.S. 332, 338 (2009) (quoting *Katz,* 389 U.S. at 357); *see also Acton,* 515 U.S. at 653 ("Where a search is

undertaken by law enforcement officials to discover evidence of criminal wrongdoing, this Court

has said that reasonableness generally requires the obtaining of a judicial warrant.").  Among the

exceptions to the warrant requirement is the "border-search exception."  *United States v. Ramsey*,

431 U.S. 606, 620 (1977).

The border search exception is "an old practice and is intimately associated with

excluding illegal articles from the country."  *United States v. Thirty-Seven (37) Photographs*, 402

U.S. 363, 376 (1971); 5 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth*

*Amendment* § 10.5(a) (5th ed. 2018) (noting that the purposes of the border search exception are

"to identify citizenship, collect payment on dutiable good, and prevent the importation of

contraband").  The First Congress authorized customs officials to search for and seize "goods,

wares, and merchandises" that may be concealed in ships entering the country to avoid duties; it

did not provide that authority to obtain evidence of crimes other than the contraband itself.  Act

of July 31, 1789, 1 Stat. 29.  The Supreme Court has long cited that statute, passed by the same

Congress that proposed the Fourth Amendment, as a reason why warrantless border searches are

not "unreasonable" within the meaning of the Constitution.[2]  *Boyd v. United States*, 116 U.S.

616, 623-24 (1886); *see also Ramsey*, 431 U.S. at 617; *Carroll v. United States*, 267 U.S. 132,

150-51 (1925).  The modern version of this customs law is limited to the search and seizure of

actual objects that are being imported unlawfully.  *See* 19 U.S.C. § 482(a).  And every border-

search case the Supreme Court has decided involved searches to locate items being smuggled

into the country, whether those objects were hidden in mail, *Ramsey*, 431 U.S. at 624-25, a gas

---

[2]  The statute, though cited as part of the pedigree supporting suspicionless border searches, only gives collectors the power to enter ships "in *which they shall have reason to suspect* any goods, wares or merchandise subject to duty shall be concealed." Act of July 31, 1789, 1 Stat. 43 (emphasis added).

tank, *United States v. Flores–Montano*, 541 U.S. 149, 155-56 (2004), or a person's stomach, *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985).

At the same time, the Supreme Court has stressed that, like all Fourth Amendment searches, searches undertaken pursuant to the border search exception are "subject to substantive limitations imposed by the Constitution." *Ramsey*, 431 U.S. at 620. Border searches are subject to the Fourth Amendment and must be "reasonable" in light of "all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Montoya de Hernandez*, 473 U.S. at 537-38. Thus, "a border search might be deemed 'unreasonable'" in light of the facts and surrounding circumstances. *Ramsey*, 431 U.S. at 618 n.13; *see also Montoya de Hernandez*, 473 U.S. at 541 & n.4.

Such is the case here: The digital contents of a smart phone cannot carry physical contraband and thus does not implicate the fundamental purposes underlying the border search exception. *See United States v. Molina-Isidoro*, 884 F.3d 287, 294–97 (5th Cir. 2018) (Costa, J., specially concurring) (questioning whether warrantless cell phone searches at the border can be justified by any interest unique to the border); *United States v. Vergara*, 884 F.3d 1309, 1317 (11th Cir. 2018) (Pryor, J., dissenting) (concluding that the border search exception does not permit warrantless forensic searches of electronics).

     i.  **Digital Data Does Not and Cannot Contain the "Contraband" The Border Search Exception Exists to Find**

Once border agents seize a smart phone and have it securely in their possession, it is perfectly reasonable for officers to inspect the physical components of the phone (including any protective cover or case) to ensure that it does not contain contraband or otherwise pose a threat. But once that task is complete, there is no need to examine a phone's digital contents to protect against the importation of contraband into the United States. Data lacks the one characteristic of

14

physical goods that justifies the border-search exception, namely, that because they are tangible, they have to physically cross the border *somewhere*.  Data can get into the United States over the internet or even wirelessly.  There is almost no reason to believe anyone would ever intentionally smuggle data into the United States on a cell phone itself, as opposed to over the internet.  Thus, even to the degree the government might try to argue that there can be such a thing as "digital" contraband (contraband being defined as illicit "goods"), the notion that every traveler should be vulnerable to having his "digital life … hijacked simply by crossing a border," *United States v. Cotterman*, 709 F.3d 952, 965 (9th Cir. 2013) (en banc), because some people might have "digital" contraband on their phones is absurd—the very definition of *unreasonable.*

In any event, the Court should hew closely to the historical underpinnings of the border search exception to physical contraband.  The Supreme Court has cautioned that precedential force of any given Fourth Amendment decision depends "on the concrete factual context of the individual case." *Sibron v. New York*, 392 U.S. 40, 59 (1968); *see also Roaden v. Kentucky*, 413 U.S. 496, 501 (1973) ("A seizure reasonable as to one type of material in one setting may be unreasonable in a different setting or with respect to another kind of material.").  In *Riley*, for instance, the State of California argued—based on categorical-sounding language in the Supreme Court's decision in *Robinson*—that the Fourth Amendment permitted the warrantless search of an arrestee's cell phone incident to arrest because "it is the fact of custodial arrest which gives rise to the authority to search." *Robinson*, 414 U.S. at 236 (1973).  The Supreme Court rejected that argument because "[a] search of the information on a cell phone bears little resemblance to the type of brief physical search considered in *Robinson*." 573 U.S. at 386.

No decision by the Supreme Court or the Fifth Circuit has yet severed the border search exception from its conceptual underpinnings.  It remains limited to permitting border agents to

search for physical contraband at the border without a warrant. There is zero chance that the digital contents of a smart phone can be physical contraband. Unlike a traveler's luggage, vehicle, or even a traveler's body, a cell phone does not hold any physical objects at all. It simply stores digital data. *Riley* thus holds that once the cell phone is in the possession of border agents, the border search exception "does not apply." *Riley*, 573 U.S. at 401.

### ii. Once a Cell Phone Is Seized, There Is No Need to Search It Without a Warrant to Preserve Evidence

There is no other justification for extending the border-search exception beyond physical contraband. It is unnecessary for border agents to rummage through a cell phone's digital contents without seeking a warrant in order to prevent the destruction of evidence. Warrantless search doctrines generally permit searching an item to preserve evidence only when a seizure alone is "[in]sufficient to guard against any risk that evidence might be lost" during the hours or minutes necessary to obtain a warrant. *United States v. Chadwick,* 433 U.S. 1, 13 (1977). But police officers can now obtain warrants in a matter of hours or sometimes minutes, *Missouri v. McNeely,* 133 S. Ct. 1552, 1562-63 (2013), and travelers cannot destroy or alter a cell phone's digital contents when it is seized and secured. Thus, the prevention of the destruction of evidence is no justification for a warrantless search of cell phones at the border.

### b. The Degree of Intrusiveness of the Search of a Phone Renders Warrantless Searches Unreasonable

"As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a government search is reasonableness." *Maryland v. King,* 569 U.S. 435, 448 (2013). Therefore, even if searching the digital contents of a smart phone without a warrant served some legitimate law enforcement interest, the search in any given case "must [still] be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures." *United States v. Edwards*, 415 U.S. 800, 808 n.9 (1974) (alteration in original). This

16

reasonableness test "requires a court to weigh the promotion of legitimate governmental interests against the degree to which the search intrudes upon an individual's privacy." *King*, 569 U.S. at 448.

Conducting an exploratory search of a smart phone's text, photographic, and video files intrudes upon personal privacy to an unprecedented degree. *Riley*, 573 U.S. at 393-98.

### i. **The Privacy Interests Implicated by Cell Phones Far Exceed Those of Nearly Any Other Effect Carried on the Person**

*Riley* places cell phones within the most sensitive category of objects, implicating the highest level of privacy interests present in a Fourth Amendment context. The Court repeatedly analogized cell phones to the most sacrosanct categories in Fourth Amendment jurisprudence—a person's home and his body—and found that phones actually implicate *stronger* privacy interests. 573 U.S. at 393-98. The *Riley* Court called cell phones "such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Id*. at 385. And the Court noted that a cell phone is like a house or perhaps even *more* sensitive than a house due to the breadth and depth of information to be found there. "[A] cell phone search would typically expose to the government far *more* than the most exhaustive search of a house." *Id*. at 397. Indeed, "[a] phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is." *Id*. at 396-97.

Indeed, it is difficult to overstate the privacy interests implicated by the search of a cell phone. The privacy interests are nearly unmatched. As the Court held in *Riley*, "cell phones differ in both a quantitative and a qualitative sense from other objects that might be" searched at the border. 573 U.S. at 393. Both conclusions are undoubtedly correct. Empirical studies "show that searches of electronic devices invoke privacy and dignity concerns to the same extent

17

as body cavity and strip searches.  Specifically, electronic-device searches are more revealing of sensitive personal information and almost as embarrassing."  Matthew B. Kugler, Comment, *The Perceived Intrusiveness of Searching Electronic Devices at the Border: An Empirical Study*, 81 U. Chi. L. Rev. 1165, 1208 (2014).

### ii.  **Cell Phones Are Ubiquitous and Most People Cannot Go Without Them**

For most individuals, using a cell phone is essential to participating as a functioning member of society—there is no alternative.  *See, e.g.*, *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 760 (2010).  "Now it is the person who is not carrying a cell phone, with all that it contains, who is the exception."  *Riley*, 573 U.S. at 395-96.  Doctors need to carry phones so that they can be on call for patients who might need them.  Lawyers carry their cell phones so they can be available to clients.  Individuals from every walk and way of life now keep their cell phones close at hand at all times so that they can be available and able to communicate with others.  *Id.* Even if international travelers might once have chosen to leave the occasional private or embarrassing article at home rather than risk its exposure to government agents at the border, it is simply untenable—given cell phones' necessity and ubiquity—to expect travelers should routinely check their cell phones at the border lest they risk having the contents of their phones searched.

### iii.  **The Privacy Interests in the Digital Contents of a Cell Phone Outweigh Any Diminished Expectations of Privacy at the Border**

None of this is to deny that an individual's "expectation of privacy [is] less at the border than in the interior." *Montoya de Hernandez*, 473 U.S. at 539.  But having "less" privacy is not the same as having it completely annihilated.  Nor does the lessened expectation of privacy relieve the government of its obligation to show it has a legitimate interest in conducting warrantless cell phone searches.  Being at the border diminishes a person's privacy in, for

example, his luggage, but it does not deprive him of the Fourth Amendment's core protection against general searches through his most sensitive information. Just because someone crosses an international border does not mean that government agents would thereby gain the authority to rummage through his house. As *Riley* held, "[t]he fact that an arrestee has diminished privacy interests does not mean that the Fourth Amendment falls out of the picture entirely." 573 U.S. at 392; *see also Cotterman*, 709 F.3d at 965; *Molina-Isidoro*, 884 F.3d at 296 (Costa, J., specially concurring). Any diminished expectation of privacy at the border is far outweighed by the privacy interests implicated by rummaging at will through a cell phone that a person is carrying when travelling.

### iv. **Requiring Warrants Before Border Agents Search Cell Phones Furthers the Core Purposes of the Warrant Requirement**

The purpose of the warrant requirement is to prevent government agents from abusing their authority by weaponizing the possibility of intrusion onto an individual's privacy. Those concerns are at their zenith in the border context, where border agents already have access to immense amounts of information about many travelers and could therefore abuse their positions of power and authority to engage in searches designed to intimidate, to hassle, and to punish. "A warrant serves primarily to advise the citizen that an intrusion is authorized by law and limited in its permissible scope and to interpose a neutral magistrate between the citizen and the law enforcement officer engaged in the often competitive enterprise of ferreting out crime." *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 667 (1989); *see also United States v. Lefkowitz*, 285 U.S. 452, 464 (1932) ("Security against unlawful searches is more likely to be attained by resort to search warrants than by reliance upon the caution and sagacity of petty officers."). The need for a warrant is greatest when an officer has vast discretion that a magistrate can limit by specifying with particularity what the officer may or may not inspect.

v. **Warrants Are Easier to Obtain Than Ever Before**

Securing a warrant is far less burdensome now than it was in the 1960s and 1970s, when many of the leading Fourth Amendment cases were decided.  The Federal Rules of Criminal Procedure now allow law enforcement officers to secure valid warrants using a variety of speedy means, including by telephone and email.  Fed. R. Crim. P. 4.1; *see also Missouri v. McNeely*, 569 U.S. 141, 154 (2013).  In evaluating the balance of interests in its Fourth Amendment cases, the Supreme Court has for many years taken notice of such developments.  *See, e.g.*, *Steagald v. U.S.*, 451 U.S. 204 (1981).  And the ease of securing a warrant only increases as technology develops.  As the Supreme Court noted in *Riley*, in one jurisdiction, "police officers can e-mail warrant requests' to judges' iPads [and] judges have signed such warrants and emailed them back to officers in less than 15 minutes."  573 U.S. at 401.  Today, securing a warrant poses little obstacle to the law enforcement interests implicated in a cell phone search.

### 3.  Searching an Individual's Emails, Text Messages, and Photos Independently Requires a Warrant

Existing law directs that the warrantless search of location tracking information, email, and social media messages violates the Fourth Amendment.  At minimum, those precedents radically narrow the scope of a cell phone search that law enforcement can carry out without a warrant.

For instance, many cell phones collect and store location tracking data.  CBP and ICE officers can access this data from the phone itself by viewing a user's "location history" or "timeline" in Google Maps, or by accessing an iPhone's "Settings."  *Carpenter* recently held that such data is off-limits to law enforcement without a warrant.  138 S. Ct. at 2217, 2232-33.  *Carpenter* "declined to extend" the third-party doctrine to such information.  *Id.*  Here, the third party is not even present.  The data that CBP and ICE would search is *on the phone itself*.

20

Similarly, courts have found that email searches require a warrant, and virtually all cell phones allow email access. The Sixth Circuit's longstanding and widely cited precedent in *United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010), requires law enforcement officials to secure a warrant based on probable cause before searching an individual's emails in light of the strong privacy interests implicated in an email search. *Id.* at 284-85. Other courts have used similar reasoning to decline to extend the third-party doctrine to messages sent on social media. *See, e.g.*, *R.S. ex rel. S.S. v. Minnewaska Area Sch. Dist., No. 2149*, 894 F. Supp. 2d 1128, 1142 (D. Minn. 2012); *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 991 (C.D. Cal. 2010).

Taken together, these cases only bolster the conclusion that searching *any* of the digital content on a cell phone should require a warrant, given that existing precedent excludes from a warrantless search of cell phone much of the information on it that would be of the greatest interest to law enforcement. Because the CBP and ICE search policies do not exclude this information from the scope of an electronics search, they violate the Fourth Amendment.

## B. By Authorizing Warrantless Cell Phone Searches, The Electronics Search Policies Violate the First Amendment

The electronic search policies promulgated and enforced by Defendants, permitting government agents to search and seize First Amendment-protected expressive and associational speech without a warrant, also violate the First Amendment. These policies impermissibly chill the exercise of First Amendment freedoms.

Laws are facially invalid under the First Amendment when they cause "persons whose expression is constitutionally protected to refrain from exercising their rights." *Massachusetts v. Oakes*, 491 U.S. 576, 581 (1989); *see also Citizens United v. FEC*, 558 U.S. 310, 336 (2010) ("[A] statute which chills speech can and must be invalidated where its facial invalidity has been demonstrated."); *Lamont v. Postmaster General*, 381 U.S. 301, 307 (1965) (concluding that the

21

statute at issue was "almost certain to have a deterrent effect, especially as respects those who have sensitive positions," and thus "amount[ed] to an unconstitutional abridgement of the [individual's] First Amendment rights").

Undoubtedly, policies that permit the government collection of information "can threaten the ability to express oneself, communicate with others, explore new ideas, and join political groups." *See* Daniel J. Solove, *The First Amendment as Criminal Procedure*, 82 N.Y.U. L. Rev. 112, 121 (2007). Accordingly, "[w]hen a State seeks to inquire about an individual's beliefs and associations," it must meet the "heavy burden" of "show[ing] that the inquiry is necessary to protect a legitimate state interest." *Baird v. State Bar of Ariz.*, 401 U.S. 1, 6-7 (1971); *see also Gibson v. Fla. Legislative Investigation Comm'n*, 372 U.S. 539, 544, 556 (1963); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460-64 (1958).

Given the unique quantity and quality of the First Amendment–protected expressive and associational speech contained within electronic devices, *see Riley*, 573 U.S. at 393, government search and seizure of electronic devices threatens to curtail protected expression under the First Amendment. Accordingly, the government must meet its heavy burden to show that its current policies permitting just that are permissible under the First Amendment. It cannot do so.

"The use by government of the power of search and seizure as an adjunct to a system for the suppression of [expression] is not new." *Stanford v. Texas*, 379 U.S. 476, 484 (1965). "[W]hat this history indispensably teaches" is that the warrant requirement must be accorded the "most scrupulous exactitude" when the "things" to be searched or seized implicate the freedom of expression. *Id.* at 486. "No less a standard could be faithful to First Amendment freedoms." *Id*. Indeed, in *Stanford*, the court invalidated a warrant that implicated First Amendment freedoms because it was *not precise enough*. *Id.* "Where presumptively protected materials are

22

sought to be seized, the warrant requirement should be administered to leave as little as possible to the discretion or whim of the officer in the field." *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978); *see also New York v. P.J. Video, Inc.*, 475 U.S. 868, 174 (1986) (agreeing with *Heller v. New York*, 413 U.S. 483, 492 (1973), that requiring a magistrate to determine probable cause safeguards First Amendment interests).

In this case, the discretion afforded to officers in the field to search and seize presumptively protected materials is virtually unbridled, threatening core First Amendment expression. Given the "vast quantities of personal information literally in the hands of individuals" carrying cell phones, *Riley*, 573 U.S. at 386, the First Amendment independently demands that government agents obtain a warrant supported by probable cause before searching cell phones at the border.

## II. The Court Should Grant Partial Summary Judgment

### A. Standard of Review for a Motion for Summary Judgment

Summary judgment is appropriate if a movant establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Illusions—Dallas Private Club, Inc. v. Steen*, 482 F.3d 299, 304 (5th Cir. 2007); *see Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 184 (5th Cir. 2005)*; see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

### B. Partial Summary Judgment Is Warranted

Agency actions that violate the Constitution must be vacated. The APA requires "the reviewing court" to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(A)–(B). Federal courts therefore regularly vacate unconstitutional agency actions. *See Chamber of*

*Commerce v. U.S. Dep't of Labor*, 885 F.3d 360, 384, 388 (5th Cir. 2018); *R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205 (D.C. Cir. 2012), *overruled on other grounds by American Meat Inst. v. U.S. Dep't of Agriculture*, 760 F.3d 18 (D.C. Cir. 2014).

It is undisputed that Defendants' policies authorize border agents to rummage through the contents of a person's cell phone without a warrant supported by probable cause. The policies thus authorize unreasonable searches and seizures that violate the Fourth Amendment. They are therefore invalid and must be vacated. *See City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2449-51 (2015) (regulations that authorize unconstitutional searches are subject to facial challenge). The APA requires their vacatur. For similar reasons, Defendant's policies unlawfully authorize border agents to rummage through the contents of a person's cell phone without a probable cause or reasonable suspicion. The APA requires their vacatur for that reason as well.

It is undisputed that on October 10, 2016, Defendants searched Mr. Anibowei's cell phone without a warrant and seized the data from his cell phone without a warrant. The government's seizure is the fruit of unlawful government conduct. *See Wong Sun v. United States*, 371 U.S. 471, 484-86 (1963). Because the seizure and continued retention of Mr. Anibowei's data are "contrary to constitutional right," the government must destroy the data and certify its destruction. For similar reasons, because the search and seizure of Mr. Anibowei's data were done without probable cause or reasonable suspicion, the government must destroy the data and certify its destruction.

III.   **In the Alternative, the Court Should Grant a Preliminary Injunction**

A.  **Standard of Review for a Motion for Preliminary Injunction**

Courts grant preliminary injunctions when plaintiffs show "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the

injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Texans for Free Enterprise v. Tex. Ethics Comm'n*, 732 F.3d 535, 537 (5th Cir. 2013).

### B. A Preliminary Injunction Is Warranted

Because the undisputed facts establish that CBP and ICE's policies violate the Constitution and the APA, this Court should enter summary judgment and vacate the policies. But if the court believes any material disputes of fact preclude summary judgment, it should, at a minimum, grant a preliminary injunction to prevent Defendants from enforcing the CBP and ICE Policies against Mr. Anibowei and to direct Defendants to return or destroy any of his data copied from his devices. Because Mr. Anibowei has shown that he is entitled to summary judgment on his statutory and constitutional claims, he has necessarily shown a high likelihood of success on the merits of those claims. The other three factors overwhelmingly support a preliminary injunction requiring Defendants to delete or return Mr. Anibowei's data and preventing them from conducting warrantless electronic-device searches at ports of entry: Mr. Anibowei faces the irreparable injury of his private information and confidential attorney-client communications being exposed to government agents, and Defendants have no legitimate interest whatsoever in enforcing unconstitutional policies, *see supra* section I.A.2. In short, because the CBP and ICE policies continue to threaten to violate Mr. Anibowei's First and Fourth Amendment rights, the Court should enter a preliminary injunction to protect his rights.

### CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion for summary judgment, or, in the alternative, motion for a preliminary injunction.

Dated: April 16, 2019              Respectfully submitted,

                        **ARNOLD & PORTER**
                           **KAYE SCHOLER LLP**

By: * /s/ Andrew Tutt*
     Andrew Tutt (*pro hac vice*)
     Robert Stanton Jones (*pro hac vice*)
     Stephen K. Wirth (*pro hac vice*)
     Sam Callahan (*pro hac vice*)
     Graham W. White (*pro hac vice*)
     Jayce Lane Born (*pro hac vice*)
     ARNOLD & PORTER KAYE SCHOLER LLP
     601 Massachusetts Ave., NW
     Washington, DC 20001
     (202) 942-5000
     (202) 942-5999 (fax)
     andrew.tutt@arnoldporter.com

     Hani Mirza (State Bar No. 24083512)
     TEXAS CIVIL RIGHTS PROJECT
     1412 Main St., Suite 608
     Dallas, Texas 75202
     (972) 333-9200 ext. 171
     (972) 957-7867 (fax)
     hani@texascivilrightsproject.org

     Peter Steffensen (*pro hac vice*)
       (State Bar No. 24106464)
     TEXAS CIVIL RIGHTS PROJECT
     405 Main Street, Suite 716
     Houston, Texas 77002
     (832) 767-3650
     (832) 554-9981 (fax)
     natalia@texascivilrightsproject.org

     *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the date of electronic filing.

*/s/ Andrew Tutt*

Andrew Tutt
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
andrew.tutt@arnoldporter.com