IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GEORGE ANIBOWEI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:16-CV-3495-D |
| | § | |
| ALEJANDRO MAYORKAS, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Defendants—including U.S. Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), and U.S. Immigration and Customs Enforcement ("ICE") (collectively, "defendants")[1]—move to dismiss Count VI of plaintiff George Anibowei's ("Anibowei's") second amended complaint: the remaining claim that Anibowei brings under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A)-(B), seeking vacatur of three directives promulgated by CBP and ICE, and declaratory and injunctive relief against the departments and agencies and the individual department and agency heads in their official capacity.[2]  Defendants move to dismiss Count VI for lack of subject matter

---

[1]The other defendants are: Secretary of Homeland Security Alejandro Mayorkas, in his official capacity; Troy A. Miller, Senior Official Performing the Duties of the Commissioner for CBP, in his official capacity; Patrick J. Lechleitner, Deputy Director and Senior Official Performing the Duties of the Director for ICE, in his official capacity; and Attorney General Merrick Garland, in his official capacity

[2]Anibowei initially brought seven claims for relief, including under the First and Fourth Amendments, but he voluntarily dismissed with prejudice all claims other than count VI, his APA claim, on June 17, 2024.

jurisdiction and failure to state a claim on which relief can be granted. It appears that Anibowei is essentially conceding that he will lose if this court reaches the merits, but he is attempting to avoid dismissal for lack of jurisdiction so that the merits will be at issue on appeal. For the reasons that follow, the court grants defendants' motion and dismisses Count VI of Anibowei's second amended complaint for lack of subject matter jurisdiction. Alternatively, the court dismisses Count VI for failure to state a claim on which relief can be granted.

I

Anibowei, a lawyer, is a naturalized U.S. citizen who was born in Nigeria. He owns a small law practice where he primarily handles immigration matters. Anibowei travels several times a year, often internationally, for both work and personal reasons. In October 2016 CBP officers at the Dallas-Fort Worth International Airport seized Anibowei's work cell phone, without his consent or a search warrant, and advised Anibowei that they were going to copy the hard drive. When Anibowei protested, the officers gave him a flyer explaining their legal authority to search and seize his phone under CBP Directive No. 3349-049, Border Search of Electronic Devices Containing Information (Aug. 20, 2009) ("2009 CBP Directive"). Anibowei's work cell phone contains sensitive information about his clients and their cases, including call logs, voice mails, text messages, and an archive of Anibowei's work emails with drafts of confidential filings and other information involving

removal proceedings adverse to DHS.[3]

At the time of filing his second amended complaint, CBP agents had searched Anibowei's phone at least four additional times. He intends to continue traveling internationally, but he now does so without his work phone because of the risk of further invasions of his and his clients' privacy. He continues to carry his personal phone when he travels, which also has access to his work email.

Anibowei seeks vacatur of three directives: the 2009 CBP Directive, CBP Directive No. 3340-049A, Border Search of Electronic Devices (Jan. 4, 2018) ("2018 CBP Directive"), and ICE Directive 7-6.1, Border Searches of Electronic Devices (Aug. 18, 2009) ("2009 ICE Directive") (collectively, "Directives"). He also seeks a declaration that defendants' policies and practices violate the First and Fourth Amendments by authorizing searches of electronic devices absent a warrant supported by probable cause; a declaration that they violated his First and Fourth Amendment rights by searching his devices absent a warrant supported by probable cause; an injunction ordering defendants to expunge information gathered from or copies made of the contents of his devices; an injunction against enforcement of the agency policies against himself and across the board; and reasonable attorney's fees and costs and other such relief that the court deems proper.

The court has heard oral argument.

---

[3]CBP is a component of DHS.

II

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). When challenging subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), a party can make a facial attack or a factual attack. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981). If, as here, the party merely files a Rule 12(b)(1) motion, the attack is considered facial, and the court looks only at the sufficiency of the allegations in the complaint and assumes them to be true. *Id.* If the allegations are sufficient to allege jurisdiction, the court must deny the motion. *Id.* This is akin to a Rule 12(b)(6) motion in that the "pleading's allegations are presumed to be true, and '[i]f those allegations sufficiently allege a claim for recovery the complaint stands and the federal court must entertain the suit.'" *Vinmar Overseas, Ltd. v. OceanConnect, LLC*, 2012 WL 3599486, at *4 (S.D. Tex. Aug. 20, 2012) (Rosenthal, J.) (alteration in original) (quoting *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 286 (N.D. Tex. 2012) (Boyle, J.)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiffs' . . . complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (internal quotation marks and

alteration omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).  To survive defendants' motion, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

III

The court begins with defendants' assertion under Rule 12(b)(1) that this court does not have subject matter jurisdiction over Anibowei's APA claim.  Defendants contend that the court lacks jurisdiction because: (1) Anibowei's challenges to the Directives are moot; (2) his alleged injuries would not be redressed by his requested relief; (3) the Directives do not constitute final agency actions such that there is jurisdiction under the APA; and (4) Anibowei has an adequate alternative remedy to APA judicial relief, meaning there is no

jurisdiction under the APA.

A

The court turns first to defendants' contention that Anibowei's claim is moot with respect to the 2009 CBP Directive and the 2009 ICE Directive because each has been superseded.[4]

1

Article III of the Constitution limits federal judicial power to cases and controversies. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," *id.* at 396 (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)), or "[i]f a dispute has been resolved or if it has evanesced because of changed circumstances, including the passage of time," *Am. Med. Ass'n v. Bowen*, 857 F.2d 267, 270 (5th Cir. 1988). A claim against an agency regulation or other directive may become moot if the agency repeals the offending pronouncement. *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020). If an agency repeals a challenged directive but then replaces it with a substantially similar one, there is no mootness because the injury remains. *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374 (5th Cir. 2022). The issue is whether the court can still order "effectual relief . . . to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (citation and internal quotation marks omitted).

―――――――――――――――

[4]Anibowei does not contest defendants' assertion that the claim for vacatur of the 2009 CBP Directive is moot because it has been superseded by the 2018 CBP Directive.

2

The parties do not dispute that the 2018 CBP Directive remains in effect. Additionally, the 2009 ICE Directive remains in effect except to the extent that it has been superseded by supplemental ICE guidance, *see* Ds. App. (ECF No. 125) at 33-34.  The section Anibowei challenges—which allows searches and seizures of electronic devices without a warrant and probable cause—is modified by ICE Supplemental Guidance, Legal Update - Border Search of Electronic Devices (May 11, 2018) ("2018 ICE Guidance").  Ds. App. (ECF No. 125) at 33-34.  The 2018 ICE Guidance replaces the policy in the 2009 ICE Directive allowing searches and seizures of electronic devices with or without individualized suspicion, *see* Ds. App. (ECF No. 125) at 24, with the requirement that agents "should no longer perform advanced border searches of electronic devices without reasonable suspicion," *id*. at 33-34.  Because Anibowei challenges the policy allowing searches and seizures of devices without a warrant or probable cause, and both the original and updated versions of the policy allow for such searches and seizures, the challenge is not moot to the extent that the original policy has been replaced with a substantially similar one.  *See Franciscan All., Inc.*, 47 F.4th at 374. Therefore, Count VI of Anibowei's second amended complaint should not be dismissed based on mootness.

B

The court turns next to defendants' assertion that Anibowei lacks standing because his alleged injuries would not be redressed by vacatur of the Directives.

1

"[T]he requirement that a claimant have 'standing is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. These elements are (1) an injury-in-fact that is concrete and actual or imminent, not hypothetical; (2) a fairly traceable causal link between the injury and the defendant's actions; and (3) that the injury will likely be redressed by a favorable decision. *See, e.g.*, *Bennett v. Spear*, 520 U.S. 154, 167 (1997); *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009).

Defendants maintain that Anibowei's alleged injury is not redressable via the requested remedies because, even if the Directives are vacated, government agents still retain the power to search electronic devices at the border without a warrant because the Directives are not the source of that authority. Rather, defendants contend, it is the "plenary authority of the Federal Government to conduct searches and inspections" at the border that authorizes these searches. Ds. Br. (ECF No. 124) at 13.

To satisfy the redressability prong of standing, the plaintiff must show a "substantial likelihood that the relief requested will redress the injury." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (internal quotation marks and citation omitted). A plaintiff must demonstrate redressability for each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc*., 528 U.S. 167, 185 (2000). The plaintiff "need not show that a favorable decision will relieve . . . *every* injury." *Larson v.*

*Valente*, 456 U.S. 228, 243 n.15 (1982). Instead, a "substantial likelihood" that the requested relief will redress the alleged injury is enough. *Duke Power Co. v. Caroline Env't Study Grp., Inc.*, 438 U.S. 59, 79 (1978); *see also Sanchez v. R.G.L.*, 761 F.3d 495, 506 (5th Cir. 2014) (holding that a plaintiff "need only show that a favorable ruling could potentially lessen its injury").

This court frequently holds that the redressability prong is met when plaintiffs plead that agency policies are contrary to law and that their harms could be redressed by setting aside harmful guidance documents. *See, e.g.*, *Nat'l Fed'n of Indep. Bus. v. Dougherty*, 2017 WL 1194666, at *6 (N.D. Tex. Feb. 3, 2017) (Fitzwater, J.); *see also Texas v. Cardona*, 2024 WL 3658767, at *18 (N.D. Tex. Aug. 5, 2024) (O'Connor, J.) (holding that, even if defendants could enforce policies without the challenged guidance documents, a declaration that the guidance documents' interpretation was unlawful and an injunction restraining reliance on that interpretation would reduce the alleged harm).

2

Here, Anibowei pleads three redressable injuries: (1) he is forced to take precautionary measures to avoid unconstitutional border searches, such as leaving his work phone at home when he travels; (2) he is under threat that he will be subject to unconstitutional border searches in the future; and (3) he suffers an ongoing injury from the government's continued retention of the data it downloaded from his cell phone in 2016. Anibowei alleges that the requested relief of vacatur of the policies would lessen his injury by allowing him once again to carry his work phone when he travels, enabling him to travel

without the threat of delay or embarrassment from unconstitutional searches, and by increasing the likelihood that the data collected from his phone would be expunged based on the recognition that the data were unlawfully obtained. Because Anibowei plausibly alleges that his injuries would likely be lessened by his requested remedies, he has adequately pleaded a redressable injury.

C

The court now considers defendants' contention that the Directives are not reviewable under the APA because they are not final agency actions.

1

"The APA allows for judicial review only of a 'final agency action[.]'" *Texas v. Equal Emp. Opportunity Comm'n*, 933 F.3d 433, 441 (5th Cir. 2019) (citing 5 U.S.C. § 704) ("*EEOC*"). Two conditions must be satisfied for an agency action to be final: (1) the action "must mark the 'consummation' of the agency's decisionmaking process," and (2) the action "must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett*, 520 U.S. at 177-78 (citations omitted). "Courts consistently hold that an agency's guidance documents binding it and its staff to a legal position produce legal consequences or determine rights and obligations, thus meeting the second prong of *Bennett*." *EEOC*, 933 F.3d at 441. "'The primary distinction between a substantive rule'—which is, by definition, a final agency action—'and a general statement of policy . . . turns on whether an agency intends to bind *itself* to a particular legal position.'" *Id.* (quoting *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997)). An action may

-10-

be binding on an agency itself "if it either appears on its face to be binding[] or is applied by the agency in a way that indicates it is binding[,]" *id.* (alteration in original) (citation omitted), and, in some cases, "the mandatory language of a document alone can be sufficient to render it binding," *id.* at 422 (quoting *Gen. Elec. Co. v. Env't Prot. Agency*, 290 F.3d 377, 383 (D.C. Cir. 2002)). Mandatory language is not strictly required, however—the Supreme Court takes a "pragmatic approach." *Id.* at 441 (citation and internal quotation marks omitted). "[I]f a statement denies the [agency] discretion in the area of its coverage[,] then the statement is binding, and creates rights or obligations." *Id.* at 442 (alterations in original) (quoting *Gen. Elec. Co.*, 290 F.3d at 382).

2

Mandatory language and a pragmatic view of the Directives together indicate that these directives are final agency actions and are binding on their issuing agencies. The 2018 CBP Directive states that it exists "[t]o provide guidance and standard operating procedures for searching, reviewing, retaining, and sharing information contained in computers . . . mobile phones . . . and any other communication, electronic, or digital devices subject to . . . border searches by [CBP]." Ds. App. (ECF No. 125) at 11. This directive contains binding mandatory language, stating that "[a]ll CBP Officers, Border Patrol Agents, . . . and other officials authorized by CBP to perform border searches *shall adhere to the policy described in this Directive* and any implementing policy memoranda[.]" *Id.* (emphasis added). The directive binds itself to its procedures, as is made clear by the statement in the directive that "[t]his directive *governs* border searches of electronic devices[.]" *Id.* at 12

(emphasis added).

The 2009 ICE Directive similarly states that it "provides legal guidance and establishes policy and procedures within [ICE] with regard to border search authority[,]" Ds. App. (ECF No. 125) at 23, and it states that "Special Agents are responsible for complying with the provisions of this Directive[,]" *id.* at 25. The language in these directives indicates that they are intended to be binding on the agencies themselves and their agents and officers in executing border searches of electronic devices.

Defendants point out that the Directives include disclaimers explicitly stating that they do not create any rights or privileges. *See id.* at 22, 32. But when the Directives are assessed pragmatically, it does not appear that these boilerplate statements outweigh the balance of the Directives' language, which is clearly binding on the agency itself and those acting under its authority. By binding the agencies and their agents and officers to the interpretation of what is required for different types of searches of electronic devices at the border, these directives impact the privacy rights and privileges of individuals at the border who are subject to searches carried out under the authority and instruction of these directives.

D

Finally, the court considers whether the Directives are not reviewable under the APA on the ground that Anibowei has an adequate alternative remedy in a court for his alleged injuries.

1

The APA grants federal courts jurisdiction over "final agency action *for which there*

-12-

is no other adequate remedy in a court[.]"  5 U.S.C. § 704 (emphasis added).  *See also Fort Bend Cnty. v. U.S. Army Corps of Eng'rs*, 59 F.4th 180, 192 (5th Cir. 2023) (characterizing the "adequate remedy" requirement as jurisdictional).  "The adequacy of the relief available need not provide an identical review that the APA would provide, so long as the alternative remedy offers the 'same genre' of relief."  *Hinojosa v. Horn*, 896 F.3d 305, 310 (5th Cir. 2018) (per curiam) (citation omitted).  The requirement that there be no adequate alternative remedy "entails a case-specific evaluation."  *Id.*  "[A] legal remedy is not inadequate for purposes of the APA because it is procedurally inconvenient for a given plaintiff, or because plaintiffs have inadvertently deprived themselves of the opportunity to pursue that remedy."  *Martinez v. Pompeo*, 977 F.3d 457, 460 (5th Cir. 2020) (per curiam) (citation omitted).

2

The court holds that Anibowei has an adequate alternative remedy to his APA challenge because he could allege in a court—indeed, in this court and lawsuit—the constitutional claims that he has already brought but has voluntarily dismissed.  Insofar as Anibowei seeks vacatur of the Directives to prevent being subject to warrantless searches of his electronic devices at the border, an injunction against enforcement of those policies pursuant to a constitutional challenge would similarly prevent his being subjected to such searches in the future.  Therefore, bringing a constitutional challenge and seeking injunctive relied would, if successful on the merits, provide "the same genre of relief" as vacatur of the Directives pursuant to the APA.  *See Hinojosa*, 896 F.3d at 310.  The fact that Anibowei has raised and then voluntarily dismissed these claims does not make this remedy inadequate.

-13-

*See Martinez*, 997 F.3d at 460.

E

Because Anibowei has an adequate alternative remedy, his APA claim is not fit for judicial review. The court lacks subject matter jurisdiction over this claim and therefore grants defendants' motion to dismiss under Rule 12(b)(1).

IV

Defendants also maintain that Anibowei has failed to state a claim on which relief can be granted. They posit that the Directives do not violate the Fourth or First Amendment under the law of this circuit. The court will consider defendants' Rule 12(b)(6) motion in the alternative.

A

To state a claim for relief under Rule 12(b)(6), a complaint's allegations must, "when taken as true, state[] 'a claim to relief that is plausible on its face.'" *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (quoting *Twombly*, 550 U.S. at 570). The Fourth Amendment requires "that searches and seizures be reasonable[,]" and "the Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537-38 (1985). Historically, "searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border." *United States vs. Flores-Montano*, 541 U.S. 149,

-14-

152-53 (2004) (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)).

B

In the Fifth Circuit, the government does not need individualized suspicion to conduct a routine manual cell phone search at the border, and nonroutine searches require only reasonable suspicion. *See United States v. Castillo*, 70 F.4th 894, 898 (5th Cir. 2023); *Malik v. U.S. Dep't of Homeland Sec.*, 78 F.4th 191, 200 (5th Cir 2023). Anibowei "recognizes the binding force of *Castillo* and *Malik*" and that this court is bound by them. P. Resp. (ECF No. 127) at 15.[5] The 2018 CBP Directive requires reasonable suspicion or a national security concern for an advanced search of an electronic device. Ds. App. (ECF No. 125) at 15. Similarly, the 2018 ICE Guidance, which updates the requirements for advanced border searches of electronic devices, instructs agents not to perform advanced border searches of electronic devices without reasonable suspicion. *Id*. at 33-34. Accordingly, to plead a plausible claim for relief, Anibowei cannot rely on an allegation that the Directives' policies—which comply with this circuit's requirements for a border search of an electronic device to be reasonable—violate the Fourth Amendment.

---

[5]Anibowei cites *United States v. Sultanov*, 2024 WL 3520443, at *25 (E.D.N.Y. July 24, 2024), for the proposition that reasonableness under the Fourth Amendment should require probable cause and a warrant because of the First Amendment interests and considerations at stake with a search of electronic devices. Because binding Fifth Circuit precedent does not require a warrant and probable cause, and because *Sultanov* is not binding on this court, the court declines to follow *Sultanov*.

C

Anibowei also alleges that the Directives violate the First Amendment because individuals "are chilled from exercising their First Amendment rights of free speech and association, in knowing that their personal, confidential, and anonymous communications, and their expressive material, may be viewed and retained by government agents without any wrongdoing on their part."  Compl. ¶ 123.  Anibowei cites *United States v. Sultanov*, 2024 WL 3520443 (E.D.N.Y. July 24, 2024),[6] for the proposition that First Amendment considerations are relevant to the determination that a warrant and probable cause were required to search a cell phone at the border, and he cites *Zurcher v. Stanford Daily*, 436 U.S. 547 (1970), for the proposition that the warrant requirement should be administered carefully when "presumptively protected materials are sought to be seized[.]"  *Zurcher*, 436 U.S. at 564.  Neither of these cases, however, suggests that it is a standalone violation of the First Amendment to search a cell phone at the border without probable cause and a warrant.  Instead, both cases consider First Amendment interests to determine what is reasonable under the Fourth Amendment in their respective contexts.  In *Sultanov*, which is not binding on this court, the court referred to "First Amendment considerations" in determining that the Fourth Amendment required probable cause and a warrant to search a cell phone at the border.  *Sultanov*, 2024 WL 3520443, at *24-25.  Similarly, the Court in *Zurcher* noted that, outside of the border-search context, "prior cases do no more than insist that the courts apply the

_____

[6]*See supra* note 5.

warrant requirements with particular exactitude when First Amendment interests would be endangered by the search." *Zurcher*, 436 U.S. at 565. It did not, however, suggest that failure to do so would be a standalone violation of the First Amendment.

Absent any binding authority to the contrary, this court holds that a warrantless border search of an electronic device without probable cause does not violate the First Amendment merely because the device may contain expressive or associational content.

D

Because the Directives comply with Fifth Circuit law, Anibowei's allegations, taken as true, do not state a claim for relief that is plausible on its face. Accordingly, the court holds in the alternative that, assuming *arguendo* that it has jurisdiction over Count VI of Anibowei's second amended complaint, Count VI does not state a claim on which relief can be granted.

*    *    *

Because this court lacks subject matter jurisdiction over Anibowei's APA claim, and, alternatively, because Anibowei has failed to state a claim for which relief can be granted,

-17-

the court grants defendants' motion to dismiss Count VI of Anibowei's second amended complaint. The court dismisses this action without prejudice by judgment filed today.[7]

      **SO ORDERED**.

      November 22, 2024.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

[7]This action is being dismissed without prejudice because the dismissal is for lack of subject matter jurisdiction. The dismissal for failure to state a claim is in the alternative and assumes *arguendo* that the court has subject matter jurisdiction.

-18-